IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, 11 Dupont Circle, N.W. Washington, D.C. 20036<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, Washington, DC 20528<br><br>Defendant. | Civil Action No. 06-173 (RJL) |

**DEFENDANT'S ANSWER**


# EXHIBIT B

# CREW | citizens for responsibility and ethics in washington

October 24, 2005

Freedom of Information Act/Privacy Act Appeals
U.S. Department of Homeland Security
245 Murray Lane, S.W.
Building 410
Washington, D.C.

Re: Freedom of Information Act Appeal

Dear Sir/Madam:

By letter dated September 20, 2005, Jeffrey Ovall, FOIA Specialist in FEMA's Office of General Counsel, advised me that the request of Citizens for Responsibility and Ethics in Washington ("CREW") for expedition of its Freedom of Information Act ("FOIA") request dated September 7, 2005, was denied. A copy of FEMA's denial is enclosed, as well as CREW's FOIA request. CREW hereby appeals that determination and requests that it be reversed for the reasons set forth below.

CREW's FOIA request of September 7, 2005, sought all records relating to FEMA's response to hurricane Katrina. Specifically, CREW sought all records discussing or mentioning (1) what portion of the Department of Homeland Security's FY 2005 appropriation of $3.1 billion was spent to prepare for potential hurricanes on the Gulf Coast; (2) the amount of money diverted from natural disaster emergency preparedness to terrorism emergency preparedness; (3) studies, assessments, etc. of the potential devastation to the Gulf Coast from a powerful hurricane; (4) plans of the federal government's response to any such scenarios; (5) potential breaching of the New Orleans levees; and (6) communications with the Army Corps of Engineers regarding problems with the levees. CREW also sought documents relating to 12 other categories, ranging from communications between the White House and FEMA regarding preparation for hurricane Katrina to communications regarding any evacuation plan for victims of the In accordance with 5 U.S.C. §552(a)(6)(E) and FEMA regulations, 6 CFR §5.5(d), CREW requested that FEMA expedite its processing of CREW's FOIA request.

In his letter of September 20, 2005, Mr. Ovall explained that FEMA was denying CREW's request for expedition because it "does not sufficiently meet all of the criteria under the FOIA and the application regulations." His only elaboration on this conclusion was that "[t]o the extent that it can be determined, [CREW's] request did not specifically address or establish an imminent threat to the life or physical safety of an individual," a basis for expedition on which CREW did not rely, "or a particular urgency to inform the public beyond the public's right to know about government activity generally."

11 DuPont Circle, N.W., 2nd Floor • Washington, D.C. 20036
(o) 202.588.5565 (c) 202.841.5096

This determination is wrong as a matter of law and fact. As CREW explained in its request for expedition, there is a particular urgency in informing the public about the circumstances surrounding FEMA's response to hurricane Katrina. Myriad news reports have concluded that FEMA's reaction to the hurricane was, and continues to be, inadequate. Recent e-mails that FEMA provided to the Senate Homeland Security and Governmental Affairs Committee make clear that there was a "shocking" disconnect between what actually happened and when to the flood walls in New Orleans as a result of hurricane Katrina, and what the President and top cabinet officials, including Secretary Chertoff, were told. *See* Spencer S. Hsu, Aide Says FEMA Ignored Warning, *The Washington Post*, October 21, 2005 (enclosed). *See also* Lara Jakes Jordan, Memo: FEMA Had Problems Before Katrina, *The Associated Press*, October 17, 2005 (enclosed). These e-mails are precisely the kind of documents CREW is seeking through its FOIA request of FEMA. The public urgently needs and deserves a full airing of what happened at FEMA and elsewhere in the federal government as a result of, and in response to, hurricane Katrina.

This urgency is underscored by the fact that hurricane Katrina was followed by hurricane Rita, which also caused massive damage, and Florida currently faces a significant threat from hurricane Wilma. If we are to learn from the government's past mistakes and hope to avoid, or at least minimize, the horrendous impact of hurricanes like Katrina and Rita, the public must have immediate access to the kinds of documents CREW has requested. The widespread government bungling, and perhaps even government malfeasance, in its response to hurricane Katrina that the documents that have been disclosed as a result of congressional inquiries demonstrate fully justify CREW's request for expedition.

Second, CREW has demonstrated that it is "primarily engaged in disseminating information," as required by 6 CFR §5.5(d)(ii). As we explained in our request for expedition, CREW is a non-profit corporation engaged primarily in disseminating information it gathers from a variety of sources, including the Freedom of Information Act, and seeks the information requested in this FOIA request for the express purpose of disseminating it to the public. CREW's website, www.citizensforethics.org, contains numerous examples of its efforts, including a link to a site, prepared by CREW, that details the many activities of Jack Abramoff, a Washington lawyer and lobbyist currently under criminal investigation, and the many powerful individuals linked to Abramoff through such things as campaign contributions. CREW has published reports based on the information it receives from a variety of sources, including its FOIA requests. For example, CREW published a report, *Addicted to Porn: How Members of Congress Benefit from Pornography*, that details the campaign contributions that members of Congress had received from corporations involved in pornography. And recently CREW published a report, *Beyond DeLay, The 13 Most Corrupt Members of Congress*, that is available through a link on CREW's website to www.beyonddelay.org. This report documents the unethical activities of 13 Members of Congress, and represents the first

2

time that all of the information on which it relies has been compiled in one place. Moreover, while the allegations against some of the members have been well publicized, the activities of others had gone relatively unnoticed until CREW issued its report. Through these kind of reports CREW hopes to bring greater attention to the conduct of public officials so that the public will have a more effective voice, including in the voting booth.

As with the Electronic Privacy Information Center and the ACLU, two organizations that the courts have found satisfy this criteria,[1] CREW "'gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience.'" ACLU, 321 F.Supp2d. at 30 n.5, *quoting* EPIC, 241 F.Supp.2d at 11.

Under these circumstances, CREW satisfies fully the criteria for expedition of its FOIA request and, accordingly, FEMA's initial determination denying CREW's request must be reversed.

Sincerely,

ANNE L. WEISMANN
Chief Counsel
Citizens for Responsibility and Ethics in Washington

Enclosures

---

[1] *See* ACLU v. U.S. Dep't of Justice, 321 F.Supp.2d 24, 30 (D.D.C. 2004); EPIC v. Dep't of Defense, 241 F.Supp.2d 5, 11 (D.D.C. 2003).