**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, 11 Dupont Circle, N.W. Washington, D.C. 20036,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, Washington, DC 20528,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 06-173 (RJL)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**EXHIBIT 1 TO DECLARATION OF ADRIAN SEVIER**

**Citizens for Responsibility and Ethics in Washington**

---

September 7, 2005

Jeff Ovall
FOIA/PA Specialist
Office of the General Counsel
Federal Emergency Management Agency
500 C Street, S.W., Room 840
Washington, D.C. 20472

05-263

**BY FAX:** 202-646-3958

Dear Mr. Ovall:

Citizens for Responsibility and Ethics in Washington ("CREW") makes this request for records, regardless of format, medium, or physical characteristics, and including electronic records and information, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §552, et seq, and U.S. Department of Homeland Security ("DHS") regulations, 6 CFR Part 5.

This request is for any and all records relating to the Federal Emergency Management Agency's ("FEMA") response to hurricane Katrina. Specifically, CREW seeks all memoranda, communications and records of any kind and from any source, regardless of format, medium, or physical characteristics, from January 1, 2001 to the present, discussing or mentioning in any way:

1) what portion of the $3.1 billion appropriated to DHS in fiscal year 2005 for emergency preparedness to "support the Nation's ability to prepare for, mitigate against, respond to and recover from natural and man manmade disasters"[1] was spent to prepare for potential hurricanes on the Gulf Coast of the United States and on potential flooding in New Orleans;

2) the amount of money diverted from emergency preparedness for and response to natural disasters to emergency preparedness for and response to acts of terrorism and the rationale behind any such diversion;

3) studies, assessments, presentations, or scenarios of the potential devastation a powerful hurricane could wreak on the Gulf Coast, including, but not limited to the eight-day tabletop exercise conducted in July 2004 and intended to prepare FEMA a catastrophic hurricane in New Orleans;

4) plans created regarding the federal government's response to any such scenarios;

5) the potential breaching of the levees that would lead to Lake Pontchartrain flooding New Orleans and the response to such breaches; and

---

[1] DHS Fact Sheet, www.dhs.gov/dhspublic/display?content=4065.

Mr. Jeff Ovall
September 7, 2005
Page Two

6) communications from anyone employed by or associated with the Army Corps of Engineers regarding the problems with and weakness of the levees surrounding New Orleans, the potential breaching of the levees and the consequences of such breaches, as well as proposed repairs or other construction to the levees.

CREW further seeks all memoranda, communications and records of any kind and from any source, regardless of format, medium, or physical characteristics, from August 26, 2005 through to the present, discussing or mentioning in any way:

1) requests for emergency assistance from local government officials in Mississippi and Louisiana in response to hurricane Katrina;

2) requests from local government officials in Mississippi and Louisiana for assistance in preparing for hurricane Katrina, including, but not limited to communications requesting assistance in evacuating residents of Mississippi and Louisiana from the areas in the hurricane's path;

3) communications between the White House and FEMA regarding the preparation for and response to the damage caused by hurricane Katrina;

4) communications regarding the conditions in the New Orleans Convention Center;

5) communications regarding the need for transportation to evacuate victims of the hurricane from the city of New Orleans as well as communications regarding the need for food and water for victims stranded in New Orleans;

6) communications from Congressman Charles W. Boustany Jr. (R-LA) requesting federal assistance and any response to Cong. Boustany;

7) communications regarding offers by corporations and foreign government's to assist the victims of the hurricane Katrina and FEMA's responses to such offers;

8) communications between FEMA director Michael Brown and cabinet officials either before or after the hurricane regarding the potential and actual devastation wrought by the hurricane and the federal government's response to the devastation;

9) communications regarding the plan to evacuate victims of the hurricane to Charleston, South Carolina and the misrouting of the plane carrying the evacuees to Charleston, West Virginia;

Mr. Jeff Ovall
September 7, 2005
Page Three

    10) communications regarding the deployment of the National Guard to New Orleans to assist in evacuation and relief efforts;

    11) communications regarding the inclusion of Operation Blessing, a Virginia based charity run by evangelist and Christian Coalition founder Pat Robertson, on FEMA's primary list of charities to which people were asked to donate money to assist hurricane relief efforts; and

    12) communications regarding the limitations placed on journalists and photographers, including, but not limited to, efforts to prevent photographers from taking pictures of the corpses of hurricane victims in Louisiana and Mississippi.

    We seek records of any and all kind, including electronic records, audiotapes, videotapes, and photographs. Our request includes any telephone messages, voice mail messages, daily agenda and calendars, information about scheduled meetings and/or discussions, whether in-person or over the telephone, agendas for those meetings and/or discussions, participants included in those meetings and/or discussions, minutes of any such meetings and/or discussions, the topics discussed at those meetings and/or discussions, e-mail regarding meetings and/or discussions, e-mail or facsimiles sent as a result of those meetings and/or discussions, and transcripts or notes of any such meetings and/or discussions.

