**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND | ) | |
| ETHICS IN WASHINGTON, | ) | |
| 11 Dupont Circle, N.W. | ) | |
| Washington, D.C. 20036 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 06-173 (RJL) |
| v. | ) | |
| | ) | |
| UNITED STATES DEPARTMENT | ) | |
| OF HOMELAND SECURITY, | ) | |
| Washington, DC 20528 | ) | |
| | ) | |
| Defendant. | ) | |

**EXHIBIT 3 TO DECLARATION OF ADRIAN SEVIER**



Privacy Office
U.S. Department of
Homeland Security
Washington, DC 20528

# Homeland
# Security

December 21, 2005

Anne L. Weismann, Chief Counsel
Citizens for Responsibility and Ethics in Washington
11 DuPont Circle, N.W., 2nd Floor
Washington, DC  20036                    Re:  Appeal No. 06-13

Dear Ms. Weismann:

I am writing in response to your appeal from the action of the Federal Emergency Management Agency (FEMA) denying expedited access to documents requested under the Freedom of Information Act (FOIA) by Citizens for Responsibility and Ethics in Washington (CREW).  CREW'S FOIA request sought all of FEMA records relating to its response to Hurricane Katrina.

As you know, under the FOIA, a party may seek expedited processing and release of requested records rather than awaiting processing under the standard "first-in, first-out" procedure in cases where a compelling need is demonstrated or in other cases as determined by the agency.  See 5 U.S.C. § 552(a)(6)(E)(i)(I)-(II). The Department of Homeland Security's rules for expedited access can be found at 6 C.F.R. § 5.5, and allow for expedition where there is "an urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information"  DHS rules require that an individual meeting this condition for expedition "establish a particular urgency to inform the public about the government activity involved in the request, beyond the public's right to know about government activity generally."  CREW's justification for its request for expedited treatment relies upon the need "a full airing of what happened at FEMA, and elsewhere in the federal government as a result of, and in response to, hurricane Katrina."

After carefully considering your appeal, I have decided to affirm FEMA's initial decision denying your request for expedited treatment.  The standard of "urgency to inform" requires that the information requested should pertain to a matter of a current exigency to the American public and that a reasonable person might conclude that the consequences of delaying a response to a FOIA request would compromise a significant recognized interest.  According to the legislative history of this FOIA provision, the public's right to know, although a significant and important value, would not, by itself, be sufficient to

satisfy this standard. H.R. Rep. No. 104-795, at 26 (1996).    Although catastrophic, the immediate exigency of Hurricane Katrina has passed.    Additionally, I am aware of no significant recognized interest of the public that is being compromised in this instance, particularly in view of the Congressional hearings that are taking place on the Federal response to the hurricane.

As an overarching principle, the pertinent legislative history of the expedited access provision counsels that "[t]he specified categories for compelling need are intended to be narrowly applied." H.R. Rep. No. 104-795, at 26 (1996).    In light of the materials that are already otherwise publicly available, the orderly production of materials about Hurricane Katrina pursuant to FOIA's standard first in, first-out procedure, so as not to prejudice other, more senior FOIA requesters, is warranted.    My decision is not based on whether CREW has adequately demonstrated that it is "primarily engaged in disseminating information."

If you are dissatisfied with my action on your appeal, you are entitled to seek judicial review consistent with 5 U.S.C. § 552(a)(4)(B).

Sincerely,

Maureen Cooney
Acting Chief Privacy Officer

2

**U.S. Department of Homeland Security**
500 C Street, SW
Washington, DC 20472

 **FEMA**

November 9, 2005

Ms. Melanie Sloan
Citizens for Responsibility and Ethics in Washington
11 DuPont Circle, NW, 2nd Floor
Washington, DC 20036

RE:  Freedom of Information Act Request
     FOIA Case No.: 05-263

Dear Ms. Sloan:

This is to provide you with an update on the status of your Freedom of Information Act (FOIA) request dated September 7, 2005.

The Department of Homeland Security (DHS)/Federal Emergency Management Agency (FEMA) have been inundated with FOIA requests related to our preparation and response efforts to Hurricanes Katrina, Rita and Wilma. These are in addition to the many requests we receive on a regular basis. All requests require thorough research and legal analysis at various levels prior to final action. These are time-intensive but necessary procedures.

The responsive records for many of these requests are complex and extremely voluminous in nature, requiring search and review of thousands of pages. In addition, the search for responsive documents involves the need to search in multiple FEMA offices located in Washington, DC and various Joint Field Offices and Regional Offices set up in multiple locations. As stated in my initial acknowledgment letter, many of our employees who conduct searches for responsive records have been deployed to the Gulf Coast to aid in the aftermath of Hurricanes Katrina and Rita. Consequently, with limited personnel resources and a large number of complex requests continuing to stream in, we have developed a backlog of pending FOIAs.

To ensure that the Department makes consistent FOIA releases of Hurricane Katrina related documents with maximum information released equitably to all FOIA requesters, and due to the heightened interest in Hurricane Katrina documents, the review process necessitates a final review by the DHS Disclosure Office.

It remains our policy to process FOIA requests in the order in which they are received in accordance with FOIA law. As of November 9, 2005, our records indicate there are 175 open FOIA requests in our non-expedited queue. Your request is number 55 of 175. An extension of time to respond to your request is required in order to ensure the orderly processing of your request.

Please be assured, however, that we are making every effort to complete your request as soon as practicable, and will provide you with additional updates as necessary. Where possible, we will provide interim releases while we continue to forge through the remaining responsive records.

Thank you for your interest in FEMA's programs and policies.

Sincerely,

Jeff Ovall
FOIA Specialist
Office of General Counsel

U.S. Department of Homeland Security
500 C Street, SW
Washington, DC 20472



Ms. Melanie Sloan                    **JAN 2 4 2006**
Executive Director
Citizens for Responsibility
    and Ethics in Washington
11 DuPont Circle, N.W.
Washington, D.C. 20036

RE:  Freedom of Information Act Request
     FOIA Case No. : 05-263

Dear Ms. Sloan:

This letter is in response to your Freedom of Information Act (FOIA) request dated September 7,
2005.  In that request, you asked for any and all records relating to the Federal Emergency
Management Agency's (FEMA) response to Hurricane Katrina.  Among other items, you
requested studies, assessments, presentations, and scenarios of the potential devastation a
powerful hurricane could wreak on the Gulf Coast, including, but not limited to the eight-day
tabletop exercise conducted in July 2004 and intended to prepare FEMA for a catastrophic
hurricane in New Orleans and plans created regarding the Federal government's response to any
such scenarios.

In responding to a FOIA request, the U.S. Department of Homeland Security (DHS)/FEMA's
search will include responsive records in its control on the date the search began.  FEMA's
search began on September 9, 2005.

FEMA embarked on a "Catastrophic Planning" initiative in FY 2003, concentrating on thirteen
southeastern Louisiana Parishes (including the City of New Orleans) because of their
vulnerability to hurricane disasters.  In cooperation with the relevant State and local
governments, the intent of the initiative was to examine projected damages and effects associated
with a catastrophic hurricane, to confirm current disaster response capabilities, to identify
anticipated shortfalls, and to initiate comprehensive planning strategies to address the shortfalls.

The Southeast Louisiana Catastrophic Hurricane Planning Project documents the results of this
collaborative effort.  Topic-specific "planning workshops" using a catastrophic hurricane
scenario (Hurricane Pam) to frame the discussions were selected as the best approach for
identifying and qualifying the scale of requirements needed to build a plan for responding to a
catastrophic hurricane.

The goal of the Southeast Louisiana Catastrophic Hurricane Planning Project was to begin
assessing the immediate, intermediate and long-term needs for catastrophic planning and seed

Ms. Melanie Sloan
Page 2

the eventual development of a comprehensive and systematic operational plan. The ultimate goal was for the concepts identified in the Southeast Louisiana Catastrophic Hurricane Planning Project to be integrated into a final catastrophic plan. The project did not result in a catastrophic planning document per se, but rather a framework for developing such a plan.

The following documentation is being provided to you as an initial release of the information you requested:

- Explanatory Documents
- Louisiana Project 7-2004 Hurricane Pam Briefing Document
- Joint Project Development Plan, 5-26-2004
- Louisiana Project Timeline
- Southeast Louisiana Catastrophic Hurricane Planning Project – Preliminary Planning Documents
- Hurricane Pam Exercise Phase I Briefing
- Facilitator Orientation for July 18, 2004
- IEM's Scenario-Driven Planning Workshop Process
- Hurricane Pam Exercise Participant Information Packet, July 16 – 23, 2004
- Hurricane Pam Phase 1-A Workshop Participant Information Packet, November 29 – December 3, 2004
- Louisiana Catastrophic Planning Phase 1-B Workshop Participant Information Packet, July 25 – 29, 2005
- Plans Collected (Source documents used to support the development of Hurricane Pam)
- IEM's 2004 Louisiana Catastrophic Hurricane Planning Exercise Executive Summary

Your request is granted in part at no cost to you. Subsequent supplemental material will be forthcoming at a later date, however the enclosed information responds to your request with as much information as is available at this time. FEMA will continue to search for any additional documents that are responsive to your request. You do not need to file a secondary request for this additional information, as it will be distributed to you as soon as it is available.

Cell phone numbers have been withheld as allowed by the Freedom of Information Act, 5 U.S.C. 552 (b)(2) and (6). FOIA Exemption 2 ("High 2") protects information applicable to internal administrative and personnel matters, such as employee emergency phone numbers, to the extent that disclosure would risk circumvention of an agency regulation or statute, impede the effectiveness of an agency's activities, or reveal sensitive information that may put the security and safety of an agency activity or employee at risk. Exemption 6 exempts from disclosure records the release of which would cause a clearly unwarranted invasion of personal privacy. Similarly, email addresses are being withheld as allowed by the Freedom of Information Act, 5 U.S.C. 552 (b)(6), Exemption 6. Weighed against the privacy interest of the individuals is the lack of public interest in the release of phone numbers and email addresses, and the fact that the

Ms. Melanie Sloan
Page 3

release of such adds no information about agency activities, which is the core purpose of the FOIA. Therefore, after a careful balancing of the factors supporting and opposing disclosure, phone numbers and email addresses have been withheld on the basis of Exemptions 2 and 6 of the FOIA.

In this initial release of information, we are releasing a total of 748 responsive pages, 734 of which are released in their entirety, and 14 of which are released with excisions.

I am the official responsible for this determination. You may appeal this determination within 60 days from the date of this letter. Your appeal should include copies of your original request and this response, as well as a discussion of the reasons supporting your appeal. The envelope should be plainly marked to indicate that it contains a Freedom of Information Act appeal. If you decide to appeal, please send your appeal to:

> Freedom of Information Act/Privacy Act Appeals
> U.S. Department of Homeland Security
> 245 Murray Lane, SW, Building 410
> Washington, DC  20528

For your information, your FOIA request, including your identity and the information made available, is releasable to the public under subsequent FOIA requests. In responding to these requests, FEMA does not release personal privacy information, such as home address, telephone number, or social security number, all of which are protected from disclosure under FOIA Exemption 6.

Thank you for your interest in FEMA's programs and policies.

Sincerely,

*O. Mega Kesler, III*

for Michael W. Lowder
Deputy Director
Response Division



U.S. Department of Homeland Security
500 C Street, SW
Washington, DC 20472

APR 4 - 2006

Ms. Melanie Sloan
Citizens for Responsibility and Ethics in Washington
11 DuPont Circle
N.W., 2nd Floor
Washington, DC 20036

RE: Freedom of Information Act Request
     FOIA Case Number: 05-263

Dear Ms. Sloan:

This letter is a partial response to your Freedom of Information Act (FOIA) request dated September 7, 2005.  In your request you asked for the following records/information:

1. What portion of the #3.1 billion appropriated to DHS in fiscal year 2005 for emergency preparedness to "support the Nation's ability to prepare for, mitigate against, respond to and recover from natural and manmade disasters" was spent to prepare for potential hurricanes on the Gulf Coast of the United States and on potential flooding in New Orleans;
2. The amount of money diverted from emergency preparedness for and response to natural disasters to emergency preparedness for and response to acts of terrorism and the rationale behind any such diversion;
3. Studies, assessment, presentations, or scenarios of the potential devastation a powerful hurricane could wreak on the Gulf Coast, including, but not limited to the eight-day tabletop exercise conducted in July 2004 and intended to prepare FEMA for a catastrophic hurricane in New Orleans;
4. Plans created regarding the federal government's response to any such scenarios;
5. The potential breaching of the levees that would lead to Lake Pontchartrain flooding New Orleans and the response to such breaches; and
6. Communications from anyone employed by or associated with the Army Corps of Engineers regarding the problems with and weakness of the levees surrounding New Orleans, the potential breaching of the levees and the consequences of such breaches, as well as proposed repairs or other construction to the levees.

