UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>U.S. DEPARTMENT OF HOMELAND SECURITY, )<br>)<br>Defendant. ) | Civil Action No. 06-0173 (RJL) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

On August 29, 2005, Hurricane Katrina pushed ashore from the Gulf of Mexico, wreaking havoc on the states of Louisiana, Mississippi, Alabama and Florida. The levees protecting the city of New Orleans were breached and the resulting floods destroyed much of the city. Many citizens of New Orleans evacuated their homes, but were unable to leave the city. Instead they fled to the Superdome and the New Orleans Convention Center. Chaos ensued and before the floods waters had receded, thousands of people were dead and even more were left homeless.

Soon after the Hurricane made landfall, it became clear that the response of the federal government, especially that of the Federal Emergency Management Agency ("FEMA"),[1] was grossly inadequate. Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") made a Freedom of Information Act ("FOIA") request to defendant DHS and specifically FEMA

---

[1] FEMA is a component agency of defendant U.S. Department of Homeland Security ("DHS"). Complaint for Declaratory Judgment and Injunctive Relief, ¶ 1 (hereinafter "Complaint").

to learn why this was so. FEMA's response was slow in coming and now, nearly eighteen months after the disaster of Hurricane Katrina, FEMA continues to block access to important information by withholding over 1500 pages of material in whole or in part that would help explain the reasons behind FEMA's response.

FEMA has also moved for summary judgment, arguing that the withheld material is protected by one of the privileges encompassed within Exemption 5 of the FOIA. As discussed herein, FEMA has not met its burden of proof in establishing that the withheld material is protected under Exemption 5 and therefore is not entitled to summary judgment in this matter.

## FACTUAL BACKGROUND

Plaintiff CREW is a non-profit corporation dedicated to "protecting the rights of citizens to be informed about the activities of government officials and to ensuring the integrity of government officials." Complaint, ¶ 4. In particular, CREW is dedicated to empowering citizens to have an influential voice in government decisions and in the government decision-making process. Id.

### CREW's FOIA Request of September 7, 2005

On September 7, 2006, CREW sent a FOIA request to FEMA seeking records and information, regardless of format and specifically including electronic records, relating to FEMA's response to Hurricane Katrina. CREW requested all memoranda, communications and records of any kind and from any source, regardless of format, medium, or physical characteristics, from January 1, 2001 to the present, discussing or mentioning in any way:

> 1) what portion of the $3.1 billion appropriated to DHS in fiscal year 2005 for emergency preparedness to support the Nation's ability to prepare for, mitigate against, respond to and recover from natural and man manmade disasters was spent to prepare for potential

2

hurricanes on the Gulf Coast of the United States and on potential flooding in New Orleans;

2) the amount of money diverted from emergency preparedness for and response to natural disasters to emergency preparedness for and response to acts of terrorism and the rationale behind any such diversion;

3) studies, assessments, presentations, or scenarios of the potential devastation a powerful hurricane could wreak on the Gulf Coast, including, but not limited to the eight-day tabletop exercise conducted in July 2004 and intended to prepare FEMA for a catastrophic hurricane in New Orleans;

4) plans created regarding the federal government's response to any such scenarios;

5) the potential breaching of the levees that would lead to Lake Pontchartrain flooding New Orleans and the response to such breaches; and

6) communications from anyone employed by or associated with the Army Corps of Engineers regarding the problems with and weakness of the levees surrounding New Orleans, the potential breaching of the levees and the consequences of such breaches, as well as proposed repairs or other construction to the levees.

<u>Letter from Melanie Sloan to Jeff Ovall, FOIA/Privacy Act Specialist, Office of General Counsel, FEMA</u>, September 7, 2005 (Exhibit I to Complaint).

