IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, 11 Dupont Circle, N.W. Washington, D.C. 20036<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, Washington, DC 20528<br><br>    Defendant. | Civil Action No. 06-173 (RJL) |

**DEFENDANT'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

In its Motion for Summary Judgment, defendant demonstrated that it properly withheld material protected under FOIA Exemption 5, and that it segregated and released all reasonably segregable non-exempt information to plaintiff. In response, plaintiff raises various, often cursory, and sometimes contradictory arguments in opposition to many of the Exemption 5 withholdings. None provide a basis to deny summary judgment. Plaintiff's various arguments that defendant provided inadequate explanation for its withholdings are all meritless, resting on misconceptions about the explanation required, and on inaccurate characterizations of the information provided in defendant's detailed <u>Vaughn</u> Index, declarations and other supporting submissions. Plaintiff's other legal arguments are similarly deficient and do not support release of the challenged material, much of which is protected by more than one applicable privilege. For the reasons below, and those set forth in defendant's opening papers, the Motion for

1

Summary Judgment should be granted, and this case dismissed.

**ARGUMENT**

**I.      Defendant Has Properly Withheld Inter-Agency and Intra-Agency Materials**

Plaintiff argues that a handful of materials are not "inter-agency or intra-agency" communications under Exemption 5 because they "are from or were shared with contractors, state officials, a former congressman, a current member of Congress, and a director of a corporation." Pl. Opp. 7-9 & n. 4 (citing Bates Nos. 645-650, 796-798, 812-820, 885-902, 903-910, 1526-1529, 1547-1548, 1703-1748). Plaintiff's argument on this point is, for the most part, based on a misunderstanding of what has been withheld or is simply meritless.[1]

As a preliminary matter, it is not true that all the withheld materials plaintiff identifies "are from or were shared" outside the agency. In two instances, the Vaughn Index makes this clear.[2] For example, although plaintiff suggests that defendant withheld an e-mail chain between FEMA and a FEMA contractor about the contractual bidding process, Pl. Opp. 8, defendant actually released this document to plaintiff and only withheld FEMA's deliberative, handwritten notes that appear on the face of the document. Index Bates Nos. 796-798 (explaining, inter alia,

---

[1] Defendant has reviewed the materials challenged by the plaintiff on this basis and determined that in one instance — i.e., the communications involving a "current member of Congress" — the agency can release the redacted Exemption 5 material. Index Bates Nos. 1547-1548. Defendant released this material to plaintiff on April 20, 2007 and thus plaintiff's legal challenge to the withholding is now moot.

[2] In one instance, plaintiff's challenge is based on an error in defendant's Vaughn Index. Specifically, the entry describing Bates Nos. 1703-1748 incorrectly states that a "director of a corporation" was involved in the withheld e-mail communications. As the attached supplemental declaration of Adrian Sevier explains, this statement is incorrect and occurred as a result of a document editing error made in the course of revising the Vaughn Index. The supplemental declaration now makes clear that the e-mail chain did not involve any entities outside the federal Executive Branch, and that the e-mail chain is purely an inter-agency communication. See Supplemental Declaration of Adrian Sevier ¶ 3 (attached).

that "FEMA has released a copy of the email chain without the handwritten notes to [plaintiff]"). Similarly, defendant has not withheld the entire document at Bates Nos. 903-910, as plaintiff suggests, but has merely redacted deliberative, handwritten notes that appear on that document. Index Bates Nos. 903-910 (stating, inter alia, the "redacted portions are handwritten notes from FEMA officials judging the proposal"). See also Sevier Decl., Exh. 5 (attaching redacted documents, including redacted version of this document). In short, defendant has not withheld any communications from potential contractors engaged in a contractual bidding process, and plaintiff's suggestion to the contrary, Pl. Opp. 8, is based on a misreading (or a failure to read) the supporting materials.

As to those withheld materials that actually do involve persons other than Executive Branch officials, plaintiff is simply wrong that they do not meet the Exemption 5 "inter-agency or intra-agency" requirement. It is well-settled that Congress did not intend this threshold requirement to be understood in "rigidly exclusive terms." Ryan v. Department of Justice, 617 F.2d 781, 790 (D.C. Cir. 1980). Thus, even communications between an agency and persons or entities outside the federal Executive Branch will meet this threshold when the outside participant is working with the agency in a consulting capacity. See, e.g., Public Citizen, Inc. v. Department of Justice, 111 F.3d 168, 170 (D.C. Cir. 1997). Although Exemption 5 will not apply to "communications to or from an interested party seeking a Government benefit at the expense of other applicants," see Department of Interior v. Klamath, 532 U.S. 1, 10-12 & n. 4 (2001), the D.C. Circuit has applied the Exemption even when the non-agency consultant has "strong personal views" or its own "independent interests" regarding the matter at issue. See id. at 12 n. 4 (citing the D.C. Circuit's decisions in Ryan and Public Citizen as examples and declining to overrule them). So long as the "documents are created for the purpose of aiding the

3

*agency's* deliberative process, . . . they will be deemed intra-agency documents even when created by non-agency personnel." Dow Jones & Co. v. Department of Justice, 917 F.2d 571, 575 (D.C. Cir. 1990) (emphasis in original).

