UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON | : <br> : <br> : |
| Plaintiff, | : <br> : |
| v. | : Civil Action No. 06cv0173 (RJL) <br> : |
| U.S. DEPARTMENT OF HOMELAND SECURITY | : <br> : <br> : |
| Defendant. | : <br> : |

**PLAINTIFF'S SUR-REPLY TO DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

1.  In its motion for summary judgment, defendant U.S. Department of Homeland Security ("DHS") failed completely to address a threshold issue under Exemption 5 of the Freedom of Information Act ("FOIA"): whether the documents at issue are "inter-agency or intra-agency" documents under the standard established by the Supreme Court in U.S. Dep't of the Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001) ("Klamath").  It was not until its reply brief ("Def. Reply") that DHS gave even cursory attention to this critical issue, but it has still not demonstrated that the withheld material meets the Klamath standard for Exemption 5 protection.

   As an initial matter, DHS appears to now agree that documents identified on its Vaughn index as Document Numbers 1547-48 cannot properly be withheld under the FOIA and has released these documents.  In addition, DHS has withdrawn its prior assertion that Vaughn Document Numbers 1703-1748 were shared with a director of an outside corporation.  Thus, the documents still at issue under Exemption 5 are Vaughn Document Numbers 645-650, 796-798,

812-820, 885-902, 903-910 and 1526-1529.

      DHS also claims that it partially released Vaughn Documents 796-798 and withheld only internal agency handwritten notes. Def. Reply at 2. This is incorrect; portions of these documents have yet to be released. Similarly, while DHS now claims that with respect to Vaughn documents 903-910 only internal handwritten notes were withheld (Def. Reply at 2), a careful review of the documents and supporting materials does not clearly support this claim.

      In arguing that the documents still at issue meet the inter-agency or intra-agency requirement of Exemption 5, DHS relies primarily on the statements and characterizations of its lawyers to substitute for evidence the agency has failed to produce in either its Vaughn index or its declarations. For example, while DHS's reply brief characterizes Vaughn Documents 645-650 as work product "prepared by FEMA contractors that were hired as consultants and were participating in FEMA's deliberative process in their capacity as consultants," Def. Reply at 4, the Vaughn index describes the documents as "a draft work plan from a contractor proposing a work plan . . ." Vaughn index entry for Bates Documents 645-650 (attached as Exhibit 4 to the Declaration of Adrian Sevier) ("Vaughn Index"). In other words, it is not clear whether these documents were prepared by an entity that had an existing contract with the government -- a relationship that would place the contractor in privity with the government under Klamath for Exemption 5 purposes -- or whether they were prepared by an entity that was competing for a contract with the government, which would place them outside the ambit of Exemption 5.

      Similarly, although DHS's brief describes Vaughn Documents 885-902 as a "proposal prepared by a FEMA contractor for a FEMA official," Def. Reply at 4, it is not clear whether this proposal concerned an already awarded contract or a proposed contract that had yet to be

awarded. Under Klamath, these facts are critical in establishing that the documents truly are inter- or -intra-agency documents within the scope of Exemption 5.

Likewise, DHS's brief describes Vaughn Documents 812-820 as involving a "collaborative[]" "consultation" between "state emergency management officials" and "FEMA officials." Def. Reply at 4. DHS's Vaughn Index for these documents, however, states only that "the purpose of the meeting was to coordinate evacuation plans among the state and federal responders." It says nothing, however, about whether they were in fact working together collaboratively or whether each expressed adversarial interests at the meeting. For all we know, state and federal responders had very different views on how evacuations were to be carried out. Without this necessary detail DHS cannot establish that the documents qualify for protection under Exemption 5.