    If it is your position that any portion of the requested records is exempt from disclosure, CREW requests that you provide it with an index of those documents as required under Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1972). As you are aware, a Vaughn index must describe each document claimed as exempt with sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under FOIA." Founding Church of Scientology v. Bell, 603 F.2d 945, 949 (D.C. Cir. 1979). Moreover, the Vaughn index must "describe each document or portion thereof withheld, and for **each** withholding it must discuss the consequences of supplying the sought-after information." King v. U.S. Dep't of Justice, 830 F.2d 210, 223-24 (D.C. Cir. 1987) (emphasis added). Further, "the withholding agency must supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'" Id. at 224 (citing Mead Data Central v. U.S. Dep't of the Air Force, 566 F.2d 242, 251 (D.C. Cir. 1977).

    In the event that some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. See 5 U.S.C. §552(b). If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document. Mead Data Central, 566 F.2d at 261. Claims

Mr. Jeff Ovall
September 7, 2005
Page Four

of nonsegregability must be made with the same degree of detail as required for claims of exemptions in a <u>Vaughn</u> index. If a request is denied in whole, please state specifically that it is not reasonable to segregate portions of the record for release.

### Request for Expedition

Pursuant to 5 U.S.C. §552(a)(6)(E)(I) and Department of Homeland Security, 6 CFR §5.5(d), CREW requests that FEMA expedite the processing of this request in light of the compelling need for the requested information. CREW is a non-profit corporation engaged primarily in disseminating information it gathers from a variety of sources, including the Freedom of Information Act, and seeks the information requested in this FOIA request for the express purpose of disseminating it to the public. CREW's website, www.citizensforethics.org, contains numerous examples of its efforts, including a link to a site, prepared by CREW, that details the many activities of Jack Abramoff, a Washington lawyer and lobbyist currently under criminal investigation, and the many powerful individuals linked to Abramoff through such things as campaign contributions. CREW recently published a report, *Addicted to Porn: How Members of Congress Benefit from Pornography*, that details the campaign contributions that members of Congress had received from corporations involved in pornography. It is CREW's hope that by disseminating this type of information, the public will be better able to evaluate the actions of our public officials and will have a more effective voice, including in the voting booth.

As with the Electronic Privacy Information Center and the ACLU, two organizations that the courts have found satisfy the criteria necessary to qualify for expedition,[2] CREW "'gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience.'" <u>ACLU</u>, 321 F.Supp2d. at 30 n.5, *quoting* <u>EPIC</u>, 241 F.Supp.2d at 11.

There is a particular urgency in informing the public about the circumstances surrounding FEMA's response to hurricane Katrina. Myriad news reports have concluded that FEMA's reaction to the hurricane was, and continues to be, inadequate. The public, as well as the numerous congressional committees that are considering this matter, have a need to know the true facts underlying the government's response to hurricane Katrina. Accordingly, CREW requests that this request be expedited.

### Fee Waiver Request

In accordance with 5 U.S.C. §552(a)(4)(A)(iii), CREW requests a waiver of fees associated with processing this request for records. The subject of this request concerns the

---

[2] *See* ACLU v. U.S. Dep't of Justice, 321 F.Supp.2d 24, 30 (D.D.C. 2004); EPIC v. Dep't of Defense, 241 F.Supp.2d 5, 11 (D.D.C. 2003).

Mr. Jeff Ovall
September 7, 2005
Page Five

operations of the federal government and the disclosures will likely contribute to a better understanding of relevant government procedures by CREW and the general public in a significant way. Moreover, the request is primarily and fundamentally for non-commercial purposes. 5 U.S.C. §552(a)(4)(A)(iii). See, e.g., McClellan Ecological v. Carlucci, 835 F.2d 1282, 1285 (9th Cir. 1987). Specifically, these records are likely to contribute to the public's understanding of the individuals and organizations that influence or attempt to influence the litigating position of the United States of America in a lawsuit of major and far-reaching consequences.

CREW is a non-profit corporation, organized under section 501(c)(3) of the Internal Revenue code. CREW is committed to the protection of the citizen's right to be aware of the activities of government officials and to ensuring the integrity of those officials. CREW is dedicated to empowering citizens to have an influential voice in government decisions and in the government decision-making process. CREW uses a combination of research, litigation, and advocacy to advance its mission. The release of information garnered through this request is not in CREW's financial interest. CREW will analyze the information responsive to this request, and will likely share its analysis with the public, either through memorandums, reports or press releases.

Under these circumstances, CREW fully satisfied the criteria for a fee waiver.

If you have any questions about this request or foresee any problems in releasing fully the requested records on an expedited basis, please call either Melanie Sloan or Anne Weismann at (202) 588-5565. Also, if CREW's request for a fee waiver is not granted in full, please contact our office immediately upon making such determination. Please send the requested documents to Melanie Sloan, Citizens for Responsibility and Ethics in Washington, 11 Dupont Circle, N.W., 2nd Floor, Washington, D.C. 20036.

Sincerely,

Melanie Sloan
Executive Director