In addition, your letter stated that "CREW further seeks all memoranda, communications and records of any kind and from any source, regardless of format, medium, or physical characteristics, from August 26, 2005 through to the present, discussing or mentioning in any way:

1. Requests for emergency assistance from local government officials in Mississippi and Louisiana in response to hurricane Katrina;

2. Requests from local government officials in Mississippi and Louisiana for assistance in preparing for hurricane Katrina, including, but not limited to communications requesting assistance in evacuating residents of Mississippi and Louisiana from the areas in the hurricane's path;

3. Communications between the White House and FEMA regarding the preparation for and response to the damage caused by hurricane Katrina;

4. Communications regarding the conditions in the New Orleans Convention Center;

5. Communications regarding the need for transportation to evacuate victims of the hurricane from the city of New Orleans as well as communications regarding the need for food and water for victims stranded in New Orleans;

6. Communications from Congressman Charles W. Boustany Jr. (R-LA) requesting federal assistance and any response to Congressman Boustany;

7. Communications regarding offers by corporations and foreign government's to assist the victims of the hurricane Katrina and FEMA's responses to such offers;

8. Communications between FEMA director Michael Brown and cabinet officials either before or after the hurricane regarding the potential and actual devastation wrought by the hurricane and the federal government's response to the devastation;

9. Communications regarding the plan to evacuate victims of the hurricane to Charleston, South Carolina and the misrouting of the plane carrying the evacuees to Charleston, West Virginia;

10. Communications regarding the deployment of the National Guard to New Orleans to assist in evacuation and relief efforts;

11. Communications regarding the inclusion of Operation Blessing, a Virginia based charity run by evangelist and Christian Coalition founder Pat Robertson, on FEMA's primary list of charities to which people were asked to donate money to assist hurricane relief efforts; and

12. Communications regarding the limitations placed on journalists and photographers, including, but not limited to, efforts to prevent photographers from taking pictures of the corpses of hurricane victims in Louisiana and Mississippi.

"From August 23, 2005 to September 12, 2005, copies of all emails, memos, meeting notes and other communications from Acting Regional Director Gary Jones to FEMA's Washington Headquarters concerning FEMA's response to Hurricane Katrina."

In responding to a FOIA request, the US Department of Homeland Security (DHS)/Federal Emergency Management Agency (FEMA's) search will include responsive records in its control on the date the search began. FEMA's search began September 24, 2005.

This partial response to your request has been granted in full at no cost to you. Enclosed you will find records that are responsive to item 11 of your request.    43 PGS

FEMA will continue to search for any additional documents that may be responsive to your request. Because of the broad scope of your request, responsive records may be

located at various offices within FEMA. Each office will respond via separate correspondence with their respective records.

For your information, your FOIA request including your identity, the information made available, is releasable to the public under subsequent FOIA requests. In response to these requests, FEMA does not release personal privacy information, such as home address, telephone numbers or Social Security Numbers all of which are protected from disclosure under FOIA exemption 6.

Thank you for your interest in FEMA's programs and policies.

Sincerely,

Cindy Taylor
Deputy Director
Office of Public Affairs

Enclosures

U.S. Department of Homeland Security
500 C Street, SW
Washington, DC 20472

 FEMA

APR 2 6 2006

Ms. Melanie Sloan
Citizens for Responsibility and Ethics in Washington
11 DuPont Circle
N.W., 2nd Floor
Washington, DC 20036

RE: Freedom of Information Act Request
      FOIA Case Number: 05-263

Dear Ms. Sloan:

This letter is a partial response to your Freedom of Information Act (FOIA) request dated September 7, 2005. In your request you asked for the following records/information:

1.  What portion of the $3.1 billion appropriated to DHS in fiscal year 2005 for emergency preparedness to "support the Nation's ability to prepare for, mitigate against, respond to and recover from natural and manmade disasters" was spent to prepare for potential hurricanes on the Gulf Coast of the United States and on potential flooding in New Orleans;

2.  The amount of money diverted from emergency preparedness for and response to natural disasters to emergency preparedness for and response to acts of terrorism and the rationale behind any such diversion;

3.  Studies, assessment, presentations, or scenarios of the potential devastation a powerful hurricane could wreak on the Gulf Coast, including, but not limited to the eight-day tabletop exercise conducted in July 2004 and intended to prepare FEMA for a catastrophic hurricane in New Orleans;

4.  Plans created regarding the federal government's response to any such scenarios;

5.  The potential breaching of the levees that would lead to Lake Pontchartrain flooding New Orleans and the response to such breaches; and

6.  Communications from anyone employed by or associated with the Army Corps of Engineers regarding the problems with and weakness of the levees surrounding New Orleans, the potential breaching of the levees and the consequences of such breaches, as well as proposed repairs or other construction to the levees.

In addition, your letter stated that "CREW further seeks all memoranda, communications and records of any kind and from any source, regardless of format, medium, or physical characteristics, from August 26, 2005 through to the present, discussing or mentioning in any way:

1. Requests for emergency assistance from local government officials in Mississippi and Louisiana in response to hurricane Katrina;
2. Requests from local government officials in Mississippi and Louisiana for assistance in preparing for hurricane Katrina, including, but not limited to communications requesting assistance in evacuating residents of Mississippi and Louisiana from the areas in the hurricane's path;
3. Communications between the White House and FEMA regarding the preparation for and response to the damage caused by hurricane Katrina;
4. Communications regarding the conditions in the New Orleans Convention Center;
5. Communications regarding the need for transportation to evacuate victims of the hurricane from the city of New Orleans as well as communications regarding the need for food and water for victims stranded in New Orleans;
6. Communications from Congressman Charles W. Boustany Jr. (R-LA) requesting federal assistance and any response to Congressman Boustany;
7. Communications regarding offers by corporations and foreign government's to assist the victims of the hurricane Katrina and FEMA's responses to such offers;
8. Communications between FEMA director Michael Brown and cabinet officials either before or after the hurricane regarding the potential and actual devastation wrought by the hurricane and the federal government's response to the devastation;
9. Communications regarding the plan to evacuate victims of the hurricane to Charleston, South Carolina and the misrouting of the plane carrying the evacuees to Charleston, West Virginia;
10. Communications regarding the deployment of the National Guard to New Orleans to assist in evacuation and relief efforts;
11. Communications regarding the inclusion of Operation Blessing, a Virginia based charity run by evangelist and Christian Coalition founder Pat Robertson, on FEMA's primary list of charities to which people were asked to donate money to assist hurricane relief efforts; and
12. Communications regarding the limitations placed on journalists and photographers, including, but not limited to, efforts to prevent photographers from taking pictures of the corpses of hurricane victims in Louisiana and Mississippi.

In responding to a FOIA request, the US Department of Homeland Security (DHS)/Federal Emergency Management Agency (FEMA's) search will include responsive records in its control on the date the search began. FEMA's search began September 24, 2005.

This partial response to your request has been granted in part, at no cost to you. Enclosed you will find the releasable portions of records that are responsive to item number 7 of the second page of your request. This is a spreadsheet of offers of assistance made by foreign governments and other foreign entities to the U.S. Government, consolidated by FEMA from August 29 to September 1. After September 1st, FEMA transitioned this spreadsheet to the Department of State at which time DOS collected this information.

After thorough legal review of these documents, I have determined that portions of them

are exempt from disclosure under Exemption 6 of the Freedom of Information Act of 1974, 5 U.S.C. 552, as amended. We are releasing a total of 5 pages, of which 3 are released in part, and 2 pages are released in their entirety.

We are withholding private email addresses and cell phone numbers; and where we are unable to determine whether a phone number is either private or a work number, we have withheld the number. Exemption 6 exempts from disclosure records the release of which would cause a clearly unwarranted invasion of personal privacy. The interest of the general public in reviewing these portions of documents does not outweigh the individuals' right to privacy. The release of this information adds no detail about agency activities—the core purpose of the FOIA.

I am the official responsible for this determination. You may appeal this determination within 60 days from the date of this letter. Your appeal should include copies of your original request and this response, as well as a discussion of the reasons supporting your appeal. The envelope should be plainly marked to indicate that it contains a Freedom of Information Act appeal. If you decide to appeal, please send your appeal to:

> Freedom of Information Act/Privacy Act Appeals
> U.S. Department of Homeland Security
> 245 Murray Lane, SW, Building 410
> Washington, DC 20528

FEMA will continue to search for any additional documents that may be responsive to your request. Because of the broad scope of your request, responsive records may be located at various offices within FEMA. Each office will respond via separate correspondence with their respective records.

For your information, your FOIA request including your identity, the information made available, is releasable to the public under subsequent FOIA requests. In response to these requests, FEMA does not release personal privacy information, such as home address, telephone numbers or Social Security Numbers all of which are protected from disclosure under FOIA exemption 6.

Thank you for your interest in FEMA's programs and policies.

Sincerely,

Casey Long
Director
Office of International Affairs

Enclosures

U.S. Department of Homeland Security
500 C Street, SW
Washington, DC 20472

MAY - 2 2006

 FEMA

Ms. Melanie Sloan
Citizens for Responsibility and Ethics in Washington
11 DuPont Circle
N.W., 2nd Floor
Washington, DC 20036

RE: Freedom of Information Act Request
    FOIA Case Number: 05-263

Dear Ms. Sloan:

This letter is a partial response to your Freedom of Information Act (FOIA) request dated September 7, 2005. In your request you asked for the following records/information:

1. What portion of the $3.1 billion appropriated to DHS in fiscal year 2005 for emergency preparedness to "support the Nation's ability to prepare for, mitigate against, respond to and recover from natural and manmade disasters" was spent to prepare for potential hurricanes on the Gulf Coast of the United States and on potential flooding in New Orleans;

2. The amount of money diverted from emergency preparedness for and response to natural disasters to emergency preparedness for and response to acts of terrorism and the rationale behind any such diversion;

3. Studies, assessment, presentations, or scenarios of the potential devastation a powerful hurricane could wreak on the Gulf Coast, including, but not limited to the eight-day tabletop exercise conducted in July 2004 and intended to prepare FEMA for a catastrophic hurricane in New Orleans;

4. Plans created regarding the federal government's response to any such scenarios;

5. The potential breaching of the levees that would lead to Lake Pontchartrain flooding New Orleans and the response to such breaches; and

6. Communications from anyone employed by or associated with the Army Corps of Engineers regarding the problems with and weakness of the levees surrounding New Orleans, the potential breaching of the levees and the consequences of such breaches, as well as proposed repairs or other construction to the levees.