CREW's request further sought all memoranda, communications and records of any kind and from any source, regardless of format, medium, or physical characteristics, from August 26, 2005 to the present, discussing or mentioning in any way:

1) requests for emergency assistance from local government officials in Mississippi and Louisiana in response to hurricane Katrina;

2) requests from local government officials in Mississippi and Louisiana for assistance in preparing for hurricane Katrina, including, but not limited to communications requesting assistance in evacuating residents of Mississippi and Louisiana from the areas in the hurricane's path;

3) communications between the White House and FEMA regarding the preparation for and response to the damage caused by hurricane Katrina;

4) communications regarding the conditions in the New Orleans Convention Center;

5) communications regarding the need for transportation to evacuate victims of the hurricane from the city of New Orleans as well as communications regarding the need for food and water for victims stranded in New Orleans;

6) communications from Congressman Charles W. Boustany Jr. (R-LA) requesting federal assistance and any response to Cong. Boustany;

7) communications regarding offers by corporations and foreign governments to assist the victims of hurricane Katrina and FEMA's responses to such offers;

8) communications between FEMA director Michael Brown and cabinet officials either before or after the hurricane regarding the potential and actual devastation wrought by the hurricane and the federal government's response to the devastation;

9) communications regarding the plan to evacuate victims of the hurricane to Charleston, South Carolina and the misrouting of the plane carrying the evacuees to Charleston, West Virginia;

10) communications regarding the deployment of the National Guard to New Orleans to assist in evacuation and relief efforts;

11) communications regarding the inclusion of Operation Blessing, a Virginia based charity run by evangelist and Christian Coalition founder Pat Robertson, on FEMA's primary list of charities to which people were asked to donate money to assist hurricane relief efforts; and

12) communications regarding the limitations placed on journalists and photographers, including, but not limited to, efforts to prevent photographers from taking pictures of the corpses of hurricane victims in Louisiana and Mississippi.

Id.

## FEMA's Processing of FOIA Request

FEMA began releasing material to CREW on January 24, 2006, and concluded its releases on February 17, 2007. Declaration of Adrian Sevier, ¶¶ 24-25, attached as Exhibit A to Defendant's Motion for Summary Judgment. Defendant has now processed approximately 8100

pages of material, and has withheld 1503 pages of information either in whole or part pursuant to FOIA Exemption 5.[2]  Id., ¶ 27.

## STATUTORY BACKGROUND

The Freedom of Information Act, 5 U.S.C. § 552, is a mandatory disclosure statute that requires federal agencies to release requested agency records to the public upon a request made by any person, unless one or more of nine statutory exemptions apply.  The FOIA was enacted to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."  U.S. Dep't of the Air Force v. Rose, 425 U.S. 352, 361 (1976) *(quoting* Rose, 495 F.2d 261, 263 (2d Cir. 1974)).  The FOIA allows citizens to know "what the government is up to," U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 773 (1989), *reh'g denied,* No. 02-409, 2004 WL 108633 (U.S. May 17, 2004), and acts as a check against corruption by holding the government accountable to those it governs.  NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978).

Agency records not subject to a FOIA exemption must be disclosed upon the agency's receipt of a proper request.  Such request must "reasonably describe" the records sought, 5 U.S.C. § 552(a)(3)(A), and must be made in accordance with the agency's published FOIA regulations.  Id. at § 552(a)(3)(A)(ii).

The agency must respond to a properly submitted FOIA request within 20 working days by at least notifying the requester of the agency's determination whether or not to disclose the requested document(s), and of the requester's right to appeal the agency determination to the agency head. 5 U.S.C. § 552(a)(6)(A)(I).  An agency may delay its response to a FOIA request in

---

[2] Information has also been withheld pursuant to FOIA Exemptions 2 and 7(C).  Plaintiff is not contesting these FOIA exemptions here.

"unusual circumstances," but must provide notice and "the date on which a determination is expected to be dispatched." 5 U.S.C. § 552(a)(6)(B). An agency must respond to a FOIA appeal within 20 working days, notifying the requester of its determination to either release the requested records or uphold the denial. 5 U.S.C. § 552(a)(6)(A)(ii).

An agency's failure to comply with the time limits for either processing the initial request or adjudicating an administrative appeal may be treated as a "constructive exhaustion" of administrative remedies. 5 U.S.C. § 552(a)(6)(C). In those circumstances, the requester may seek judicial relief, without availing itself of the administrative appeal process. See, e.g., Spannaus v. U.S. Dep't of Justice, 824 F.2d 52, 58 (D.C. Cir. 1987). Upon receipt of a FOIA complaint, the district court has jurisdiction to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). In a FOIA action, the agency bears the burden of justifying its failure to disclose the requested documents. Id.