Notwithstanding plaintiff's assertion to the contrary, the Vaughn Index and other submissions amply demonstrate that the challenged materials meet these standards. For instance, some of the materials are simply straightforward examples of work product prepared by FEMA contractors that were hired as consultants and were participating in FEMA's deliberative process in their capacity as consultants. See Index Bates Nos. 645-650 (document entitled "Southeast Louisiana Catastrophic Plan Response Division Task Order 2" which is a "Draft Work Plan from a contractor proposing a work plan for the Catastrophic Hurricane Planning for New Orleans, LA Metropolitan area"); 885-902 (document entitled "Catastrophic Disaster Response: Current and Projected Activities Sept. 6 2004" which is "proposal prepared by a FEMA contractor for a FEMA official evaluating various topics relating to FEMA's Catastrophic Planning Activities, including catastrophic plans, a requirements analysis during the Florida hurricanes, and disaster response software"). See also Sevier Decl. ¶¶ 47-48 (providing additional description of these "Hurricane Preparedness Documents").

Defendant also properly withheld materials that reflect FEMA deliberations at a meeting in which state emergency management officials participated. Index Bates Nos. 812-820. Contrary to plaintiff's suggestion, the participation of state officials in the underlying meeting does not vitiate the intra-agency character of these materials. Id. Even if it is assumed that state officials somehow obtained access to these meeting minutes, some of which are marked with handwritten notes, the Index shows that these state emergency management officials were working collaboratively in consultation with FEMA officials toward the common goal of

4

developing evacuation plans in Mississippi and Louisiana.  Id. (stating that the purpose of the meeting was to "coordinate evacuation plans among the state and federal responders.")  See also Sevier Decl. ¶¶ 47 (explaining and describing FEMA Response Division's role in "the integration of Federal, State, Tribal and local response programs").  In these circumstances, the State emergency management officials were clearly participating as consultants in the agency's deliberative process.  See, e.g., Citizens for Pa.'s Future v. Department of the Interior, 218 F.R.D. 441, 446-47 (M.D. Pa. 2003) (meeting agenda between state and federal officials, as well as other documents shared with state officials, properly withheld as "intra-agency" under Exemption 5); United States v. Allsteel, Inc., 1988 WL 139361, at *2 (N.D. Ill. Dec. 21, 1988) (reaching similar conclusion in civil discovery context and relying on FOIA caselaw addressing "intra-agency" requirement).

   Finally, defendant properly withheld e-mail communications between White House advisers, FEMA and DHS staff, and a former member of Congress imparting advice regarding the federal government response to Hurricane Katrina.  Index Bates Nos. 1526-1527.  Here too, the uncontradicted evidence specifies that this former congressional official was acting "in a consulting capacity" in collaboration with FEMA and other Executive Branch officials involved in the response to Hurricane Katrina, and in particular, that this consultant was providing "information, advice and guidance for the purpose of assisting the President, and his immediate advisers and their respective staffs."  Mot. 27-28 & n. 6 (citing Sevier Decl.).  See also Index Bates Nos. 1526-1527 (providing additional information about the role of the document in FEMA's deliberative process).  This withheld material clearly meets Exemption 5's threshold requirement.  See, e.g., Ryan, 617 F.2d at 790 (protecting recommendations on judicial nomination process made by members of Congress to Attorney General); National Institute of

5

Military Justice, 404 F. Supp. 2d 325, 344-45 (D.D.C. 2005) (protecting recommendations from uncompensated, non-agency attorneys to agency in rulemaking process).

## II. Defendant Properly Withheld Deliberative Materials

As explained at great length in the Motion, Mot. 12-24, and carefully documented in the supporting materials, defendant properly withheld deliberative, pre-decisional materials under Exemption 5, the deliberative process privilege. Plaintiff raises a hodgepodge of unsupported arguments in opposition, none of which justifies denial of summary judgment.