Finally, with respect to Vaughn Document Numbers 1526-1527, DHS has still not provided enough information to establish that the unnamed "former congressional official," Def. Reply at 5, had the kind of consultant role that would place the document within the scope of Exemption 5. DHS has yet to provide the identity of this individual and there is simply insufficient evidence about the nature of this "consultant" role. DHS's reliance on Ryan v. Dep't of Justice, 617 F.2d 781, 790 (D.C. Cir. 1980), does not strengthen its claim, as Ryan concerned current members of Congress.[1]

2. A recent decision of this district, ICM Registry, LLC v. U.S. Dep't of Commerce, No.

---

[1] DHS faults plaintiff for offering only limited examples of the inadequacies in the Vaughn index rather than an exhaustive listing. Def. Reply at 7-8. This claim, however, misses the point that plaintiff's proffered examples are illustrative of an overall problem with the Vaughn index, which simply does not offer sufficient detail from which to conclude that Exemption 5 was properly invoked.

06-0949, 2007 WL 1020748 (D.D.C. March 29, 2007) (attached as Exhibit A), also highlights the deficiencies in DHS's Exemption 5 claims. As that court made clear, to establish that a document is pre-decisional the agency must establish "what policy decision is it antecedent to? If it is deliberative, what deliberative process does it reflect? The mere recitation of the buzz words 'draft' and 'deliberative' are not enough." Id. at *5.

These details are noticeably absent here; there is no way of telling from DHS's index or declarations specifically to what policy decision the allegedly pre-decisional discussions are antecedent, and which specific deliberative process they reflect. Instead, as in ICM Registry, DHS relies on mere "buzz words" as a substitute for the specific facts it must come forward with to establish that Exemption 5 protects the withheld documents. For example, DHS asserts that because it has asserted that some of the withheld factual materials were in draft documents, it has established that the deliberative process privilege applies to this material. Def. Reply at 8-9. As ICM Registry makes clear, however, the agency must provide more description than simply "draft" to establish that the withheld material is deliberative. ICM Registry at *5.

DHS uses the same kinds of "buzz words" to invoke the presidential communications privilege and here, as in ICM Registry, they are not an adequate substitute for the detail that is necessary to establish that all of the elements of the privilege are met. For example, absent the actual identities of the individuals allegedly involved in formulating advice, it is impossible for the Court to conclude that they have the requisite privity to the President to be covered by the presidential communications privilege. See, e.g., In re Sealed Case, 121 F.3d 729, 749-50, 725 (D.C. Cir. 1997). Merely reciting the buzz words "presidential" and "communications" is not an adequate substitute for the evidence that would establish that specific communications are

4

privileged because they included the president, certain key advisors, or their staffs.

Tellingly, the government offers no legal support for its interpretation of the presidential communications privilege within the context of Exemption 5 of the FOIA, an interpretation that is virtually unlimited in scope. Plaintiff knows of no case, and DHS does not cite to one, that holds, as DHS asks this Court to hold, that the presidential communications privilege can be invoked without identifying any particular presidential decision (Def. Reply at 14 n.8), any particular presidential advisor (id. at 16-17), or the fact that the information in the withheld documents was actually viewed by the president or any of his immediate advisors and their staff. Id. at 14-15.[2]

## CONCLUSION

For the foregoing reasons and those set forth in CREW's Opposition to Defendant's Motion for Summary Judgment, defendant's motion for summary judgment should be denied,

Respectfully submitted,

/s/
Anne L. Weismann
(D.C. Bar No. 298190)
Melanie Sloan
(D.C. Bar No. 434584)
Citizens for Responsibility and Ethics
 In Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C.  20005
Phone: (202) 408-5565
Fax: (202) 588-5020

---

[2] In its reply DHS artfully admits that many of the documents were not viewed by the president or any of his immediate advisors and their staff. See Def. Reply at 14 ("communications were made for the purpose of formulating 'advice'") and Def. Reply at 15 ("recounts or otherwise reveals the substance of protected 'communications'").

/s/
Scott A. Hodes
(D.C. Bar No. 430375)
P.O. Box 42002
Washington, D.C. 20015
Phone: (301) 404-0502
Fax: (301) 738-2128

Attorneys for Plaintiff

Dated: April 26, 2007