In addition, your letter stated that "CREW further seeks all memoranda, communications and records of any kind and from any source, regardless of format, medium, or physical characteristics, from August 26, 2005 through to the present, discussing or mentioning in any way:

1. Requests for emergency assistance from local government officials in Mississippi and Louisiana in response to hurricane Katrina;

2. Requests from local government officials in Mississippi and Louisiana for assistance in preparing for hurricane Katrina, including, but not limited to communications requesting assistance in evacuating residents of Mississippi and Louisiana from the areas in the hurricane's path;

3. Communications between the White House and FEMA regarding the preparation for and response to the damage caused by hurricane Katrina;

4. Communications regarding the conditions in the New Orleans Convention Center;

5. Communications regarding the need for transportation to evacuate victims of the hurricane from the city of New Orleans as well as communications regarding the need for food and water for victims stranded in New Orleans;

6. Communications from Congressman Charles W. Boustany Jr. (R-LA) requesting federal assistance and any response to Congressman Boustany;

7. Communications regarding offers by corporations and foreign government's to assist the victims of the hurricane Katrina and FEMA's responses to such offers;

8. Communications between FEMA director Michael Brown and cabinet officials either before or after the hurricane regarding the potential and actual devastation wrought by the hurricane and the federal government's response to the devastation;

9. Communications regarding the plan to evacuate victims of the hurricane to Charleston, South Carolina and the misrouting of the plane carrying the evacuees to Charleston, West Virginia;

10. Communications regarding the deployment of the National Guard to New Orleans to assist in evacuation and relief efforts;

11. Communications regarding the inclusion of Operation Blessing, a Virginia based charity run by evangelist and Christian Coalition founder Pat Robertson, on FEMA's primary list of charities to which people were asked to donate money to assist hurricane relief efforts; and

12. Communications regarding the limitations placed on journalists and photographers, including, but not limited to, efforts to prevent photographers from taking pictures of the corpses of hurricane victims in Louisiana and Mississippi.

In responding to a FOIA request, the US Department of Homeland Security (DHS)/Federal Emergency Management Agency (FEMA's) search will include responsive records in its control on the date the search began. FEMA's search began September 24, 2005.

Your request is granted in part at no cost to you. Enclosed are releasable portions of records responsive to item 6 in the second part of your request. After thorough legal review of these documents, I have determined that portions of them are exempt from disclosure under exemption 6 of the Freedom of Information Act of 1974, 5 U.S.C. 552, as amended. We are releasing a total of 33 pages, of which 2 are released in part, and 31 pages are released in their entirety.

We are withholding cell phone numbers under FOIA Exemption 6. Exemption 6 exempts from disclosure records the release of which would cause a clearly unwarranted invasion of personal privacy. The interest of the general public in reviewing these

portions of government documents does not outweigh the individuals' right to privacy. The release of this information adds no detail about agency activities, the core purpose of the FOIA.

I am the official responsible for this determination. You may appeal this determination within 60 days from the date of this letter. Your appeal should include copies of your original request and this response, as well as a discussion of the reasons supporting your appeal. The envelope should be plainly marked to indicate that it contains a Freedom of Information Act appeal. If you decide to appeal, please send your appeal to:

> Freedom of Information Act/Privacy Act Appeals
> U.S. Department of Homeland Security
> 245 Murray Lane, SW, Building 410
> Washington, DC 20528

FEMA will continue to search for additional documents that may be responsive to your request. Because of the broad scope of your request, responsive records may be located at various offices within FEMA. Each office will respond via separate correspondence with their respective records.

In addition, while searching for responsive records, we located seven pages that may be responsive to your request that contain information originating from the Department of Health and Human Services. Because the majority of information in these records had originated with HHS, we referred the pages to them for direct response to you.

For your information, your FOIA request including your identity, the information made available, is releasable to the public under subsequent FOIA requests. In response to these requests, FEMA does not release personal privacy information, such as home address, telephone numbers or Social Security Numbers all of which are protected from disclosure under FOIA exemption 6.

Thank you for your interest in FEMA's programs and policies.

Sincerely,

Dan Shulman
Director
Office of Legislative Affairs

Enclosures

U.S. Department of Homeland Security
500 C Street, SW
Washington, DC 20472

MAY 2 - 2006



# FEMA

Ms. Melanie Sloan
Citizens for Responsibility and Ethics in Washington
11 DuPont Circle
N.W., 2nd Floor
Washington, DC 20036

RE: Freedom of Information Act Request
    FOIA Case Number: 05-263

Dear Ms. Sloan:

This letter is a partial response to your Freedom of Information Act (FOIA) request dated
September 7, 2005. In your request you asked for the following records/information:

1.  What portion of the $3.1 billion appropriated to DHS in fiscal year 2005 for
    emergency preparedness to "support the Nation's ability to prepare for, mitigate
    against, respond to and recover from natural and manmade disasters" was spent to
    prepare for potential hurricanes on the Gulf Coast of the United States and on
    potential flooding in New Orleans;

2.  The amount of money diverted from emergency preparedness for and response to
    natural disasters to emergency preparedness for and response to acts of terrorism
    and the rationale behind any such diversion;

3.  Studies, assessments, presentations, or scenarios of the potential devastation a
    powerful hurricane could wreak on the Gulf Coast, including, but not limited to
    the eight-day tabletop exercise conducted in July 2004 and intended to prepare
    FEMA for a catastrophic hurricane in New Orleans;

4.  Plans created regarding the federal government's response to any such scenarios;

5.  The potential breaching of the levees that would lead to Lake Pontchartrain
    flooding New Orleans and the response to such breaches; and

6.  Communications from anyone employed by or associated with the Army Corps of
    Engineers regarding the problems with and weakness of the levees surrounding
    New Orleans, the potential breaching of the levees and the consequences of such
    breaches, as well as proposed repairs or other construction to the levees.

In addition, your letter stated that "CREW further seeks all memoranda, communications
and records of any kind and from any source, regardless of format, medium, or physical
characteristics, from August 26, 2005 through the present, discussing or mentioning in
any way:

1.  Requests for emergency assistance from local government officials in Mississippi
    and Louisiana in response to Hurricane Katrina;

2. Requests from local government officials in Mississippi and Louisiana for assistance in preparing for Hurricane Katrina, including, but not limited to communications requesting assistance in evacuating residents of Mississippi and Louisiana from the areas in the hurricane's path;

3. Communications between the White House and FEMA regarding the preparation for and response to the damage caused by hurricane Katrina;

4. Communications regarding the conditions in the New Orleans Convention Center;

5. Communications regarding the need for transportation to evacuate victims of the hurricane from the city of New Orleans as well as communications regarding the need for food and water for victims stranded in New Orleans;

6. Communications from Congressman Charles W. Boustany Jr. (R-LA) requesting federal assistance and any response to Congressman Boustany;

7. Communications regarding offers by corporations and foreign governments to assist the victims of the Hurricane Katrina and FEMA's responses to such offers;

8. Communications between FEMA Director Michael Brown and cabinet officials either before or after the hurricane regarding the potential and actual devastation wrought by the hurricane and the federal government's response to the devastation;

9. Communications regarding the plan to evacuate victims of the hurricane to Charleston, South Carolina and the misrouting of the plane carrying the evacuees to Charleston, West Virginia;

10. Communications regarding the deployment of the National Guard to New Orleans to assist in evacuation and relief efforts;

11. Communications regarding the inclusion of Operation Blessing, a Virginia based charity run by evangelist and Christian Coalition founder Pat Robertson, on FEMA's primary list of charities to which people were asked to donate money to assist hurricane relief efforts; and

12. Communications regarding the limitations placed on journalists and photographers, including, but not limited to, efforts to prevent photographers from taking pictures of the corpses of hurricane victims in Louisiana and Mississippi.

In responding to a FOIA request, the US Department of Homeland Security (DHS)/Federal Emergency Management Agency's (FEMA) search will include responsive records in its control on the date the search began. FEMA's search began September 24, 2005.

This is a follow-up to our January 24, 2006, release wherein we provided 748 pages pertaining to the "Catastrophic Planning" initiative in FY2003, concentrating on thirteen southeastern Louisiana Parishes (including the city of New Orleans) because of their vulnerability to hurricane disasters.

Your request is granted in part at no cost to you. Enclosed are releasable portions of documents that are responsive to item numbers 3, 4 and 5 of the first part of your request. After thorough legal review of these documents, I have determined that portions of them are exempt from disclosure under exemptions 2, 4, 5 and 6 of the Freedom of Information Act of 1974, 5 U.S.C. 552, (b)(2), (5) and (6), as amended. For this release, we reviewed

a total of 953 pages of responsive documents. We are releasing a total of 441 pages, of which 17 are released in part, and 424 pages are released in their entirety. In addition, we are withholding 512 pages in their entirety.

We are withholding Government cell phone numbers and non-"@dhs.gov" or "@associates.dhs.gov" government e-mail addresses, and internal administrative information under FOIA Exemption 2 ("High 2"). FOIA Exemption 2 ("High 2") protects information applicable to internal administrative and personnel matters, to the extent that disclosure would risk circumvention of an agency regulation or statute, impede the effectiveness of an agency's activities, or reveal sensitive information that may put the security and safety of an agency activity or employee at risk.

We are withholding all draft documents as well as a few pages of "meeting minutes" taken for an interagency meeting, under FOIA Exemption 5, that protects "inter-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency" 5 U.S.C. 552 (b)(5). The documents withheld are deliberative in nature and reflect internal evaluations, opinions and analysis. Because these documents are deliberative and pre-decisional in nature, their release could inhibit candor and the open and frank discussions and expressions of opinion necessary for agency decision makers to make informed decisions in the administration of their duties.

We are withholding the home address, home and personal cell phone number, and e-mail address of non-government individuals, and the names of key personnel, under FOIA Exemption 6. Exemption 6 exempts from disclosure records the release of which would cause a clearly unwarranted invasion of personal privacy. The interest of the general public in reviewing these portions of government documents does not outweigh the individuals' right to privacy. The release of this information adds no detail about agency activities, the core purpose of the FOIA.

I am the official responsible for this determination. You may appeal this determination within 60 days from the date of this letter. Your appeal should include copies of your original request and this response, as well as a discussion of the reasons supporting your appeal. The envelope should be plainly marked to indicate that it contains a Freedom of Information Act appeal. If you decide to appeal, please send your appeal to:

> Freedom of Information Act/Privacy Act Appeals
> U.S. Department of Homeland Security
> 245 Murray Lane, SW, Building 410
> Washington, DC 20528

FEMA will continue to search for additional documents that may be responsive to your request. Because of the broad scope of your request, responsive records may be located at various offices within FEMA. Each office will respond via separate correspondence with their respective records.

For your information, your FOIA request including your identity, the information made
available, is releasable to the public under subsequent FOIA requests. In response to
these requests, FEMA does not release personal privacy information, such as home
address, telephone numbers or Social Security Numbers all of which are protected from
disclosure under FOIA exemption 6.

Thank you for your interest in FEMA's programs and policies.

Sincerely,

*O. Megs Hesler, III*

for Michael W. Lowder
Deputy Director
Response Division

Enclosures

U.S. Department of Homeland Security
500 C Street, SW
Washington, DC 20472

**MAY 5 - 2006**

 **FEMA**

Ms. Melanie Sloan
Citizens for Responsibility and Ethics in Washington
11 DuPont Circle
N.W., 2nd Floor
Washington, DC 20036

RE: Freedom of Information Act Request
        FOIA Case Number: 05-263

Dear Ms. Sloan:

This letter is a partial response to your Freedom of Information Act (FOIA) request dated
September 7, 2005. In your request you asked for the following records/information:

1. What portion of the $3.1 billion appropriated to DHS in fiscal year 2005 for
   emergency preparedness to "support the Nation's ability to prepare for, mitigate
   against, respond to and recover from natural and manmade disasters" was spent to
   prepare for potential hurricanes on the Gulf Coast of the United States and on
   potential flooding in New Orleans;
2. The amount of money diverted from emergency preparedness for and response to
   natural disasters to emergency preparedness for and response to acts of terrorism
   and the rationale behind any such diversion;
3. Studies, assessment, presentations, or scenarios of the potential devastation a
   powerful hurricane could wreak on the Gulf Coast, including, but not limited to
   the eight-day tabletop exercise conducted in July 2004 and intended to prepare
   FEMA for a catastrophic hurricane in New Orleans;
4. Plans created regarding the federal government's response to any such scenarios;
5. The potential breaching of the levees that would lead to Lake Pontchartrain
   flooding New Orleans and the response to such breaches; and
6. Communications from anyone employed by or associated with the Army Corps of
   Engineers regarding the problems with and weakness of the levees surrounding
   New Orleans, the potential breaching of the levees and the consequences of such
   breaches, as well as proposed repairs or other construction to the levees.