## ARGUMENT

### I. FEMA HAS FAILED TO ESTABLISH THAT THE WITHHELD DOCUMENTS ARE WITHIN THE SCOPE OF EXEMPTION 5.

FEMA has withheld approximately 1500 pages pursuant to FOIA Exemption 5. As detailed below, the agency, through its declarations and Vaughn index, has not established that many of the documents meet even the threshold requirements for Exemption 5. FEMA has also failed to establish that the deliberative process privilege, presidential communications privilege and attorney-client privilege apply to the withheld documents at issue.[3]

---

[3] Plaintiffs are not contesting the documents concerning litigation with CNN, described in the Vaughn index at Bates Numbers 912 to 1044.

6

**A. Many of the Documents Fail to Meet the Threshold of Exemption 5.**

Exemption 5 of the FOIA allows for the protection from disclosure of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). As a threshold matter, to be protected under this exemption the document's source must be a government agency. U.S. Dep't of the Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001) ("Klamath"). Many of the documents defendant seeks to protect here are not from a government agency or were shared with a non-federal government agency or a third party, placing them outside the reach of Exemption 5. So, for example, as FEMA's Vaughn index establishes, some of the documents at issue are from or were shared with contractors, state officials, a former congressman, a current member of Congress, and a director of a corporation.[4]

Documents shared with a non-federal governmental source may be protected under the privileges encompassed by Exemption 5, but only if the agency can establish that the source was representing the agency's interests in the source's capacity as a consultant. See Klamath, 532 U.S. at 9-10, 15-16; Hoover v. U.S. Dep't of Interior, 611 F.2d 1132, 1137-1138 (5th Cir. 1980); Lead Industries Assn. v. OSHA, 610 F. 2d 70, 83 (2d Cir. 1979); Soucie v. David, 448 F. 2d 1067, 1068 n.44 (D.C. Cir. 1971). By contrast, information shared with third parties who are not acting on behalf of the government as contractors, but are acting in their own self interest, is not entitled to protection under exemption 5. See Klamath, 532 U.S. at 9-10, 15-16.

In this case the government has not established that the non-federal government sources for the documents and information at issue -- the contractors, state officials, members of

---

[4] See Vaughn Document Number 645-650, 796-798, 812-820, 885-902, 903-910, 1526-1529, 1547-1548, 1703-1748,

Congress and the like -- were acting to further the federal government's interests, rather than the sources' own interests. In fact, defendant does not address this issue at all. In the absence of any explanation, these documents cannot be protected pursuant to any of the privileges of Exemption 5 and must be released to plaintiff.

Moreover, the limited explanation FEMA has offered demonstrates that many of the contested documents in fact do not meet the threshold for Exemption 5 protection. For example, Document Numbers 796-798 are described as being "from a FEMA contractor to FEMA staff with questions about a possible contract award." A contract award process is, by its very nature, an adversarial process (or certainly not one where the contractor is acting to further the government's interest) as the contractor, in seeking the award of a contract, is acting in its own economic self-interest at the expense of other possible bidders. On this basis alone these contractor documents may not be withheld pursuant to Exemption 5. Id.

Similarly, communications with members of Congress are not within the protection of Exemption 5, as those members cannot properly be considered to be representing the agency's interests. In addition they, like many of the non-federal government sources, were likely acting in their own self-interest. While these sources may have been motivated at least in part by a desire to assist in post- Katrina relief measures, their communications with the government are in a context that suggests they were seeking to receive something of benefit from the government at the expense of others, such as priority assistance for an area affected by Hurricane Katrina.

Without further explanation, the Court cannot make the necessary findings to establish that this material is even eligible for protection pursuant to FOIA exemption 5. Id. As a threshold matter, defendant has failed to establish that any document that does not explicitly

identify its source as the executive branch of the federal government is subject to protection pursuant to Exemption 5.