First, plaintiff contends, with almost no explanation, that the descriptions of the deliberative materials in the Vaughn index and supporting declarations fail to provide sufficient information about the withheld materials. Pl. Opp. 9-10. In fact, defendant's submissions are more than adequate to allow the court and plaintiff to evaluate the bases for the withholdings under Exemption 5, the deliberative process privilege. See Dorsett v. Dep't of Treasury, 307 F.Supp.2d 28, 34 (D.D.C. 2004) (requirements of a proper Vaughn index are satisfied if it "provides a sufficient basis for the Court, and the plaintiff, to evaluate the agency's claimed exemptions.") Defendant's Vaughn index consists of seventy full pages and contains hundreds of detailed descriptions and justifications for its withholdings. And while the index alone provides adequate support, defendant also provided two substantial declarations, which provide ample additional detail about the deliberative processes involved, see, e.g., Sevier Decl. ¶¶ 12, 16, 33-34, 44, 47-49, as well as redacted versions of the documents themselves, see Sevier Decl., Exh. 5. Indeed, plaintiff's perfunctory claim of inadequate detail is belied by plaintiff's own memorandum of law, which raises a series of challenges (albeit meritless ones) explicitly predicated on the information and particulars made available in defendant's Vaughn index, declarations, and in the redacted versions of the documents. Pl. Opp. 8-13.

Tellingly, plaintiff offers up only a single example of this supposedly inadequate detail. Plaintiff asserts that the index does not provide any facts about certain "personnel" decisions, such as "who made the decision, or even what type of decision was made." Pl. Opp. 10. Defendant, however, is *not required* to identify a particular final decision to justify protection under Exemption 5, the deliberative process privilege, and is certainly not required to provide the sort of detail that plaintiff seeks. See, e.g., U.S. v. Phillip Morris USA, Inc., 218 F.R.D. 312, 318 (D.D.C. 2003) ("The Supreme Court has clearly stated that the Government's assertion of the deliberative process privilege does not depend on its ability 'to identify a specific decision in connection with which a memorandum is prepared.'") (citing cases). The index entries, accompanying declarations, and redacted versions of the documents themselves, see Exhibit 5 to Sevier Decl., provide more than enough information about the redacted material to conclude that it is both predecisional and deliberative, and thus properly withheld under Exemption 5, the deliberative process privilege. See Dorsett, 307 F. Supp. 2d at 34.

Second, plaintiff asserts that the decision-making processes described in defendant's submissions do not concern "legal" or "policy" matters of the sort that warrant protection under the deliberative process privilege, but instead concern largely "operational" matters. Pl. Opp. 10-11. Again, this is simply not the case. As explained in detail in the Motion, declarations and Vaughn index, the deliberative materials withheld bear on various legal and policy matters, such as the possible development of a Catastrophic Planning Section in FEMA's Response Division, the development of a catastrophic planning initiative focusing on Southeast Louisiana, the formal disaster declaration process, and the coordination of the federal government response to the catastrophic situation created by Hurricane Katrina. See, e.g., Sevier Decl. ¶¶ 33-34, 44, 47-49. Contrary to plaintiff's conclusory assertions, these matters entail precisely the sort of

7

"policy-oriented judgment" that the deliberative process privilege is designed to protect. Indeed, they fall squarely within the purview of FEMA's core function of administering and coordinating the Federal government's response to Presidentially-declared disasters and emergencies. Sevier Decl. ¶¶ 4-7.

Again, plaintiff identifies only two instances of materials withheld that it believes do not sufficiently implicate legal and policy matters to warrant protection — (1) e-mail discussions about the appropriate response to fires caused by Hurricane Katrina, Index Bates Nos. 1474-1480; and (2) e-mail discussions containing predictive opinions about the possible participants in videoteleconference ("VTC") discussions among various governmental responders to Hurricane Katrina, Index Bates Nos. 1416-1417. Neither warrants denial of summary judgment. Obviously, deliberations about how to respond to fires caused by Hurricane Katrina squarely implicate FEMA's policy-oriented judgment in responding to disasters. Similarly, while the VTC e-mail may seem less directly related to policy matters, discussions about potential participants in responder VTCs implicate the level and manner of coordination among government responders, which is again clearly within the purview of FEMA's core function of administering and coordinating the federal government response to disasters.[3] Sevier Decl. ¶¶ 4, 10, 15. See, e.g., Judicial Watch v. Department of Justice, 306 F. Supp. 2d 58, 70 (D.D.C. 2004) (Attorney General's decision about whether to attend an event sufficiently related to policy and/or legal issues to warrant protection).