In addition, your letter stated that "CREW further seeks all memoranda, communications
and records of any kind and from any source, regardless of format, medium, or physical
characteristics, from August 26, 2005 through to the present, discussing or mentioning in
any way:

1. Requests for emergency assistance from local government officials in Mississippi
   and Louisiana in response to hurricane Katrina;

2. Requests from local government officials in Mississippi and Louisiana for assistance in preparing for hurricane Katrina, including, but not limited to communications requesting assistance in evacuating residents of Mississippi and Louisiana from the areas in the hurricane's path;

3. Communications between the White House and FEMA regarding the preparation for and response to the damage caused by hurricane Katrina;

4. Communications regarding the conditions in the New Orleans Convention Center;

5. Communications regarding the need for transportation to evacuate victims of the hurricane from the city of New Orleans as well as communications regarding the need for food and water for victims stranded in New Orleans;

6. Communications from Congressman Charles W. Boustany Jr. (R-LA) requesting federal assistance and any response to Congressman Boustany;

7. Communications regarding offers by corporations and foreign government's to assist the victims of the hurricane Katrina and FEMA's responses to such offers;

8. Communications between FEMA director Michael Brown and cabinet officials either before or after the hurricane regarding the potential and actual devastation wrought by the hurricane and the federal government's response to the devastation;

9. Communications regarding the plan to evacuate victims of the hurricane to Charleston, South Carolina and the misrouting of the plane carrying the evacuees to Charleston, West Virginia;

10. Communications regarding the deployment of the National Guard to New Orleans to assist in evacuation and relief efforts;

11. Communications regarding the inclusion of Operation Blessing, a Virginia based charity run by evangelist and Christian Coalition founder Pat Robertson, on FEMA's primary list of charities to which people were asked to donate money to assist hurricane relief efforts; and

12. Communications regarding the limitations placed on journalists and photographers, including, but not limited to, efforts to prevent photographers from taking pictures of the corpses of hurricane victims in Louisiana and Mississippi.

In responding to a FOIA request, the US Department of Homeland Security (DHS)/Federal Emergency Management Agency (FEMA's) search will include responsive records in its control on the date the search began. FEMA's search began September 24, 2005.

Your request is granted in part at no cost to you. Enclosed are releasable portions of Mr. Patrick Rhode's emails that pertain to Hurricane Katrina. These emails are responsive to item numbers 1, 3, 4, 5 and 7 in the second part of your request. After thorough legal review of these documents, I have determined that portions of them are exempt from disclosure under exemptions 2, 5 and 6 of the Freedom of Information Act of 1974, 5 U.S.C. 552 (b)(2), (5) and (6), as amended. We are releasing a total of 1,326 pages, of which 920 are released in part, and 406 pages are released in their entirety.

FEMA is withholding portions of these documents under the provisions of exemption 2 of the FOIA, 5 U.S.C. 552(b)(2) which exempts disclosure of records "related solely to

the internal personnel rules and practices of an agency." This exemption permits an agency to withhold information that, if released, would risk circumvention of agency regulations, policies, and procedures. We are withholding Government cell phone numbers, non-"@dhs.gov" or "@associates.dhs.gov" government e-mail addresses, non-DHS government phone numbers, employee security information, internal administrative information, and FEMA Readiness Alert Status information which pertains to the deployment of personnel to disaster locations. The release of this information may put the security and safety of an agency activity or employee at risk during a disaster.

We are withholding drafts of documents, internal memorandums and options pertaining to FEMA's disaster declaration process, senior level communications where internal, pre-decisional and deliberative recommendations and analysis are discussed under FOIA exemption 5, which protects "inter-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. 552 (b)(5). The purpose of exemption 5 is to protect the internal decision-making process of Government agencies, and the documents that reflect these internal, pre-decisional and deliberative evaluations, opinions and analysis, including agency advice and recommendations to the President in the disaster declaration process. Because these documents are deliberative and pre-decisional in nature, their release could inhibit candor and the open and frank discussions and expressions of opinion necessary for agency decision makers to make informed decisions in the administration of their duties.

We are withholding the names, addresses, phone numbers, and e-mail addresses of non-government individuals, personal information unrelated to official duties, home phone numbers and home addresses of DHS employees, and personal family information under FOIA Exemption 6 because public disclosure would constitute an unwarranted invasion of personal privacy. 5 U.S.C. 552 (b)(6) The interest of the general public in reviewing these portions of government documents does not outweigh the individual's rights to privacy.

I am the official responsible for this determination. You may appeal this determination within 60 days from the date of this letter. Your appeal should include copies of your original request and this response, as well as a discussion of the reasons supporting your appeal. For an appeal under exemption 6, your letter should address the nature of the overriding public interest in disclosure that outweighs the personal privacy protected by the exemption.

The envelope should be plainly marked to indicate that it contains a Freedom of Information Act appeal. If you decide to appeal, please send your appeal to:

    Freedom of Information Act/Privacy Act Appeals
    U.S. Department of Homeland Security
    245 Murray Lane, SW, Building 410
    Washington, DC  20528

FEMA will continue to search for additional documents that may be responsive to your

request. Because of the broad scope of your request, responsive records may be located at various offices within FEMA. Each office will respond via separate correspondence with their respective records.

For your information, your FOIA request including your identity, the information made available, is releasable to the public under subsequent FOIA requests. In response to these requests, FEMA does not release personal privacy information, such as home address, telephone numbers or Social Security Numbers all of which are protected from disclosure under FOIA exemption 6.

Thank you for your interest in FEMA's programs and policies.

Sincerely,

David A. Trissell
Chief Counsel

Enclosures

U.S. Department of Homeland Security
500 C Street, SW
Washington, DC 20472

**MAY 5 – 2006**

 **FEMA**

Ms. Melanie Sloan
Citizens for Responsibility and Ethics in Washington
11 DuPont Circle
N.W., 2nd Floor
Washington, DC  20036

RE:  Freedom of Information Act Request
    FOIA Case Number: 05-263

Dear Ms. Sloan:

This letter is a partial response to your Freedom of Information Act (FOIA) request dated September 7, 2005.  In your request you asked for the following records/information:

1. What portion of the $3.1 billion appropriated to DHS in fiscal year 2005 for emergency preparedness to "support the Nation's ability to prepare for, mitigate against, respond to and recover from natural and manmade disasters" was spent to prepare for potential hurricanes on the Gulf Coast of the United States and on potential flooding in New Orleans;
2. The amount of money diverted from emergency preparedness for and response to natural disasters to emergency preparedness for and response to acts of terrorism and the rationale behind any such diversion;
3. Studies, assessment, presentations, or scenarios of the potential devastation a powerful hurricane could wreak on the Gulf Coast, including, but not limited to the eight-day tabletop exercise conducted in July 2004 and intended to prepare FEMA for a catastrophic hurricane in New Orleans;
4. Plans created regarding the federal government's response to any such scenarios;
5. The potential breaching of the levees that would lead to Lake Pontchartrain flooding New Orleans and the response to such breaches; and
6. Communications from anyone employed by or associated with the Army Corps of Engineers regarding the problems with and weakness of the levees surrounding New Orleans, the potential breaching of the levees and the consequences of such breaches, as well as proposed repairs or other construction to the levees.

In addition, your letter stated that "CREW further seeks all memoranda, communications and records of any kind and from any source, regardless of format, medium, or physical characteristics, from August 26, 2005 through to the present, discussing or mentioning in any way:

1. Requests for emergency assistance from local government officials in Mississippi and Louisiana in response to hurricane Katrina;

**www.fema.gov**

2. Requests from local government officials in Mississippi and Louisiana for assistance in preparing for hurricane Katrina, including, but not limited to communications requesting assistance in evacuating residents of Mississippi and Louisiana from the areas in the hurricane's path;

3. Communications between the White House and FEMA regarding the preparation for and response to the damage caused by hurricane Katrina;

4. Communications regarding the conditions in the New Orleans Convention Center;

5. Communications regarding the need for transportation to evacuate victims of the hurricane from the city of New Orleans as well as communications regarding the need for food and water for victims stranded in New Orleans;

6. Communications from Congressman Charles W. Boustany Jr. (R-LA) requesting federal assistance and any response to Congressman Boustany;

7. Communications regarding offers by corporations and foreign government's to assist the victims of the hurricane Katrina and FEMA's responses to such offers;

8. Communications between FEMA director Michael Brown and cabinet officials either before or after the hurricane regarding the potential and actual devastation wrought by the hurricane and the federal government's response to the devastation;

9. Communications regarding the plan to evacuate victims of the hurricane to Charleston, South Carolina and the misrouting of the plane carrying the evacuees to Charleston, West Virginia;

10. Communications regarding the deployment of the National Guard to New Orleans to assist in evacuation and relief efforts;

11. Communications regarding the inclusion of Operation Blessing, a Virginia based charity run by evangelist and Christian Coalition founder Pat Robertson, on FEMA's primary list of charities to which people were asked to donate money to assist hurricane relief efforts; and

12. Communications regarding the limitations placed on journalists and photographers, including, but not limited to, efforts to prevent photographers from taking pictures of the corpses of hurricane victims in Louisiana and Mississippi.

In responding to a FOIA request, the US Department of Homeland Security (DHS)/Federal Emergency Management Agency (FEMA's) search will include responsive records in its control on the date the search began. FEMA's search began September 24, 2005.

Your request is granted in part at no cost to you. Enclosed are releasable portions of Mr. Michael Brown's emails that pertain to Hurricane Katrina from the dates of August 26 to September 8, 2005. These emails are responsive to item numbers 1, 3, 4, 5 and 7 in the second part of your request. After thorough legal review of these documents, I have determined that portions of them are exempt from disclosure under exemptions 2, 5 and 6 of the Freedom of Information Act of 1974, 5 U.S.C. 552 (b)(2), (5) and (6), as amended. We are releasing a total of 928 pages, of which 793 are released in part, and 135 pages are released in their entirety.

FEMA is withholding portions of these documents under the provisions of exemption 2 of the FOIA, 5 U.S.C. 552(b)(2) which exempts disclosure of records "related solely to the internal personnel rules and practices of an agency." This exemption permits an agency to withhold information that, if released, would risk circumvention of agency regulations, policies, and procedures. We are withholding Government cell phone numbers, non-"@dhs.gov" or "@associates.dhs.gov" government e-mail addresses, non-DHS government phone numbers, employee security information, internal administrative information, and FEMA Readiness Alert Status information which pertains to the deployment of personnel to disaster locations. The release of this information may put the security and safety of an agency activity or employee at risk during a disaster.

We are withholding drafts of documents, internal memorandums and options pertaining to FEMA's disaster declaration process, senior level communications where internal, pre-decisional and deliberative recommendations and analysis are discussed under FOIA exemption 5, which protects "inter-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. 552 (b)(5). The purpose of exemption 5 is to protect the internal decision-making process of Government agencies, and the documents that reflect these internal, pre-decisional and deliberative evaluations, opinions and analysis, including agency advice and recommendations to the President in the disaster declaration process. Because these documents are deliberative and pre-decisional in nature, their release could inhibit candor and the open and frank discussions and expressions of opinion necessary for agency decision makers to make informed decisions in the administration of their duties.

We are withholding the names, addresses, phone numbers, and e-mail addresses of non-government individuals, personal information unrelated to official duties, home phone numbers and home addresses of DHS employees, and personal family information under FOIA Exemption 6 because public disclosure would constitute an unwarranted invasion of personal privacy. 5 U.S.C. 552 (b)(6) The interest of the general public in reviewing these portions of government documents does not outweigh the individual's rights to privacy.

I am the official responsible for this determination. You may appeal this determination within 60 days from the date of this letter. Your appeal should include copies of your original request and this response, as well as a discussion of the reasons supporting your appeal. For an appeal under exemption 6, your letter should address the nature of the overriding public interest in disclosure that outweighs the personal privacy protected by the exemption.