### B. Defendant has Failed to Establish that the Deliberative Process Privilege Applies in this Instance.

Defendant has withheld a large number of documents as within the deliberative process privilege and therefore protected by Exemption 5. To qualify as within this privilege a document must be both predecisional and deliberative. Mapother v. U.S. Dep't of Justice, 3 F.3d 1533, 1537 (D.C. Cir. 1993) ("The deliberative process privilege protects materials that are both predecisional and deliberative." (*citing* Petroleum Info. Corp. v. U.S. Dep't of the Interior, 976 F.2d 1429, 1434 (D.C. Cir. 1992)). In determining whether a document is predecisional, an agency must establish "what deliberative process is involved, and the role played by the documents in issue in the course of that process." Coastal States Gas Corp. v. U.S. Dep't of Energy, 617 F.2d 854, 868 (D.C. Cir. 1980). To be deliberative, a document "must be 'a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters.'" Wilderness Society v. U.S. Dep't of Interior, 344 F. Supp. 2d 1, 11 (D.D.C. 2004) (*citation omitted*). Most importantly, "the document must reflect the 'give-and-take of the consultative process.'" Id. at 11 (*quoting* Senate of Puerto Rico v. U.S. Dep't of Justice, 823 F.2d 574, 585 (D.C. Cir. 1987)).

The burden is on defendant to prove that the privilege applies either through its Vaughn index or declarations. Summers v. U.S. Dep't of Justice, 140 F.3d 1077, 1080 (D.C. Cir. 1998); Vaughn v. Rosen, 484 F.2d 820, 823 (D.C. Cir. 1973). For a number of reasons, defendant's Vaughn index and attached declarations do not justify the invocation of the deliberative process

privilege here. This "evidence" does not demonstrate how particular documents relate to or assisted in a particular specific decision or decisional process, or reveal the give-and-take of the defendant's consultative process. First, defendant fails to establish what deliberations actually are represented in the withheld documents. Second, the deliberations allegedly reflected in the withheld documents are not described with the specificity necessary to allow the Court to determine how the documents related to or assisted in a deliberative process. Third, there is no evidence that the withheld documents were part of an agency's give-and-take in a decision making process. In short, none of proffered justifications provides any information that would enable the Court to determine in which decision or decisional process the withheld material assisted. See Nat'l Resources Defense Council v. U.S. Dep't of Defense, 388 F. Supp.2d 1086, 1103-04 (C.D. Cal. 2005); Judicial Watch v. U.S. Postal Serv., 297 F. Supp. 2d 252, 259-265 (D.D.C. 2004).

For example, many redactions made pursuant to the deliberative process privilege are described as relating to "personnel" decisions.[5] No facts about these "personnel" decisions are given such as who made the decision, or even what type of decision was made. Without further description, these "personnel" decisions cannot properly be characterized as deliberative. All of the descriptions of the documents withheld pursuant to the deliberative process privilege suffer from these same defects.

Even where if it can be construed from the Vaughn index that a decision making process is at issue, it is apparent from the descriptions offered in the index that these decisions do not concern agency **legal** or **policy** matters. Yet the deliberative process privilege protects only

---

[5] See Bates Number 2-3, 40-43, 59, 1397-1414, 1426-1428, 1441-1446, 1627-1628, 1771-1773, 1804-1805, 1865-1877, 1905-1906.

those types of decisions.  See Vaughn, 523 F.2d at 1144; Wilderness Society, 344 F. Supp. at 11. Simply stated, FEMA has failed to establish to what exercise of policy or legal oriented judgment these documents relate.

In fact, the decisions at issue in the contested documents concern mainly operational issues pertaining to Hurricane Katrina.  For instance, FEMA has withheld one document as relating to a deliberation that the agency describes as "predictive opinions about possible participants in discussions" concerning a Video Telephone Conference ("VTC").  See Bates Number 1416-1417.  Predicting who will participate in a VTC is not a legal or policy decision of an agency.  Similarly, "a discussion about the appropriate response to fires caused by Hurricane Katrina" was withheld as within the deliberative process privilege.  See Bates Number documents 1474-1480.  But this description does not implicate any legal or policy decision of FEMA.  In short, even where descriptions are given, they are of discussions on issues that simply do not rise to the level of policy-oriented judgment that would place the redacted material within the deliberative process privilege.

Additionally, much of the material withheld pursuant to the deliberative process privilege appears to be merely factual.  Purely factual material, however, is not within this privilege.  EPA v. Mink, 410 U.S. 73, 91 (1973); Coastal States, 617 F.2d at 867.  FEMA's apparent motivation for withholding such material is to protect the agency and its employees from embarrassment. Exemption 5 provides no protection, however, for information that shows the agency in a bad light.