Third, plaintiff contends that defendant has improperly withheld certain materials that are

---

[3] Even if there were some doubt as to whether the redacted portion of the VTC e-mail chain is protected under the deliberative process privilege, it (like many of the Hurricane Katrina e-mails) is independently protected by another privilege and so would still be properly withheld pursuant to Exemption 5. Index Bates Nos. 1416-1417 (explaining that the redacted material is also protected under the presidential communications privilege).

8

"merely factual" and thus not protected under the deliberative process privilege. Pl. Opp. 11-12. Although the deliberative process privilege does not protect purely factual matters, it does protect facts that reflect the agency's decision-making process, see <u>Montrose Chemical Corp. v. Train</u>, 491 F.2d 63, 71 (D.C. Cir. 1974), and facts that are so inextricably intertwined with the deliberative material that disclosure of the factual material would be tantamount to disclosing the agency's deliberations, see <u>Wolfe v. Department of Health and Human Services</u>, 839 F.2d 768, 774-76 (D.C. Cir. 1988). Indeed, "the D.C. Circuit has clarified that to the extent that predecisional materials, even if factual in form, reflect an agency's preliminary positions or ruminations about how to exercise discretion on some policy matter, they are protected under Exemption 5." <u>Bloomberg v. U.S. Securities and Exchange Commission</u>, 357 F. Supp. 2d 156, 169 (D.D.C. 2004) (Leon, J.) (internal formatting omitted).

The Motion and supporting documents make clear that the withheld materials plaintiff describes as "purely factual" were properly withheld as protected deliberative materials.[4] Pl. Opp. 11-12. As a preliminary matter, it is worth noting that most of the pages to which plaintiff refers have been released in part, so it is clear that defendant has already segregated and released "purely factual" and otherwise non-exempt material. <u>See</u> Sevier Decl., Exh. 5 (attaching redacted versions of released documents). In any event, the portions of the materials that defendant did withhold are clearly protected. First, plaintiff neglects to mention that certain of the materials, including the "time line" at Bates Nos. 1560-1609[5] are actually drafts or comments

---

[4] Plaintiff cites the following pages, which have been withheld in whole or in part, as containing improperly withheld, "purely factual" materials. <u>See</u> Bates Nos. 4-5, 16, 61, 62, 1203-1207, 1370-1378, 1384-1385, 1415, 1436-1437, 1514-1519, 161-1609 [sic], 1639-1641, 1655, 1657-1658, 1753-1758, and 1781.

[5] The draft timeline is at Bates Nos.1560-1609, although plaintiff — presumably as a result of a typographical error — incorrectly cites Bates Nos. 161-1609. Bates Nos. 161-1559

9

on drafts. Index Bates Nos. 1203-1207, 1436-1437, 1560-1609.  As defendant has already shown — and plaintiff makes no effort at rebuttal — the process by which such FEMA drafts evolve into final documents is itself inherently deliberative.  Mot. 19-20.  See also, e.g., Exxon Corp. v. Dep' t of Energy, 585 F. Supp. 690, 697 (D.D.C. 1983) ( "[d]raft documents by their very nature, are typically predecisional and deliberative"); Dudman Communications Corp. v. Dep't of the Air Force, 815 F.2d 1565, 1569 (D.C. Cir. 1987) (disclosure of "decisions to insert or delete material or to change a draft's focus or emphasis – would stifle the creative thinking and candid exchange of ideas necessary to produce good historical work").

The remainder of the purportedly "factual" materials consist of e-mail briefings, requests for briefings, and status updates between and among FEMA and other Executive Branch officials in the days immediate following Hurricane Katrina.  As the detailed explanations and descriptions in the Index and declarations make clear, the redacted portions of these e-mails and e-mail chains formed a critical part of the "policy deliberations about how to most effectively respond to the extraordinarily difficult challenges that arose in the wake of Hurricane Katrina." Sevier Decl. ¶ 33.  These materials are properly redacted because disclosure would reveal preliminary views, opinions, and deliberations about the relative importance of different facts in developing a coordinated government response to Hurricane Katrina.[6]  See, e.g., Bloomberg, 357

---

are not "timelines" and are not described as such in the Index or declarations.

[6] Similarly, plaintiff's speculation that the redacted portions of Bates Nos. 4-5, 1415, are "likely" not deliberative, Pl. Opp. 12, fails to rebut the contrary statements in the Vaughn Index (stating, inter alia, that the redacted portion "reflects debate regarding whether to set up an Interagency Incident Management Group (IIMG)").  See, e.g., Wolfe v. CIA, 473 F.3d 370, 374 (D.C. Cir. 2007) (agency's reasonably detailed affidavits sufficient for summary judgment in absence of contradicting evidence or evidence of agency bad faith).  In any event, the redacted portions are also withheld under the presidential communications privilege because they reveal communications between covered White House advisers and FEMA staff.  See Vaughn Index Bates Nos. 4-5, 1415; see also Bagnal Decl. ¶¶ 9-16.