The envelope should be plainly marked to indicate that it contains a Freedom of Information Act appeal. If you decide to appeal, please send your appeal to:

Freedom of Information Act/Privacy Act Appeals
U.S. Department of Homeland Security
245 Murray Lane, SW, Building 410
Washington, DC  20528

FEMA will continue to search for additional documents that may be responsive to your request. Because of the broad scope of your request, responsive records may be located at various offices within FEMA. Each office will respond via separate correspondence with their respective records.

For your information, your FOIA request including your identity, the information made available, is releasable to the public under subsequent FOIA requests. In response to these requests, FEMA does not release personal privacy information, such as home address, telephone numbers or Social Security Numbers all of which are protected from disclosure under FOIA exemption 6.

Thank you for your interest in FEMA's programs and policies.

Sincerely,

David A. Trissell
Chief Counsel

Enclosures

U.S. Department of Homeland Security
500 C Street, SW
Washington, DC 20472



JUN - 2 2006

Ms. Melanie Sloan
Citizens for Responsibility and Ethics in Washington
11 DuPont Circle
N.W., 2nd Floor
Washington, DC 20036

RE:  Freedom of Information Act Request
     FOIA Case Number: 05-263

Dear Ms. Sloan:

This letter is a partial response to your Freedom of Information Act (FOIA) request dated
September 7, 2005.  In your request you asked for the following records/information:

1.  What portion of the $3.1 billion appropriated to DHS in fiscal year 2005 for
    emergency preparedness to "support the Nation's ability to prepare for, mitigate
    against, respond to and recover from natural and manmade disasters" was spent to
    prepare for potential hurricanes on the Gulf Coast of the United States and on
    potential flooding in New Orleans;

2.  The amount of money diverted from emergency preparedness for and response to
    natural disasters to emergency preparedness for and response to acts of terrorism
    and the rationale behind any such diversion;

3.  Studies, assessment, presentations, or scenarios of the potential devastation a
    powerful hurricane could wreak on the Gulf Coast, including, but not limited to
    the eight-day tabletop exercise conducted in July 2004 and intended to prepare
    FEMA for a catastrophic hurricane in New Orleans;

4.  Plans created regarding the federal government's response to any such scenarios;

5.  The potential breaching of the levees that would lead to Lake Pontchartrain
    flooding New Orleans and the response to such breaches; and

6.  Communications from anyone employed by or associated with the Army Corps of
    Engineers regarding the problems with and weakness of the levees surrounding
    New Orleans, the potential breaching of the levees and the consequences of such
    breaches, as well as proposed repairs or other construction to the levees.

In addition, your letter stated that "CREW further seeks all memoranda, communications
and records of any kind and from any source, regardless of format, medium, or physical
characteristics, from August 26, 2005 through to the present, discussing or mentioning in
any way:

1. Requests for emergency assistance from local government officials in Mississippi and Louisiana in response to hurricane Katrina;
2. Requests from local government officials in Mississippi and Louisiana for assistance in preparing for hurricane Katrina, including, but not limited to communications requesting assistance in evacuating residents of Mississippi and Louisiana from the areas in the hurricane's path;
3. Communications between the White House and FEMA regarding the preparation for and response to the damage caused by hurricane Katrina;
4. Communications regarding the conditions in the New Orleans Convention Center;
5. Communications regarding the need for transportation to evacuate victims of the hurricane from the city of New Orleans as well as communications regarding the need for food and water for victims stranded in New Orleans;
6. Communications from Congressman Charles W. Boustany Jr. (R-LA) requesting federal assistance and any response to Congressman Boustany;
7. Communications regarding offers by corporations and foreign government's to assist the victims of the hurricane Katrina and FEMA's responses to such offers;
8. Communications between FEMA director Michael Brown and cabinet officials either before or after the hurricane regarding the potential and actual devastation wrought by the hurricane and the federal government's response to the devastation;
9. Communications regarding the plan to evacuate victims of the hurricane to Charleston, South Carolina and the misrouting of the plane carrying the evacuees to Charleston, West Virginia;
10. Communications regarding the deployment of the National Guard to New Orleans to assist in evacuation and relief efforts;
11. Communications regarding the inclusion of Operation Blessing, a Virginia based charity run by evangelist and Christian Coalition founder Pat Robertson, on FEMA's primary list of charities to which people were asked to donate money to assist hurricane relief efforts; and
12. Communications regarding the limitations placed on journalists and photographers, including, but not limited to, efforts to prevent photographers from taking pictures of the corpses of hurricane victims in Louisiana and Mississippi.

In responding to a FOIA request, the US Department of Homeland Security (DHS)/Federal Emergency Management Agency (FEMA's) search will include responsive records in its control on the date the search began. FEMA's search began September 24, 2005.

It is our understanding that the Department of Homeland Security received their copy of your request and has forwarded items 1 and 2 of the first page of your request to the DHS Office of the Under Secretary for Preparedness for direct response to you. In addition to any responsive records they may provide, we have located documents that are responsive to item 1 of the first page of your request.

This partial response to your request has been granted in full at no cost to you. Enclosed

3 PGS

you will find records that are responsive to items 1 and 2 of the first page of your request.

FEMA will continue to search for any additional documents that may be responsive to your request. Because of the broad scope of your request, responsive records may be located at various offices within FEMA. Each office will respond via separate correspondence with their respective records.

For your information, your FOIA request including your identity, the information made available, is releasable to the public under subsequent FOIA requests. In response to these requests, FEMA does not release personal privacy information, such as home address, telephone numbers or Social Security Numbers all of which are protected from disclosure under FOIA exemption 6.

Thank you for your interest in FEMA's programs and policies.

Sincerely,

Michael Buckley
Deputy Director
Mitigation Division

Enclosures

U.S. Department of Homeland Security
500 C Street, SW
Washington, DC 20472

JUN  6 2006

 FEMA

Ms. Melanie Sloan
Citizens for Responsibility and Ethics in Washington
11 DuPont Circle
N.W., 2nd Floor
Washington, DC 20036

RE: Freedom of Information Act Request
    FOIA Case Number: 05-263

Dear Ms. Sloan:

This letter is a partial response to your Freedom of Information Act (FOIA) request dated September 7, 2005. In your request you asked for the following records/information:

1. What portion of the $3.1 billion appropriated to DHS in fiscal year 2005 for emergency preparedness to "support the Nation's ability to prepare for, mitigate against, respond to and recover from natural and manmade disasters" was spent to prepare for potential hurricanes on the Gulf Coast of the United States and on potential flooding in New Orleans;

2. The amount of money diverted from emergency preparedness for and response to natural disasters to emergency preparedness for and response to acts of terrorism and the rationale behind any such diversion;

3. Studies, assessments, presentations, or scenarios of the potential devastation a powerful hurricane could wreak on the Gulf Coast, including, but not limited to the eight-day tabletop exercise conducted in July 2004 and intended to prepare FEMA for a catastrophic hurricane in New Orleans;

4. Plans created regarding the federal government's response to any such scenarios;

5. The potential breaching of the levees that would lead to Lake Pontchartrain flooding New Orleans and the response to such breaches; and

6. Communications from anyone employed by or associated with the Army Corps of Engineers regarding the problems with and weakness of the levees surrounding New Orleans, the potential breaching of the levees and the consequences of such breaches, as well as proposed repairs or other construction to the levees.

In addition, your letter stated that "CREW further seeks all memoranda, communications and records of any kind and from any source, regardless of format, medium, or physical characteristics, from August 26, 2005 through the present, discussing or mentioning in any way:

1. Requests for emergency assistance from local government officials in Mississippi and Louisiana in response to Hurricane Katrina;

2. Requests from local government officials in Mississippi and Louisiana for assistance in preparing for Hurricane Katrina, including, but not limited to communications requesting assistance in evacuating residents of Mississippi and Louisiana from the areas in the hurricane's path;

3. Communications between the White House and FEMA regarding the preparation for and response to the damage caused by hurricane Katrina;

4. Communications regarding the conditions in the New Orleans Convention Center;

5. Communications regarding the need for transportation to evacuate victims of the hurricane from the city of New Orleans as well as communications regarding the need for food and water for victims stranded in New Orleans;

6. Communications from Congressman Charles W. Boustany Jr. (R-LA) requesting federal assistance and any response to Congressman Boustany;

7. Communications regarding offers by corporations and foreign governments to assist the victims of the Hurricane Katrina and FEMA's responses to such offers;

8. Communications between FEMA Director Michael Brown and cabinet officials either before or after the hurricane regarding the potential and actual devastation wrought by the hurricane and the federal government's response to the devastation;

9. Communications regarding the plan to evacuate victims of the hurricane to Charleston, South Carolina and the misrouting of the plane carrying the evacuees to Charleston, West Virginia;

10. Communications regarding the deployment of the National Guard to New Orleans to assist in evacuation and relief efforts;

11. Communications regarding the inclusion of Operation Blessing, a Virginia based charity run by evangelist and Christian Coalition founder Pat Robertson, on FEMA's primary list of charities to which people were asked to donate money to assist hurricane relief efforts; and

12. Communications regarding the limitations placed on journalists and photographers, including, but not limited to, efforts to prevent photographers from taking pictures of the corpses of hurricane victims in Louisiana and Mississippi.

In responding to a FOIA request, the US Department of Homeland Security (DHS)/Federal Emergency Management Agency's (FEMA) search will include responsive records in its control on the date the search began. FEMA's search began September 24, 2005.

Your request is granted in part at no cost to you. Enclosed are releasable portions of documents that are responsive to item number 9 of the second part of your request. After thorough legal review of these documents, I have determined that portions of them are exempt from disclosure under exemptions 2 and 6 of the Freedom of Information Act of 1974, 5 U.S.C. 552, (b)(2) & (6), as amended. We are releasing a total of 4 pages, all of which are released in part.

We are withholding Government cell phone numbers and internal administrative information under FOIA Exemption 2 ("High 2"). FOIA Exemption 2 ("High 2") protects information applicable to internal administrative and personnel matters, to the

extent that disclosure would risk circumvention of an agency regulation or statute, impede the effectiveness of an agency's activities, or reveal sensitive information that may put the security and safety of an agency activity or employee at risk.

We are withholding the names of non-DHS and non-government personnel under FOIA Exemption 6. Exemption 6 exempts from disclosure records the release of which would cause a clearly unwarranted invasion of personal privacy. The interest of the general public in reviewing these portions of government documents does not outweigh the individuals' right to privacy. The release of this information adds no detail about agency activities, the core purpose of the FOIA.

I am the official responsible for this determination. You may appeal this determination within 60 days from the date of this letter. Your appeal should include copies of your original request and this response, as well as a discussion of the reasons supporting your appeal. The envelope should be plainly marked to indicate that it contains a Freedom of Information Act appeal. If you decide to appeal, please send your appeal to:

> Freedom of Information Act/Privacy Act Appeals
> U.S. Department of Homeland Security
> 245 Murray Lane, SW, Building 410
> Washington, DC  20528

FEMA will continue to search for additional documents that may be responsive to your request. Because of the broad scope of your request, responsive records may be located at various offices within FEMA. Each office will respond via separate correspondence with their respective records.

For your information, your FOIA request including your identity, the information made available, is releasable to the public under subsequent FOIA requests. In response to these requests, FEMA does not release personal privacy information, such as home address, telephone numbers or Social Security Numbers all of which are protected from disclosure under FOIA exemption 6.

Thank you for your interest in FEMA's programs and policies.