Moreover, while factual material may be protected if it is intertwined within a deliberative process, see Montrose Chem. Corp. v. Train, 491 F.2d 63, 71 (D.C. Cir. 1974), the

11

descriptions of the material at issue indicate that is not the case here. For example, briefings and reports about events occurring in the aftermath of Hurricane Katrina,[6] time lines[7] and a list of matters in a situation report[8] have been withheld pursuant to the deliberative process privilege. This material has not been established to be part of any contemplation of any agency policies. Absent any further information, this factual information cannot be withheld pursuant to the deliberative process privilege.

     FEMA has also withheld comments made by FEMA Director Brown about meddling from others, which are described as pertaining to a "debate regarding whether to set up an Interagency Incident Management Group." Bates Number Documents 4-5, 1415. However, the unredacted portion of the document, attached as Exhibit 5 to the Declaration of Adrian Sevier, reveals that this withheld material is likely nothing more than comments about those above Director Brown's supervisory chain. Such comments are not privileged and should be released.

     Moreover, the purpose behind the deliberative process privilege would be thwarted, not served here by permitting FEMA to withhold documents that reflect the agency's gross mismanagement of one of our nation's most serious disasters. Defendant's rationale is that release of these putatively deliberative materials could have a chilling effect on agency deliberations, as it would discourage candid discussion of matters in emergency situations. Defendant's Motion for Summary Judgment at 16-17. Defendant also claims that release of this

---

[6] See Bates Number Documents 16, 61, 62, 1203-1207, 1436-1437, 1639-1641, 1655, 1657-1658, 1753-1758, and 1781.

[7] See Bates Number Documents 161-1609.

[8] See Bates Number Documents 1370-1378. 1384-1385, and 1514-1519.

material could lead to public confusion over what the agency policy actually was during the government's response to Hurricane Katrina. Id. at 17-18.

Not only do these rationales not apply here, but the subject matter counsels in favor of release which may actually thaw, not chill, agency deliberations. In the aftermath of Hurricane Katrina questionable decisions were (and continue to be) made by government officials -- a fact documented by a Select Bipartisan Select Committee of Congress, in a 520- page report entitled "A Failure of Initiative." See **http://www.gpoaccess.gov/katrinareport/fullreport.pdf**. (last visited March 12, 2007). Emails and other documents made public after the debacle of Hurricane Katrina revealed that many good and productive recommendations by staff were ignored by their superiors, including FEMA's director. Id. Yet the agency as a whole has been tarred by the mistakes and misjudgments of its management. Under these circumstances, the release of staff comments and recommendations may actually encourage more candid and productive discussion of matters in future emergency situations. The release of the withheld information, if it is truly deliberative material concerning legal and policy judgments, may exculpate agency staff from the decisions made by FEMA Director Michael Brown and DHS Secretary Chertoff. Staff members will be more, not less, likely to make recommendations to their superiors in the future if they know the public will learn about all recommendations, including their good recommendations that were ultimately ignored by their superiors.

It is also unclear what public "confusion" would result from the release of this information, which concerns events that took place eighteen months ago. Documents that shed light on what happened and why will clear up, not confound, public confusion that already exists as a result of FEMA's disastrous handling of Hurricane Katrina.

In sum, defendant has failed to establish that the deliberative process privilege applies to the contested material in this case. It appears more likely that any recommendations that are truly deliberative are being withheld to protect agency decision makers, not the deliberative process of the agencies. Accordingly, because this information would in no way chill agency deliberative processes, it should be released.

### C. Defendant has Failed to Establish that the Presidential Communications Privilege Applies to the Documents at Issue.

FEMA attempts to withhold many documents pursuant to the presidential communications privilege. The presidential communications privilege is a narrow privilege, however, that applies (1) to documents solicited and received by the president or his immediate advisors in the Office of the President (2) in furtherance of the president's decision making and deliberations and (3) that the president believes should remain confidential. See Judicial Watch v. U.S. Dep't of Justice, 365 F.3d 1108, 1113 (D.C. Cir. 2004)[9]; In re Sealed Case 121 F.3d 729, 744 (D.C. Cir. 1997). The privilege is to be "construed as narrowly as is consistent with ensuring that the Office of the President's decision making processes is adequately protected." In re Sealed Case, 121 F.3d at 752. Furthermore, the privilege "should never serve as a means of shielding information regarding government operations that do not call ultimately for direct decisonmaking by the President." Id. Here, FEMA has failed to establish that the withheld documents are properly within the scope of the presidential communications privilege.