F. Supp. 2d at 169 (Leon, J.) (documents summarizing meetings protected because they distilled the important points from that meeting and thus reflect impressions of agency officials); Mapother v. Department of Justice, 3 F.3d 1533, 1539 (D.C. Cir. 1993) (writer's "selection of the facts thought to be relevant" clearly reflect protected deliberative material) (citations omitted). See also, e.g., Hornbostel v. Department of the Interior, 305 F. Supp. 2d 21, 31 (D.D.C. 2003) (disclosure of "work plans, status reports, briefings, opinion papers, and proposals" would "stifle the candor necessary in an agency's policy making process"); Hunt v. U.S. Marine Corps, 935 F. Supp. 46, 52 (D.D.C. 1996) ("point papers" prepared in the "midst of [agency's] deliberative process to assist officers in their formulation of a final decision" exempt from disclosure).

     Finally, plaintiff makes the counterintuitive and totally unsupported policy argument that agency "[s]taff members will be more, not less, likely to make recommendations to their superiors in the future if they know the public will learn about all recommendations." Pl. Opp. 13-14. The deliberative process privilege itself, however, rests on the "obvious" realization that precisely the opposite reaction will occur. Department of the Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8-9 (2001) ("deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news"). In any event, defendant's declaration provides a detailed and uncontroverted explanation of why release would have a particularly chilling effect on full and frank discussion, and plaintiff furnishes no basis to doubt this evidence. The agency is best situated "to know what confidentiality is needed 'to prevent injury to the quality of agency decisions.'" Chemical Mfrs. Ass'n v. Consumer Prod. Safety Comm'n, 600 F. Supp. 114, 118 (D.D.C. 1984) (quoting NLRB v. Sears, Roebuck & Co., 421 U.S. 132,

151 (1975)).[7]

### III. Defendant Properly Withheld Material Protected Under the Presidential Communications Privilege

Plaintiff also raises a host of meritless challenges to defendant's withholdings under Exemption 5, the presidential communications privilege, all of which were amply supported in defendant's initial filings. Mot. 24-29 (citing Index and Bagnal Declaration). First, plaintiff argues that the President (or someone acting at his behest) must personally invoke the privilege in FOIA cases. Pl. Opp. 14-15. As a preliminary matter, plaintiff incorrectly cites In re Sealed Case (a non-FOIA case) for the general proposition that the privilege must be "invoked" by the President. Pl. Opp. 15. In fact, that decision explicitly declined to address that issue, and certainly did not suggest which way the D.C. Circuit would rule. See In re Sealed Case, 121 F.3d 729, 745 n. 16 (D.C. Cir. 1997). See also Judicial Watch v. Department of Justice, 365 F.3d 1108, 1114 (D.C. Cir. 2004) (similarly declining to address the argument because plaintiff had failed to raise it below). More fundamentally, however, even if one could find support for the proposition that the President must personally invoke the privilege *in the civil discovery context* (again, very much an open question), it would provide no support for the proposition that the President must invoke the privilege *in the FOIA Exemption 5 context*. In fact, the only courts to address the latter issue have reached precisely the opposite conclusion. See Lardner v. Department of Justice, 2005 WL 758267 at *6 (D.D.C. March 31, 2005) (noting that it is not clear whether personal invocation is required in civil discovery, but holding in any event that even if such a requirement exists, it "should not be imported into the far different context of

---

[7] For similar reasons, the Court should reject plaintiff's conclusory assertion that disclosure of these protected materials would "clear up, not confound, public confusion." Pl. Opp. 13. See Mot. 27-28 (citing Sevier Decl. ¶ 37 & Russell v. Dep't of the Air Force, 682 F.2d 1045, 1049 (D.C. Cir. 1982)).

12

FOIA"); Berman v. Central Intelligence Agency, 378 F. Supp. 2d 1209, 1220 & n. 11 (E.D. Cal. 2005) (same).