Sincerely,

David Garratt
Acting Director of Recovery
Federal Emergency Management Agency

Enclosures

U.S. Department of Homeland Security
500 C Street, SW
Washington, DC 20472



**JUN 1 4 2006**

Ms. Melanie Sloan
Citizens for Responsibility and Ethics in Washington
11 DuPont Circle
N.W., 2nd Floor
Washington, DC 20036

RE:  Freedom of Information Act Request
     FOIA Case Number: 05-263

Dear Ms. Sloan:

This letter is a partial response to your Freedom of Information Act (FOIA) request dated
September 7, 2005.  In your request you asked for the following records/information:

1.  What portion of the $3.1 billion appropriated to DHS in fiscal year 2005 for
    emergency preparedness to "support the Nation's ability to prepare for, mitigate
    against, respond to and recover from natural and manmade disasters" was spent to
    prepare for potential hurricanes on the Gulf Coast of the United States and on
    potential flooding in New Orleans;
2.  The amount of money diverted from emergency preparedness for and response to
    natural disasters to emergency preparedness for and response to acts of terrorism
    and the rationale behind any such diversion;
3.  Studies, assessments, presentations, or scenarios of the potential devastation a
    powerful hurricane could wreak on the Gulf Coast, including, but not limited to
    the eight-day tabletop exercise conducted in July 2004 and intended to prepare
    FEMA for a catastrophic hurricane in New Orleans;
4.  Plans created regarding the federal government's response to any such scenarios;
5.  The potential breaching of the levees that would lead to Lake Pontchartrain
    flooding New Orleans and the response to such breaches; and
6.  Communications from anyone employed by or associated with the Army Corps of
    Engineers regarding the problems with and weakness of the levees surrounding
    New Orleans, the potential breaching of the levees and the consequences of such
    breaches, as well as proposed repairs or other construction to the levees.

In addition, your letter stated that "CREW further seeks all memoranda, communications
and records of any kind and from any source, regardless of format, medium, or physical

characteristics, from August 26, 2005 through the present, discussing or mentioning in any way:

1. Requests for emergency assistance from local government officials in Mississippi and Louisiana in response to Hurricane Katrina;
2. Requests from local government officials in Mississippi and Louisiana for assistance in preparing for Hurricane Katrina, including, but not limited to communications requesting assistance in evacuating residents of Mississippi and Louisiana from the areas in the hurricane's path;
3. Communications between the White House and FEMA regarding the preparation for and response to the damage caused by hurricane Katrina;
4. Communications regarding the conditions in the New Orleans Convention Center;
5. Communications regarding the need for transportation to evacuate victims of the hurricane from the city of New Orleans as well as communications regarding the need for food and water for victims stranded in New Orleans;
6. Communications from Congressman Charles W. Boustany Jr. (R-LA) requesting federal assistance and any response to Congressman Boustany;
7. Communications regarding offers by corporations and foreign governments to assist the victims of the Hurricane Katrina and FEMA's responses to such offers;
8. Communications between FEMA Director Michael Brown and cabinet officials either before or after the hurricane regarding the potential and actual devastation wrought by the hurricane and the federal government's response to the devastation;
9. Communications regarding the plan to evacuate victims of the hurricane to Charleston, South Carolina and the misrouting of the plane carrying the evacuees to Charleston, West Virginia;
10. Communications regarding the deployment of the National Guard to New Orleans to assist in evacuation and relief efforts;
11. Communications regarding the inclusion of Operation Blessing, a Virginia based charity run by evangelist and Christian Coalition founder Pat Robertson, on FEMA's primary list of charities to which people were asked to donate money to assist hurricane relief efforts; and
12. Communications regarding the limitations placed on journalists and photographers, including, but not limited to, efforts to prevent photographers from taking pictures of the corpses of hurricane victims in Louisiana and Mississippi.

In responding to a FOIA request, the US Department of Homeland Security (DHS)/Federal Emergency Management Agency's (FEMA) search will include responsive records in its control on the date the search began. FEMA's search began September 24, 2005.

The enclosed two pages are released in full at no cost to you. These pages are responsive to item number 2 of the first part of your request.

FEMA will continue to search for additional documents that may be responsive to your request. Because of the broad scope of your request, responsive records may be located

at various offices within FEMA. Each office will respond via separate correspondence with their respective records.

For your information, your FOIA request including your identity, the information made available, is releasable to the public under subsequent FOIA requests. In response to these requests, FEMA does not release personal privacy information, such as home address, telephone numbers or Social Security Numbers all of which are protected from disclosure under FOIA exemption 6.

Thank you for your interest in FEMA's programs and policies.

Sincerely,

Bruce D. Redcay
Acting, Deputy Chief Financial Officer

Enclosures

**U.S. Department of Homeland Security**
500 C Street, SW
Washington, DC 20472

JUN 1 4 2006    **FEMA**

Ms. Melanie Sloan
Citizens for Responsibility and Ethics in Washington
11 DuPont Circle
N.W., 2nd Floor
Washington, DC  20036

RE:  Freedom of Information Act Request
     FOIA Case Number: 05-263

Dear Ms. Sloan:

This letter is a partial response to your Freedom of Information Act (FOIA) request dated
September 7, 2005.  In your request you asked for the following records/information:

1.  What portion of the $3.1 billion appropriated to DHS in fiscal year 2005 for
    emergency preparedness to "support the Nation's ability to prepare for, mitigate
    against, respond to and recover from natural and manmade disasters" was spent to
    prepare for potential hurricanes on the Gulf Coast of the United States and on
    potential flooding in New Orleans;
2.  The amount of money diverted from emergency preparedness for and response to
    natural disasters to emergency preparedness for and response to acts of terrorism
    and the rationale behind any such diversion;
3.  Studies, assessments, presentations, or scenarios of the potential devastation a
    powerful hurricane could wreak on the Gulf Coast, including, but not limited to
    the eight-day tabletop exercise conducted in July 2004 and intended to prepare
    FEMA for a catastrophic hurricane in New Orleans;
4.  Plans created regarding the federal government's response to any such scenarios;
5.  The potential breaching of the levees that would lead to Lake Pontchartrain
    flooding New Orleans and the response to such breaches; and
6.  Communications from anyone employed by or associated with the Army Corps of
    Engineers regarding the problems with and weakness of the levees surrounding
    New Orleans, the potential breaching of the levees and the consequences of such
    breaches, as well as proposed repairs or other construction to the levees.

In addition, your letter stated that "CREW further seeks all memoranda, communications
and records of any kind and from any source, regardless of format, medium, or physical
characteristics, from August 26, 2005 through the present, discussing or mentioning in
any way:

1.  Requests for emergency assistance from local government officials in Mississippi
    and Louisiana in response to Hurricane Katrina;

2. Requests from local government officials in Mississippi and Louisiana for assistance in preparing for Hurricane Katrina, including, but not limited to communications requesting assistance in evacuating residents of Mississippi and Louisiana from the areas in the hurricane's path;

3. Communications between the White House and FEMA regarding the preparation for and response to the damage caused by hurricane Katrina;

4. Communications regarding the conditions in the New Orleans Convention Center;

5. Communications regarding the need for transportation to evacuate victims of the hurricane from the city of New Orleans as well as communications regarding the need for food and water for victims stranded in New Orleans;

6. Communications from Congressman Charles W. Boustany Jr. (R-LA) requesting federal assistance and any response to Congressman Boustany;

7. Communications regarding offers by corporations and foreign governments to assist the victims of the Hurricane Katrina and FEMA's responses to such offers;

8. Communications between FEMA Director Michael Brown and cabinet officials either before or after the hurricane regarding the potential and actual devastation wrought by the hurricane and the federal government's response to the devastation;

9. Communications regarding the plan to evacuate victims of the hurricane to Charleston, South Carolina and the misrouting of the plane carrying the evacuees to Charleston, West Virginia;

10. Communications regarding the deployment of the National Guard to New Orleans to assist in evacuation and relief efforts;

11. Communications regarding the inclusion of Operation Blessing, a Virginia based charity run by evangelist and Christian Coalition founder Pat Robertson, on FEMA's primary list of charities to which people were asked to donate money to assist hurricane relief efforts; and

12. Communications regarding the limitations placed on journalists and photographers, including, but not limited to, efforts to prevent photographers from taking pictures of the corpses of hurricane victims in Louisiana and Mississippi.

In responding to a FOIA request, the US Department of Homeland Security (DHS)/Federal Emergency Management Agency's (FEMA) search will include responsive records in its control on the date the search began. FEMA's search began September 24, 2005.

Your request is granted in part at no cost to you. Enclosed are releasable portions of documents that are responsive to item number 12 in the second part of your request. After thorough legal review of these documents, I have determined that portions of them are exempt from disclosure under exemption 6 of the Freedom of Information Act of 1974, 5 U.S.C. 552, (b)(6), as amended. We are releasing a total of 23 pages, of which 10 are released in part, and 13 pages are released in their entirety.

We are withholding personal cell phone numbers and email addresses, the names of non-DHS government personnel and non-media personnel, under FOIA Exemption 6. Exemption 6 exempts from disclosure records the release of which would cause a clearly

unwarranted invasion of personal privacy. The interest of the general public in reviewing these portions of government documents does not outweigh the individuals' right to privacy. The release of this information adds no detail about agency activities, the core purpose of the FOIA.

I am the official responsible for this determination. You may appeal this determination within 60 days from the date of this letter. Your appeal should include copies of your original request and this response, as well as a discussion of the reasons supporting your appeal. The envelope should be plainly marked to indicate that it contains a Freedom of Information Act appeal. If you decide to appeal, please send your appeal to:

>Freedom of Information Act/Privacy Act Appeals
>U.S. Department of Homeland Security
>245 Murray Lane, SW, Building 410
>Washington, DC  20528

FEMA will continue to search for additional documents that may be responsive to your request. Because of the broad scope of your request, responsive records may be located at various offices within FEMA. Each office will respond via separate correspondence with their respective records.

For your information, your FOIA request including your identity, the information made available, is releasable to the public under subsequent FOIA requests. In response to these requests, FEMA does not release personal privacy information, such as home address, telephone numbers or Social Security Numbers all of which are protected from disclosure under FOIA exemption 6.

Thank you for your interest in FEMA's programs and policies.

Sincerely,

Cindy Taylor
Deputy Director
Office of Public Affairs

Enclosures



U.S. Department of Homeland Security
500 C Street, SW
Washington, DC 20472

**JUN 1 4 2006**



**FEMA**

Ms. Melanie Sloan
Citizens for Responsibility and Ethics in Washington
11 DuPont Circle
N.W., 2nd Floor
Washington, DC 20036

RE:  Freedom of Information Act Request
     FOIA Case Number: 05-263

ARF

Dear Ms. Sloan:

This letter is a partial response to your Freedom of Information Act (FOIA) request dated September 2, 2005.  In your request you asked for the following records/information:



1. What portion of the $3.1 billion appropriated to DHS in fiscal year 2005 for emergency preparedness to "support the Nation's ability to prepare for, mitigate against, respond to and recover from natural and manmade disasters" was spent to prepare for potential hurricanes on the Gulf Coast of the United States and on potential flooding in New Orleans;

2. The amount of money diverted from emergency preparedness for and response to natural disasters to emergency preparedness for and response to acts of terrorism and the rationale behind any such diversion;

3. Studies, assessments, presentations, or scenarios of the potential devastation a powerful hurricane could wreak on the Gulf Coast, including, but not limited to the eight-day tabletop exercise conducted in July 2004 and intended to prepare FEMA for a catastrophic hurricane in New Orleans;

4. Plans created regarding the federal government's response to any such scenarios;

5. The potential breaching of the levees that would lead to Lake Pontchartrain flooding New Orleans and the response to such breaches; and

6. Communications from anyone employed by or associated with the Army Corps of Engineers regarding the problems with and weakness of the levees surrounding New Orleans, the potential breaching of the levees and the consequences of such breaches, as well as proposed repairs or other construction to the levees.