As an initial matter, defendant has not established that it even has standing to assert the privilege. Defendant has submitted the Declaration of Joel B. Bagnal, the Deputy Assistant to

---

[9] Judicial Watch is the only reported FOIA case to address the applicability of Exemption 5 to communications claimed to be covered by the presidential communications privilege.

the President for Homeland Security on the Homeland Security Counsel staff within the White House ("Bagnal Decl.").[10]  Mr. Bagnal does not state that he or any other White House employee reviewed the actual documents; he merely notes that he is aware that 265 pages of material were withheld under the presidential communications privilege.  Bagnal Decl., ¶ 13.  Further, Mr. Bagnal states only that an unnamed member of the Office of the Counsel to the President reviewed the decision to withhold this material under the privilege.  Id.  Finally, neither Mr. Bagnal nor anyone else states that the president or anyone acting on his behalf has actually invoked the privilege.  Because the presidential communications privilege is the president's privilege to invoke and neither he nor anyone with delegated authority has done so, the privilege may not serve as a basis for withholding any material here.  See In re Sealed Case, 121 F.3d at 744-745 n.16; Center on Corp. Responsibility, Inc. v. Schultz, 368 F. Supp. 863, 872-73 (D.D.C. 1973).

In addition, defendant has failed to establish that documents at issue fall within the presidential communications privilege.  The privilege only protects materials connected to presidential decision making.  Judicial Watch, 323 F.3d at 1116; In re Sealed Case, 121 F.3d at 752.  For example, in In re Sealed Case, the privilege was invoked to protect the executive's duty to appoint and remove cabinet secretaries under the U.S. Constitution.  121 F.3d at 752-53.  Similarly, in Judicial Watch, the privilege was invoked to protect the president's constitutionally protected power to make pardons.  323 F.3d at 1115.

Here, by contrast, defendant fails to cite any statutorily or constitutionally mandated

---

[10] It is not clear if Mr. Bagnal's position is that of an employee of the Office of the President (not subject to the FOIA) or the Executive Office of the President (subject to the FOIA).  See Judicial Watch, 323 F.3d at 1109, n.1.

decision that it seeks to protect through the presidential communications privilege. Instead, defendant presents only general statements[11] that are no substitute for the specific presidential decision making that the government must establish to properly invoke the privilege. While it is laudable that the White House and the president were kept apprised of the conditions brought on by Hurricane Katrina, the White House's monitoring of the events does not, by itself, rise to the level of direct presidential decision making.

Moreover, as defendant itself concedes, many of the responsibilities for handling disasters had been delegated to the Secretary of DHS prior to the storm. Bagnal Decl., ¶ 8. Monitoring hurricanes, floods, breached levees, or the government's ineffective response to them are neither statutorily nor constitutionally mandated duties of the president. Thus, defendant's failure to establish any specific presidential decision making at issue defeats the invocation of the presidential communications privilege.

Additionally, the privilege extends only to communications authored or received in response to a solicitation by a member of a presidential advisor's staff. Judicial Watch, 323 F.3d at 1116; In re Sealed Case, 121 F.3d at 749-50, 752. Many of the withheld documents appear to be emails between DHS or FEMA employees.[12] For example, Bates Number 1379 is an email from FEMA Director Michael Brown to two FEMA staffers. According to the Vaughn index description, the document reveals "communications between the President and the former Under

---

[11] See Bagnal Decl. at ¶¶ 9-16; Vaughn index.

[12] See Exhibit 5, Bates Numbers 4-5, 17, 48-50, 1366-1368, 1369, 1379, 1380, 1397-1414, 1415, 1419-1424, 1436-1437, 1441-1446, 1447-1449, 1474-1480, 1482, 1483-1484, 1485-1489, 1504, 1505, 1507, 1619, 1627-1628, 1629, 1630-1632, 1636-1638, 1650-1652, 1660-1663, 1897-1902, 1903-1904, and 1913.

16

Secretary."[13]  But while this document may recount a conversation that took place at the White House, it does not provide any White House officials with any information surrounding any policy decision.  The Vaughn index descriptions for some documents, such as Bates Numbers 1397-1414, indicate that they were never sent to anyone at the White House, but are merely "intended communications between the former Under Secretary and White House advisers." Documents that never reached anyone at the White House simply are not protected by the presidential communications privilege.  Judicial Watch, 323 F.3d at 1123-24.