Courts cite a number of important reasons why it would be improper to import a personal invocation requirement into the FOIA context. First, such a requirement would be inconsistent with the settled principle that Exemption 5 protects materials that "fall within the ambit" of the privilege such that they would "routinely or normally" be available in the civil discovery context. 5 U.S.C. § 552(b)(5). In the Exemption 5 context, the agency focuses on the content of the document itself, not on various circumstantial factors that are relevant in the civil discovery context. Lardner, 2005 WL 758267 at *7; Berman, 378 F. Supp. 2d at 1220. Indeed, in the FOIA context, an agency does not "invoke" privileges at all, but rather "simply makes the determination that a statutory provision protects the documents from disclosure, and withholds the documents on that ground." Lardner, 2005 WL 758267 at *8. Second, "[t]here is no indication in text of the statute or elsewhere" that Congress contemplated a personal invocation requirement, and the "practice for decades has been otherwise." Lardner, 2005 WL 758267 at *8 (noting that while the deliberative process privilege in the civil discovery context requires invocation by a suitably high level agency official, no courts have imported this requirement into the FOIA Exemption 5 context). Finally, plaintiff's position would lead to absurd results because it would require the President of the United States to personally review documents and invoke the privilege whenever someone filed a FOIA request seeking presidential records. Courts have recognized that Congress could not possibly have intended to so unduly burden the President, particularly in light of the fact that it unambiguously intended the President and his immediate staff to be immune from FOIA requests altogether. Lardner, 2005 WL 758267 at *9; Berman, 378 F. Supp. 2d 1221. Plaintiff's argument addresses none of these points, or the

applicable caselaw, and it should thus be rejected.

Similarly meritless is plaintiff's contention that the withheld materials are not "connected to presidential decision making." Pl. Opp. 15-16. Contrary to plaintiff's assertion, and as detailed in defendant's Motion, Mot. 26-29, the supporting declaration explains at length that the withheld communications were made for the purpose of formulating "advice and recommendations for the President in his decisions regarding how best to accommodate requests for Federal support, both in his capacity as Commander in Chief and as Chief Executive supervising the Federal response to Hurricane Katrina." Bagnal Decl. ¶ 10. See also id. ¶¶ 12, 14, 16. This evidence, particularly when coupled with the individualized descriptions and explanations in the Vaughn Index, more than suffices to establish the requisite connection to presidential decision making. See In re Sealed Case, 121 F.3d at 752 (noting that the privilege would protect periodic reports to the President to "monitor" a course of action); see also id. (privilege applies if communications made in the course of advising the President "on official government matters"). Plaintiff seems to argue that the withheld communications must somehow relate to a non-delegable presidential decision.[8] Pl. Opp. 16 (purporting to distinguish emergency response decisions at issue here from the non-delegable decisions at issue in Judicial Watch and In re Sealed Case). The D.C. Circuit, however, has specifically refused to impose

---

[8] Alternatively, to the extent plaintiff intends to argue that the withheld communications must be shown to relate to a particular, identified presidential decision, plaintiff is also wrong. Plaintiff cites no support for such a requirement, and it is well settled that the deliberative process privilege (which is a "closely affiliated" form of executive privilege) does not require defendant to identify any such decision. E.g., Phillip Morris, 218 F.R.D. at 318 (citing cases). Indeed, such a requirement would be even more inappropriate in the presidential communications context than in the deliberative process context because the presidential privilege protects the President's final decisions, not just the deliberations leading up to them. See Judicial Watch, 365 F.3d at 1113-14; In re Sealed Case, 121 F.3d at 745-46. To require defendant to identify such a decision, therefore, would require the disclosure of potentially privileged material.

such a limitation, calling it "arbitrary." See Judicial Watch, 365 F.3d at 1123 (explaining that there is "no reason to conclude that presidential decisions that could have been delegated, but were not, are entitled to less candid or confidential advice than those that could not have been delegated at all").

Plaintiff also challenges some of the withholdings on the ground that they purportedly do not involve the president or presidential advisers. Specifically, plaintiff contends that defendant improperly "withheld documents" that are purely internal agency e-mails between DHS and/or FEMA officials. Pl. Opp. 16-17 & n. 12. But again, this argument is based on a mischaracterization of the materials withheld. With respect to the materials plaintiff challenges on this basis, defendant has not "withheld documents" in their entirety, but has merely redacted portions of such documents that record or otherwise reveal protected communications with the President and/or covered White House advisers. See Mot. 29 (emphasizing that where "an e-mail was not itself subject to the [presidential communications] privilege, but revealed communications protected under the privilege, FEMA redacted that portion of the e-mail while segregating and releasing any otherwise non-exempt portions"). Thus, to use plaintiff's cited example, defendant did not withhold the purely internal e-mail at Index Bates No. 1379, but simply redacted it to the extent that it recounts or otherwise reveals the substance of protected "communications between the President and the former Under Secretary." Index Bates No. 1379. Such redactions are entirely proper because disclosure of such material would reveal the content of privileged communications. See Judicial Watch, 365 F.3d at 1114-16 (noting that presidential privilege extends to "documents *and other communications*" that meet the requirements of the privilege) (emphasis added). It makes no difference that the particular document memorializing the privileged communication is not itself a communication protected

by the privilege.[9]  See, e.g., Neuder v. Battelle Pac. Nw. Nat'l Laboratory, 194 F.R.D. 289, 296 (D.D.C. 2000) (holding that partial withholding of notes proper where redacted portion memorialized conversation protected by attorney-client privilege).