In addition, your letter stated that "CREW further seeks all memoranda, communications and records of any kind and from any source, regardless of format, medium, or physical characteristics, from August 26, 2005 through the present, discussing or mentioning in any way:

1. Requests for emergency assistance from local government officials in Mississippi and Louisiana in response to Hurricane Katrina;

2. Requests from local government officials in Mississippi and Louisiana for assistance in preparing for Hurricane Katrina, including, but not limited to

communications requesting assistance in evacuating residents of Mississippi and Louisiana from the areas in the hurricane's path;

3. Communications between the White House and FEMA regarding the preparation for and response to the damage caused by hurricane Katrina;

4. Communications regarding the conditions in the New Orleans Convention Center;

5. Communications regarding the need for transportation to evacuate victims of the hurricane from the city of New Orleans as well as communications regarding the need for food and water for victims stranded in New Orleans;

6. Communications from Congressman Charles W. Boustany Jr. (R-LA) requesting federal assistance and any response to Congressman Boustany;

7. Communications regarding offers by corporations and foreign governments to assist the victims of the Hurricane Katrina and FEMA's responses to such offers;

8. Communications between FEMA Director Michael Brown and cabinet officials either before or after the hurricane regarding the potential and actual devastation wrought by the hurricane and the federal government's response to the devastation;

9. Communications regarding the plan to evacuate victims of the hurricane to Charleston, South Carolina and the misrouting of the plane carrying the evacuees to Charleston, West Virginia;

10. Communications regarding the deployment of the National Guard to New Orleans to assist in evacuation and relief efforts;

11. Communications regarding the inclusion of Operation Blessing, a Virginia based charity run by evangelist and Christian Coalition founder Pat Robertson, on FEMA's primary list of charities to which people were asked to donate money to assist hurricane relief efforts; and

12. Communications regarding the limitations placed on journalists and photographers, including, but not limited to, efforts to prevent photographers from taking pictures of the corpses of hurricane victims in Louisiana and Mississippi.

In responding to a FOIA request, the US Department of Homeland Security (DHS)/Federal Emergency Management Agency's (FEMA) search will include responsive records in its control on the date the search began. FEMA's search began September 24, 2005.

Your request is granted in part at no cost to you. Enclosed are releasable portions of documents that are responsive to item numbers 1 and 2 of the second part of your request. After thorough legal review of these documents, I have determined that portions of them are exempt from disclosure under exemptions 2 and 6 of the Freedom of Information Act of 1974, 5 U.S.C. 552, (b)(2) and (6), as amended. We are releasing a total of 1,151 pages, all of which are released in part.    *(ARF) — ACTION REQ. FORMS*

We are withholding Government cell phone numbers under FOIA Exemption 2 ("High 2"). FOIA Exemption 2 ("High 2") protects information applicable to internal administrative and personnel matters, to the extent that disclosure would risk circumvention of an agency regulation or statute, impede the effectiveness of an agency's activities, or reveal sensitive information that may put the security and safety of an

agency activity or employee at risk.

We are withholding personal cell phone numbers, non-government phone numbers, and non-FEMA email addresses under FOIA Exemption 6. Exemption 6 exempts from disclosure records the release of which would cause a clearly unwarranted invasion of personal privacy. The interest of the general public in reviewing these portions of government documents does not outweigh the individuals' right to privacy. The release of this information adds no detail about agency activities, the core purpose of the FOIA.

I am the official responsible for this determination. You may appeal this determination within 60 days from the date of this letter. Your appeal should include copies of your original request and this response, as well as a discussion of the reasons supporting your appeal. The envelope should be plainly marked to indicate that it contains a Freedom of Information Act appeal. If you decide to appeal, please send your appeal to:

> Freedom of Information Act/Privacy Act Appeals
> U.S. Department of Homeland Security
> 245 Murray Lane, SW, Building 410
> Washington, DC 20528

FEMA will continue to search for additional documents that may be responsive to your request. Because of the broad scope of your request, responsive records may be located at various offices within FEMA. Each office will respond via separate correspondence with their respective records.

For your information, your FOIA request including your identity, the information made available, is releasable to the public under subsequent FOIA requests. In response to these requests, FEMA does not release personal privacy information, such as home address, telephone numbers or Social Security Numbers all of which are protected from disclosure under FOIA exemption 6.

Thank you for your interest in FEMA's programs and policies.

Sincerely,

Michael W. Lowder
Deputy Director
Response Division

Enclosures

U.S. Department of Homeland Security
500 C Street, SW
Washington, DC 20472

**JUN 3 0 2006**

**FEMA**

Ms. Melanie Sloan
Citizens for Responsibility and Ethics in Washington
11 DuPont Circle
N.W., 2nd Floor
Washington, DC 20036

RE: Freedom of Information Act Request
      FOIA Case Number: 05-263

Dear Ms. Sloan:

This letter is a partial response to your Freedom of Information Act (FOIA) request dated September 7, 2005. In your request you asked for the following records/information:

1.  What portion of the $3.1 billion appropriated to DHS in fiscal year 2005 for emergency preparedness to "support the Nation's ability to prepare for, mitigate against, respond to and recover from natural and manmade disasters" was spent to prepare for potential hurricanes on the Gulf Coast of the United States and on potential flooding in New Orleans;
2.  The amount of money diverted from emergency preparedness for and response to natural disasters to emergency preparedness for and response to acts of terrorism and the rationale behind any such diversion;
3.  Studies, assessments, presentations, or scenarios of the potential devastation a powerful hurricane could wreak on the Gulf Coast, including, but not limited to the eight-day tabletop exercise conducted in July 2004 and intended to prepare FEMA for a catastrophic hurricane in New Orleans;
4.  Plans created regarding the federal government's response to any such scenarios;
5.  The potential breaching of the levees that would lead to Lake Pontchartrain flooding New Orleans and the response to such breaches; and
6.  Communications from anyone employed by or associated with the Army Corps of Engineers regarding the problems with and weakness of the levees surrounding New Orleans, the potential breaching of the levees and the consequences of such breaches, as well as proposed repairs or other construction to the levees.

In addition, your letter stated that "CREW further seeks all memoranda, communications and records of any kind and from any source, regardless of format, medium, or physical characteristics, from August 26, 2005 through the present, discussing or mentioning in any way:

1.  Requests for emergency assistance from local government officials in Mississippi and Louisiana in response to Hurricane Katrina;
2.  Requests from local government officials in Mississippi and Louisiana for assistance in preparing for Hurricane Katrina, including, but not limited to

communications requesting assistance in evacuating residents of Mississippi and Louisiana from the areas in the hurricane's path;

3. Communications between the White House and FEMA regarding the preparation for and response to the damage caused by hurricane Katrina;

4. Communications regarding the conditions in the New Orleans Convention Center;

5. Communications regarding the need for transportation to evacuate victims of the hurricane from the city of New Orleans as well as communications regarding the need for food and water for victims stranded in New Orleans;

6. Communications from Congressman Charles W. Boustany Jr. (R-LA) requesting federal assistance and any response to Congressman Boustany;

7. Communications regarding offers by corporations and foreign governments to assist the victims of the Hurricane Katrina and FEMA's responses to such offers;

8. Communications between FEMA Director Michael Brown and cabinet officials either before or after the hurricane regarding the potential and actual devastation wrought by the hurricane and the federal government's response to the devastation;

9. Communications regarding the plan to evacuate victims of the hurricane to Charleston, South Carolina and the misrouting of the plane carrying the evacuees to Charleston, West Virginia;

10. Communications regarding the deployment of the National Guard to New Orleans to assist in evacuation and relief efforts;

11. Communications regarding the inclusion of Operation Blessing, a Virginia based charity run by evangelist and Christian Coalition founder Pat Robertson, on FEMA's primary list of charities to which people were asked to donate money to assist hurricane relief efforts; and

12. Communications regarding the limitations placed on journalists and photographers, including, but not limited to, efforts to prevent photographers from taking pictures of the corpses of hurricane victims in Louisiana and Mississippi.

In responding to a FOIA request, the US Department of Homeland Security (DHS)/Federal Emergency Management Agency's (FEMA) search will include responsive records in its control on the date the search began. FEMA's search began September 24, 2005.

Your request is granted in part at no cost to you. Enclosed are releasable portions of documents that are responsive to item numbers 2, 4 and 5 of the second part of your request. After thorough legal review of these documents, I have determined that portions of them are exempt from disclosure under exemptions 2 and 6 of the Freedom of Information Act of 1974, 5 U.S.C. 552, (b)(2) and (6), as amended. We are releasing a total of 96 pages, all of which are released in part.

We are withholding Government cell phone numbers under FOIA Exemption 2 ("High 2"). FOIA Exemption 2 ("High 2") protects information applicable to internal administrative and personnel matters, to the extent that disclosure would risk circumvention of an agency regulation or statute, impede the effectiveness of an agency's activities, or reveal sensitive information that may put the security and safety of an

agency activity or employee at risk.

We are withholding names of non-DHS personnel, personal cell phone numbers, non-government phone numbers, and non-FEMA email addresses under FOIA Exemption 6. Exemption 6 exempts from disclosure records the release of which would cause a clearly unwarranted invasion of personal privacy. The interest of the general public in reviewing these portions of government documents does not outweigh the individuals' right to privacy. The release of this information adds no detail about agency activities, the core purpose of the FOIA.

I am the official responsible for this determination. You may appeal this determination within 60 days from the date of this letter. Your appeal should include copies of your original request and this response, as well as a discussion of the reasons supporting your appeal. The envelope should be plainly marked to indicate that it contains a Freedom of Information Act appeal. If you decide to appeal, please send your appeal to:

> Freedom of Information Act/Privacy Act Appeals
> U.S. Department of Homeland Security
> 245 Murray Lane, SW, Building 410
> Washington, DC 20528

FEMA will continue to search for additional documents that may be responsive to your request. Because of the broad scope of your request, responsive records may be located at various offices within FEMA. Each office will respond via separate correspondence with their respective records.

For your information, your FOIA request including your identity, the information made available, is releasable to the public under subsequent FOIA requests. In response to these requests, FEMA does not release personal privacy information, such as home address, telephone numbers or Social Security Numbers all of which are protected from disclosure under FOIA exemption 6.

Thank you for your interest in FEMA's programs and policies.

> Sincerely,
>
> *Glenn M. Cannon, III*
> Glenn M. Cannon
> Director
> Response Division

Enclosures

U.S. Department of Homeland Security
500 C Street, SW
Washington, DC 20472



July 7, 2006

Ms. Melanie Sloan
Citizens for Responsibility and Ethics in Washington (CREW)
11 DuPont Circle
N.W., 2nd Floor
Washington, DC 20036

RE: Freedom of Information Act Request
    FOIA Case Number: 05-263

Dear Ms. Sloan:

In compliance with the April 4, 2006 schedule agreed upon by the parties in the CREW v. Department of Homeland Security (DHS), Civil Action No. 06cv0173 (RJL), this letter is a final response to your Freedom of Information (FOIA) request dated September 7, 2005. In your request you asked for the following records/information:

1. What portion of the $3.1 billion appropriated to DHS in fiscal year 2005 for emergency preparedness to "support the Nation's ability to prepare for, mitigate against, respond to and recover from natural and manmade disasters" was spent to prepare for potential hurricanes on the Gulf Coast of the United States and on potential flooding in New Orleans;
2. The amount of money diverted from emergency preparedness for and response to natural disasters to emergency preparedness for and response to acts of terrorism and the rationale behind any such diversion;
3. Studies, assessments, presentations, or scenarios of the potential devastation a powerful hurricane could wreak on the Gulf Coast, including, but not limited to the eight-day tabletop exercise conducted in July 2004 and intended to prepare FEMA for a catastrophic hurricane in New Orleans;
4. Plans created regarding the federal government's response to any such scenarios;
5. The potential breaching of the levees that would lead to Lake Pontchartrain flooding New Orleans and the response to such breaches; and
6. Communications from anyone employed by or associated with the Army Corps of Engineers regarding the problems with and weakness of the levees surrounding New Orleans, the potential breaching of the levees and the consequences of such breaches, as well as proposed repairs or other construction to the levees.