Defendant describes other material as communications to or from White House advisors or their respective staffs.  This material is protected by the presidential communications privilege, however, only if the communications include either the president, certain key advisors, or their staffs.  In re Sealed Case, 121 F.3d. at 749-50, 752.  Here, the Vaughn index fails to identify which advisors' or staff members' communications are protected, and the portions of documents that have been released are similarly missing this critical information.[14]  Contrast Judicial Watch, 323 F.3d at 1129-36 (advisors to the President whose communications claimed to be protected under the presidential communications privilege named in the government's Vaughn index).

In sum, FEMA has not established that the withheld documents are properly protected by the presidential communications privilege.  Defendant has failed to properly invoke the

---

[13] The Vaughn index describes FEMA Director Brown as the former director and/or the former under secretary inconsistently throughout the index.

[14] See Exhibit 5, Bates Number 1389-1396, 1416-1417, 1506, 1520-1521, 1531-1546, 1620-1622, 1639-1641, 1664-1670, 1675-1690, 1695-1696, 1703-1748, 1757-1758, 1816-1817, 1818-1828, 1839-1840, 1845-1846, 1883, 1911-1912, 1914, 1917-1922, 1923, and 1926-1928.

privilege, attempts to use the privilege to protect information never received by any presidential advisor or their respective staffs, and has failed to provide meaningful information about the presidential advisors or staff who authored or solicited (and received) certain documents claimed to be protected by the privilege

### D. FEMA has not Established that the Attorney-Client Privilege Applies.

There are a relatively small number of documents for which the government has asserted the attorney-client privilege.[15]  Here, too, defendant has failed to establish any of the elements of this privilege.

The attorney-client privilege protects "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice."  See Mead Data Center, Inc. v. U.S. Dep't of the Air Force, 566 F.2d 242, 252 (D.C. Cir. 1977). Confidentiality may be inferred when a communication suggests that the "government is dealing with its attorneys as would any private party seeking advice to protect personal interests." Coastal States Gas, 617 F.2d at 863.  The sketchy descriptions in defendant's Vaughn index do not provide enough information to infer confidentiality, much less establish it expressly.  For example, defendant never explains either which attorney provided the legal services referred to in these documents or who the client was.  Absent this basic information, the Court cannot properly conclude that the information is within the attorney-client privilege.

Moreover, there is nothing in the Vaughn index about whether or not the communication was treated in a confidential manner.  Indeed, the limited information provided suggests just the opposite -- some of the documents in question were circulated to an incredibly large number of

---

[15] See Bates Number Documents 18, 1369, 1418, 1483-84, 1551-52, 1635, 1847-55, 1907-10, 1933.

agency personnel. For example, Bates Number Documents 1490-1499 were, according to the e-mail chain on the document, circulated to 34 individuals. Such a large circulation belies an intent to keep the documents confidential.

Additionally, some of the descriptions contained in the Vaughn index[16] indicate that the withheld materials were merely authoritative interpretations of agency law provided to FEMA employees by FEMA attorneys. Such material is not protected by attorney-client privilege. Tax Analysts v. IRS, 117 F.3d 607, 619-20 (D.C. Cir. 1997).

In sum, defendant has not established that the attorney-client privilege has properly been invoked. Accordingly, defendant should be ordered to release the records it alleges are protected pursuant to the attorney client privilege.

## **CONCLUSION**

For the foregoing reasons, defendant's motion for summary judgment should be denied.

Respectfully submitted,

_____/s/_____
Anne L. Weismann
(D.C. Bar. No. 298190)
Melanie Sloan
(D.C. Bar No. 434584)
Citizens for Ethics and
  Responsibility in Washington
1400 Eye Street, N.W. Suite 450
Phone (202) 408-5565
Fax  (202) 588-5020

_____/s/_____
Scott A. Hodes,
(D.C. Bar No. 430375)
P.O. Box 42002

---

[16] See Bates Number Documents 1369, 1490-1499, 1907-1910, 1933.

Washington, D.C.  20015
Phone (301) 404-0502
Fax (301) 738-2128

Attorneys for Plaintiff

Dated:  March 22, 2007