Finally, with respect to other materials, plaintiff complains that the Vaughn Index and other supporting documents do not identify by name which "advisors' or staff members' communications are protected." Pl. Opp. 17 (citing Judicial Watch, 365 F.3d at 1129-36).[10]  The applicability of the privilege, however, does not turn on the identity of the presidential adviser involved, but on the nature of the adviser's responsibilities.  Specifically, the privilege extends to those presidential advisers (or their staff) within the White House who hold "broad and significant responsibility for investigating and formulating advice to be given to the President." Judicial Watch, 365 F.3d at 1114 (quoting In re Sealed Case, 121 F.3d at 752).  In this case, Index and declarations demonstrate that the advisers involved clearly meet this standard.[11]

---

[9] Plaintiff also wrongly claims that defendant improperly withheld documents that are merely "intended communications between the former Under Secretary and White House advisers." Pl. Opp. 17.  Again, contrary to plaintiff's representations, defendant did not withhold such documents in their entirety, but merely redacted those portions of the documents which reveal content of protected presidential communications.  See, e.g., Index Bates No. 1397-1414.  Moreover, although plaintiff asserts that such communications "never reached the White House," the Bagnal Declaration clearly states that "it can be fairly inferred" that such communications and information "ultimately were transmitted" either to the President or to covered presidential advisers.  Bagnal Decl. ¶ 15.c.  The supporting documents provide ample factual basis for this inference, see Bagnal Decl. ¶¶ 9-16, Sevier Decl. ¶ 31, and plaintiff provides no evidence or other grounds to question this conclusion.  Accordingly, because disclosure of the redacted materials would reveal the content of communications that were ultimately transmitted to the President or to covered White House advisers, the withholdings are proper under Exemption 5, the presidential communications privilege. See Judicial Watch, 365 F.3d at 1114-16; Neuder, 194, F.R.D. at 296.

[10] In this argument, and throughout the opposition, plaintiff erroneously cites this decision as Judicial Watch, 323 F.3d at 1123-24.  The correct cite appears in the text above.

[11] See, e.g., Bagnal Decl. ¶ 14 ("The withheld communications were authored by or solicited and received by the President's immediate advisers or their respective staffs formally

16

Plaintiff's citation to Judicial Watch does not support plaintiff's contention that advisers must be named.[12]  To the contrary, Judicial Watch reaffirmed the standard articulated in In re Sealed Case, which focuses not on the identity of the official, but on the kind of advisory authority held. Id. at 1114; see also id. at 1110 n. 1 (reaffirming "definitional analysis" in In re Sealed Case, 121 F.3d at 749-750, 752).  Accordingly, defendant is not required to name or otherwise identify the particular advisers involved with the communications.  See Dorsett, 307 F. Supp. 2d at 34. Nothing in the FOIA requires defendant to volunteer unnecessary — and potentially privileged — information simply to satisfy a FOIA requester's curiosity.  See, e.g., Landmark Legal Foundation v. Environmental Protection Agency, 272 F. Supp. 2d 59, 64 (D.D.C. 2003) (an agency is not required to "answer questions disguised as a FOIA request") (citation omitted).

### IV.     Defendant Properly Withheld Attorney-Client Privileged Materials

Plaintiff's challenges to the handful of materials protected under the attorney client privilege are similarly without merit.  See Bates Nos. 18, 1369, 1418, 1483-1484, 1490-1499, 1551-1552, 1635, 1847-1855, 1907-1910, 1933.  First, plaintiff asserts, without explanation, that the Vaughn Index descriptions do not provide enough information to infer confidentiality because they do not explain which attorney provided legal services or who the client was.  Pl. Opp. 18.  The assertion is groundless.  In each instance plaintiff identifies, the Index identifies

---

charged with providing advice and recommendations to the President.  These advisers held broad and significant responsibilities for gathering information and formulating advice and recommendations to be transmitted to the President on issues related to the preparation for and response to Hurricane Katrina."); Vaughn Index passim (describing communications to and from "White House advisers").