In addition, your letter stated that "CREW further seeks all memoranda, communications and records of any kind and from any source, regardless of format, medium, or physical characteristics, from August 26, 2005 through the present, discussing or mentioning in any way:

1. Requests for emergency assistance from local government officials in Mississippi and Louisiana in response to Hurricane Katrina;
2. Requests from local government officials in Mississippi and Louisiana for assistance in preparing for Hurricane Katrina, including, but not limited to communications requesting assistance in evacuating residents of Mississippi and Louisiana from the areas in the hurricane's path;
3. Communications between the White House and FEMA regarding the preparation for and response to the damage caused by hurricane Katrina;
4. Communications regarding the conditions in the New Orleans Convention Center;
5. Communications regarding the need for transportation to evacuate victims of the hurricane from the city of New Orleans as well as communications regarding the need for food and water for victims stranded in New Orleans;
6. Communications from Congressman Charles W. Boustany Jr. (R-LA) requesting federal assistance and any response to Congressman Boustany;
7. Communications regarding offers by corporations and foreign governments to assist the victims of the Hurricane Katrina and FEMA's responses to such offers;
8. Communications between FEMA Director Michael Brown and cabinet officials either before or after the hurricane regarding the potential and actual devastation wrought by the hurricane and the federal government's response to the devastation;
9. Communications regarding the plan to evacuate victims of the hurricane to Charleston, South Carolina and the misrouting of the plane carrying the evacuees to Charleston, West Virginia;
10. Communications regarding the deployment of the National Guard to New Orleans to assist in evacuation and relief efforts;
11. Communications regarding the inclusion of Operation Blessing, a Virginia based charity run by evangelist and Christian Coalition founder Pat Robertson, on FEMA's primary list of charities to which people were asked to donate money to assist hurricane relief efforts; and
12. Communications regarding the limitations placed on journalists and photographers, including, but not limited to, efforts to prevent photographers from taking pictures of the corpses of hurricane victims in Louisiana and Mississippi.

In responding to a FOIA request, the US Department of Homeland Security (DHS)/Federal Emergency Management Agency's (FEMA) search will include responsive records in its control on the date the search began. FEMA's search began September 24, 2005.

This release is granted in part at no cost to you. Enclosed are releasable portions of Hurricane Katrina video-teleconference transcripts, e-mails from William Lokey, Patrick Rhode, Michael Brown, David Trissell, and Jordan Fried as well as other documents that

relate to your request. After thorough legal review of these documents, I have determined that portions of them are exempt from disclosure under exemptions 2, 5 and 6 of the Freedom of Information Act of 1974, 5 U.S.C. 552, (b)(2), (5) and (6), as amended. We are releasing a total of 1786 pages, of which 1632 are released in part, and 154 pages are released in their entirety. In addition, we are withholding 1168 pages in their entirety.

We are withholding portions of the respective emails under the following FOIA exemptions. We are withholding Government cell phone numbers, FEMA Readiness Alert Status information, government e-mail addresses, non-DHS government phone numbers, security information, and internal administrative information under FOIA Exemption 2("High 2"). FOIA Exemption 2("High 2") protects information applicable to internal administrative and personnel matters, to the extent that disclosure would risk circumvention of an agency regulation or statute, impede the effectiveness of an agency's activities, or reveal sensitive information that may put the security and safety of an agency activity or employee at risk.

We are withholding information that reveals internal administrative matters under FOIA Exemption 2 ("Low 2"). FOIA Exemption 2 ("Low 2") protects information applicable to internal administrative and personnel matters, to the extent that the material is trivial in nature and is of no genuine public interest.

We are withholding information pursuant to Exemption 5, which pertains to certain inter- and intra-agency communications protected by the deliberative process privilege, attorney work product privilege, and/or attorney-client privilege.

We are withholding the name, address, phone number, and e-mail address of non-government individuals, home phone number and home address of DHS employees, and personal family information under FOIA Exemption 6. Exemption 6 exempts from disclosure records the release of which would cause a clearly unwarranted invasion of personal privacy. The interest of the general public in reviewing these portions of government documents does not outweigh the individuals' right to privacy. The release of this information adds no detail about agency activities, the core purpose of the FOIA.

In addition, while searching for responsive records we located several that had originated from other agencies. We have referred these documents to the respective agency for direct response to you. We have requested that these agencies expedite their processing of these documents in their queue. Following are the number of pages referred, and to which agency they were referred to:

- 2 pages to the Environmental Protection Agency
- 50 pages to the U.S. Army
- 19 pages to the Department of Homeland Security Disclosure Office
- 7 pages to the Health and Human Services

FEMA will continue to search for any additional documents that are responsive to your request, and, to the extent documents have previously been withheld, we will continue to review them to determine if any releases are appropriate. If further documents are located or determined to be responsive to your request they will be forwarded to you upon completion of a legal review. However, the processing of this request has been very time consuming and FEMA will contact you about fees to be charged for any future processing of documents prior to processing them.

I am the official responsible for this determination. You may appeal this determination within sixty calendar days from the date of this letter. Your appeal should include copies of your original request and this response, as well as a discussion of the reasons supporting your appeal. The envelope should be plainly marked to indicate that it contains a Freedom of Information Act appeal. If you decide to appeal, please send your appeal to:

> Freedom of Information Act/Privacy Act Appeals
> U.S. Department of Homeland Security
> 245 Murray Lane, SW, Building 410
> Washington, DC  20528

For your information, your FOIA request, including your identity and the information made available, is releasable to the public under subsequent FOIA requests. In response to these requests, FEMA does not release personal privacy information, such as home address, telephone numbers or Social Security Numbers all of which are protected from disclosure under FOIA Exemption 6.

Thank you for your interest in FEMA's programs and policies.

Sincerely,

David A. Trissell
FEMA Chief Counsel

Enclosures

cc:     Peter Bryce
        US Department of Justice



U.S. Department of Homeland Security
500 C Street, SW
Washington, DC 20472

February 16, 2007

Ms. Melanie Sloan
Citizens for Responsibility and Ethics in Washington (CREW)
1400 Eye Street NW, Suite 450
Washington D.C. 20005

RE:  Freedom of Information Act Request
     FOIA Case Number: 05-263

Dear Ms. Sloan:

This letter is a follow-up response to your Freedom of Information Act (FOIA) request dated September 7, 2005 and our previous production of documents that accompanied my letter to you dated July 7, 2006.  Enclosed you will find additional documents that are responsive to your request.    In your request you asked for the following records/information:

1.  What portion of the $3.1 billion appropriated to DHS in fiscal year 2005 for emergency preparedness to "support the Nation's ability to prepare for, mitigate against, respond to and recover from natural and manmade disasters" was spent to prepare for potential hurricanes on the Gulf Coast of the United States and on potential flooding in New Orleans;

2.  The amount of money diverted from emergency preparedness for and response to natural disasters to emergency preparedness for and response to acts of terrorism and the rationale behind any such diversion;

3.  Studies, assessments, presentations, or scenarios of the potential devastation a powerful hurricane could wreak on the Gulf Coast, including, but not limited to the eight-day tabletop exercise conducted in July 2004 and intended to prepare FEMA for a catastrophic hurricane in New Orleans;

4.  Plans created regarding the federal government's response to any such scenarios;

5.  The potential breaching of the levees that would lead to Lake Pontchartrain flooding New Orleans and the response to such breaches; and

6.  Communications from anyone employed by or associated with the Army Corps of Engineers regarding the problems with and weakness of the levees surrounding

New Orleans, the potential breaching of the levees and the consequences of such breaches, as well as proposed repairs or other construction to the levees.

In addition, your letter stated that "CREW further seeks all memoranda, communications and records of any kind and from any source, regardless of format, medium, or physical characteristics, from August 26, 2005 through the present, discussing or mentioning in any way:

1. Requests for emergency assistance from local government officials in Mississippi and Louisiana in response to Hurricane Katrina;

2. Requests from local government officials in Mississippi and Louisiana for assistance in preparing for Hurricane Katrina, including, but not limited to communications requesting assistance in evacuating residents of Mississippi and Louisiana from the areas in the hurricane's path;

3. Communications between the White House and FEMA regarding the preparation for and response to the damage caused by hurricane Katrina;

4. Communications regarding the conditions in the New Orleans Convention Center;

5. Communications regarding the need for transportation to evacuate victims of the hurricane from the city of New Orleans as well as communications regarding the need for food and water for victims stranded in New Orleans;

6. Communications from Congressman Charles W. Boustany Jr. (R-LA) requesting federal assistance and any response to Congressman Boustany;

7. Communications regarding offers by corporations and foreign governments to assist the victims of the Hurricane Katrina and FEMA's responses to such offers;

8. Communications between FEMA Director Michael Brown and cabinet officials either before or after the hurricane regarding the potential and actual devastation wrought by the hurricane and the federal government's response to the devastation;

9. Communications regarding the plan to evacuate victims of the hurricane to Charleston, South Carolina and the misrouting of the plane carrying the evacuees to Charleston, West Virginia;

10. Communications regarding the deployment of the National Guard to New Orleans to assist in evacuation and relief efforts;

11. Communications regarding the inclusion of Operation Blessing, a Virginia based charity run by evangelist and Christian Coalition founder Pat Robertson, on FEMA's primary list of charities to which people were asked to donate money to assist hurricane relief efforts; and

12. Communications regarding the limitations placed on journalists and photographers, including, but not limited to, efforts to prevent photographers from taking pictures of the corpses of hurricane victims in Louisiana and Mississippi.

In responding to a FOIA request, FEMA's search will include responsive records in its control on the date the search began. FEMA's search began September 24, 2005.

This partial release is granted at no cost to you. Enclosed are releasable portions of e-mails and e-mail attachments that relate to your request. After thorough legal review of these documents, I have determined that portions of them are exempt from disclosure under exemptions 2, 5 and 6 of the Freedom of Information Act of 1974, 5 U.S.C. 552(b)(2), 552(b)(5) and (6), as amended. We are releasing a total of 552 pages, 27 pages in full and 525 pages in part.

We are withholding portions of the e-mails under the following FOIA exemptions. We are withholding Government cell phone numbers, non-"@dhs.gov" or "@associates.dhs.gov" government e-mail addresses, non-DHS government phone numbers, and internal administrative information under FOIA Exemption 2("High 2"). High 2 protects information applicable to internal administrative and personnel matters, to the extent that disclosure would risk circumvention of an agency regulation or statute, impede the effectiveness of an agency's activities, or reveal sensitive information that may put the security and safety of an agency activity or employee at risk.

We are withholding information that reveals internal administrative matters under FOIA Exemption 2 ("Low 2"). Low 2 protects information applicable to internal administrative and personnel matters, to the extent that the material is trivial in nature and is of no genuine public interest.

We are withholding the name, address, phone number, and e-mail address of non-government individuals, home phone number and home address of DHS employees, and personal family information under FOIA Exemption 6. Exemption 6 exempts from disclosure records the release of which would cause a clearly unwarranted invasion of personal privacy. The interest of the general public in reviewing these portions of government documents does not outweigh the individuals' right to privacy. The release of this information adds no detail about agency activities, the core purpose of the FOIA.

We are withholding portions of the documents under Exemption 5 because they are protected under one or more of various privileges, including the deliberative process privilege, the attorney-client privilege, the work product privilege and the presidential communications privilege. FOIA exemption 5 protects "inter-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. 552 (b)(5). The purpose of exemption 5 is to protect the internal decision-making process of Governmental agencies, and the documents that reflect these internal, pre-decisional and deliberative evaluations, opinions and analysis, including agency advice and recommendations to the President in the disaster declaration process. Because these documents are deliberative and pre-decisional in nature, their release could inhibit candor and the open and frank discussions and expressions of opinion necessary for agency decision makers to make informed decisions in the administration of their duties.

I am the official responsible for this determination. You may appeal this determination within sixty calendar days from the date of this letter. Your appeal should include copies of your original request and this response, as well as a discussion of the reasons supporting your appeal. The envelope should be plainly marked to indicate that it contains a Freedom of Information Act appeal. If you decide to appeal, please send your appeal to:

> Freedom of Information Act/Privacy Act Appeals
> U.S. Department of Homeland Security
> 245 Murray Lane, SW, Building 410
> Washington, DC 20528

For your information, your FOIA request including your identity, the information made available, is releasable to the public under subsequent FOIA requests. In response to these requests, FEMA does not release personal privacy information, such as home address, telephone numbers or Social Security Numbers all of which are protected from disclosure under FOIA Exemption 6.

Thank you for your interest in FEMA's programs and policies.

Sincerely,

David A. Trissell
Chief Counsel

Enclosures

4