[12]  Plaintiff mis-describes the Vaughn index appended to the opinion in Judicial Watch. Contrary to plaintiff's suggestion, the Vaughn entries for many documents at issue in that case did not name the White House officials involved.  See, e.g., Judicial Watch, 365 F.3d at 1133-134 (entries 16 & 26).  And in any event, the opinion never suggests that naming such officials is *required*.

17

the attorneys involved as "FEMA attorneys" and the client representatives as "FEMA staff," thus making it obvious that the communications are between FEMA (the client) and its own agency counsel (the attorneys).[13]  See Tax Analysts v. Internal Revenue Serv., 117 F.3d 607, 618 (D.C.Cir.1997) ("In the governmental context, the 'client' may be the agency and the attorney may be an agency lawyer.")  In fact, the information in the Index and redacted documents, taken together, allow the reader in most or all cases to identify by name and/or specific title the particular attorneys and client representatives involved.  Sevier Decl., Exhs. 4 & 5.

     Plaintiff also incorrectly asserts that the Index contains nothing about whether the communications were kept confidential.  Pl. Opp. 18-19.  In fact, the Index explicitly describes each e-mail communication as "confidential" while at the same time showing (in the Index and in the redacted documents themselves) that they did not circulate outside the federal Executive Branch.  Plaintiff identifies only a single example of material that it claims is not confidential, an e-mail communication circulated to 34 individuals.  See Index Bates Nos. 1490-1499.  But plaintiff does not explain, or cite authority for its assertion that circulation of a communication to 34 individuals within the agency somehow defeats the requisite confidentiality.  See Electronic Privacy Information Center v. Department of Homeland Security, 384 F. Supp. 2d 100, 114-15 (D.D.C. 2005) ("The privilege applies to confidential communications made to an attorney by both high-level agency personnel and lower-echelon employees.") (citing Upjohn Co. v. United States, 449 U.S. 383, 392-97 (1981)).  Nor does plaintiff offer evidence to refute the statements in the index, which explicitly describe the withheld e-mail communications as containing "confidential communications from government attorneys made for the purpose of rendering

---

[13] In one instance, the Index specifies that DHS attorneys were also involved in the withheld communications.  Index Bates Nos. 1483-1484; 1551-1552.

18

legal advice." Id.

Finally, plaintiff contends — again without explanation — that certain of the attorney-client communications (Bates Nos. 1369, 1490-1499, 1907-1910, 1933) are not privileged because they reflect "authoritative interpretations of agency law." Pl. Opp. 19 & n 16 (citing Tax Analysts, 117 F.3d at 619-20). Plaintiff is wrong. The Index, declarations, and the redacted e-mails themselves all make clear that the redacted material bears no resemblance to the Field Service Advice Memoranda ("FSAs") deemed to be outside the privilege in Tax Analysts. Unlike the communications at issue here, The FSAs at issue in Tax Analysts reflected the agency's considered and official legal position on various tax law issues, were "routinely used" by field personnel in order to promote uniformity and consistency, and in no way revealed confidential information concerning the agency.[14] In stark contrast, the e-mail communications at issue here are clearly described as confidential, Index Bates Nos. 1369, 1490-1499, 1907-1910, 1933, and formed part of the fast-paced and "highly informal" deliberations about how to respond to the unprecedented situation created by Hurricane Katrina, Mot. at 2-4, 13-18 (citing Sevier Decl.). Unlike the considered "body of private law" developed in Tax Analysts, such communications are not "routinely used" by field personnel to promote consistency and uniformity, and certainly cannot be characterized as the agency's "official legal position."

## CONCLUSION

For the foregoing reasons, and for the reasons articulated in the supporting declarations and detailed Vaughn Index, defendant respectfully requests that defendant's motion for summary judgment be granted.

---

[14] The Tax Analysts court held that to the extent such materials reveal confidential transmissions from the agency personnel, they were "clearly covered by the attorney-client privilege." Id. at 619-20.

Dated: April 23, 2007                         Respectfully submitted,

                                              PETER D. KEISLER
Assistant Attorney General
JEFFREY A. TAYLOR
United States Attorney
ELIZABETH J. SHAPIRO (D.C. Bar 418925)
Assistant Director

 /s/ Peter M. Bryce
Peter M. Bryce (NY and IL Bars)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W., Room 6138
Washington, D.C.  20001
Telephone: (202) 616-8335
Fax: (202) 616-8470
peter.bryce@usdoj.gov
Attorneys for Defendant