# EXHIBIT A

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ICM REGISTRY, LLC,                    :
                                      :
          Plaintiff,                  :
                                      :
     v.                               :     Civil Action No. 06-0949 (JR)
                                      :
U.S. DEPARTMENT OF COMMERCE, *et*     :
*al.*,                                :
                                      :
          Defendants.                 :

### MEMORANDUM

     ICM Registry, LLC brings this suit against the U.S.
Department of Commerce and the U.S. Department of State under the
Freedom of Information Act, 5 U.S.C. § 552, *et seq.*, seeking the
disclosure of materials pursuant to three FOIA requests.  The
FOIA requests at issue sought information concerning the U.S.
government's role in the Internet Corporation for Assigned Names
and Numbers' consideration of ICM's proposal to create and
maintain a new .xxx top level domain for the adult entertainment
industry.  The government has moved for summary judgment as to
the first two FOIA claims and to dismiss the third one for
failure to exhaust administrative remedies [9].  ICM has moved
for summary judgment on all claims [11].  For the reasons
discussed below, the government's motion for summary judgment on
Counts I and II will be **granted in part and denied in part**, the
government's to dismiss Count III will be **denied**, and plaintiff's
motion for summary judgment on Counts I, II, and III will be
**denied**.

**Background[1]**

Plaintiff ICM Registry, LLC ("ICM") is a Delaware technology company that disavows any "former or current affiliation with the adult entertainment industry," but has sought for years to introduce a .xxx domain on the global internet. [1] ¶ 5. Its purposes, it says, are to promote self-regulation in the industry as an alternative to government intervention, and to assist families in protecting children from inappropriate web content. In pursuit of these goals, plaintiff has twice submitted applications to the Internet Corporation for Assigned Names and Numbers ("ICANN"). On November 16, 2000, ICANN declined to select ICM's first .xxx proposal. On March 16, 2004, after ICANN revised its application process and issued another request for proposals, plaintiff submitted an updated proposal again seeking approval of the .xxx sponsored top-level domain ("sTLD").[2] ICM maintains that its second .xxx proposal was the result of extensive outreach to stakeholders, and that its application satisfied all mandatory criteria required by ICANN of its sTLD applicants.

Throughout late 2004 and early 2005, ICM's .xxx proposal went through an extensive vetting process including an

---

[1]Unless otherwise stated, the facts are undisputed.

[2]Note that ICM paid non-refundable application fees of $50,000 in 2000 and $45,000 in 2004.

- 2 -

extended public comment period, discussion in numerous meetings held by ICANN, its Board, and its various committees, and finally a meeting between ICM and the ICANN Board in April. On June 1, 2005, the ICANN Board determined that the .xxx application met all eligibility criteria for sponsored domains and authorized ICANN staff to initiate contractual negotiations with ICM. After some back and forth between ICM and ICANN over the text of a draft registry agreement, ICANN's Counsel approved the a final version of the agreement on August 1, 2005. On August 9, 2005, ICANN released the agenda for its August 16, 2005 Board meeting, during which ICANN planned to finalize the .xxx sTLD agreement.

The .xxx agreement was not approved at ICANN's August 16, 2005 board meeting, however, and – apparently in response to pressure from the U.S. government and other concerned parties[3] – the Board postponed its vote on the measure at eight subsequent board meetings. On May 10, 2006, when .xxx vote finally occurred, the ICANN Board voted 9-5 against approving the contract.

On October 18, 2005, ICM submitted identical FOIA requests to the Commerce Department and State Department seeking all records from March 1, 2005 to the present:

> . . . consisting of or reflecting, representing, recording or otherwise disclosing communications, written or oral . . . regarding approval by the

_____

[3]See [1] ¶¶ 17, 18.

> Internet Corporation for Assigned Names and Numbers
> ("ICANN"), and/or by its Board of Directors, of the new
> ".xxx" sponsored top-level domain ("sTLD"), and/or
> ICANN's or its Board's approval of ICM Registry's
> contract to operate the .xxx sTLD . . .
>
> . . . consisting of or reflecting, representing,
> recording or otherwise disclosing communications,
> written or oral . . . between any personnel at the
> Department of Commerce, or any Bureau or other
> component thereof, and the ICANN Board of Directors and
> its staff, ICANN's Governmental Advisory Committee
> ("GAC"), any GAC member country, or any individuals or
> agency in a GAC member country, regarding the .xxx
> sTLD.

[1] Apps. A & B. The October 18, 2005 FOIA request received by
the Commerce Department was designated CRRIF No. 06-068, and the
identical request received by the State Department was designated
CRRIF No. 04-606. On December 2, 2005, ICM submitted another
FOIA request to the Commerce Department seeking all records
"pertaining to Deputy Assistant Secretary for Communications and
Information John Kneuer's plans to attend, and/or his
participation in," the November 30 through December 4 ICANN
meeting in Vancouver, Canada. [1] App. C. This final FOIA
request was designated CRRIF No. 06-127.

FOIA Request CRRIF No. 06-068

On October 19, 2005, after receiving FOIA request No.
06-068, the Commerce Department's FOIA office forwarded the
request to its National Telecommunications and Information

- 4 -

Administration ("NTIA").[4]  By letter dated November 18, 2005,

NTIA disclosed approximately 1600 pages of responsive documents,

of which 120 pages were withheld in part and 98 pages were

withheld in full.  According to the accompanying letter, all

withholdings and redactions were pre-decisional or privileged and

therefore exempt from FOIA pursuant to 5 U.S.C. § 552(b)(5).  ICM

appealed the withholdings and redactions by letter dated

December 2, 2005.  Shortly thereafter, by letters dated

December 19 and 21, 2005, NTIA disclosed additional responsive

records, informing ICM that (1) the attached materials were the

final set of responsive documents, (2) certain additional

documents were exempt under the § 552(b)(5) deliberative process

privilege, and (3) the Commerce Department had coordinated with

other agencies before releasing these documents.

        ICM communicated with the Commerce Department via

teleconference in early January 2006, at which time the parties

agreed to treat ICM's December 2, 2005 appeal as an appeal of all

three partial denials (November 18, December 19, and

December 21).  By subsequent teleconference, ICM granted the

Commerce Department a two week extension in responding to the

administrative appeal.  Despite the twenty-working-day deadline

for agency responses to FOIA appeals, 5 U.S.C.

_____

        [4]NTIA is the President's principal adviser on
telecommunications and information policy issues, and is a
component of the Department of Commerce.

- 5 -

§ 552(a)(6)(A)(ii), the Commerce Department failed to respond to ICM's appeal until after ICM filed this complaint and the court approved a Consent Motion for Briefing Schedule requiring the Commerce Department to decide this appeal by July 14, 2006.

By letter dated July 13, 2006, the Commerce Department partially granted and partially denied ICM's appeal. The agency released 10 additional documents in full (some of which were duplicates of previously released documents), 55 additional documents in part, and continued to withhold 183 documents in part and 60 in full, relying primarily upon the deliberative process privilege in support of its withholdings and redactions.[5] 5 U.S.C. § 552(b)(5). As to most of the withholdings, the agency asserted that there was no one Government decision to which the documents protected by the deliberative process pertain, but maintained that the documents were part of deliberative processes concerning NTIA's role in ICANN's approval of the proposed .xxx domain.

FOIA Request CRRIF No. 04-606

In response to ICM's October 18, 2005 FOIA request, a representative from the State Department's Office of Information

---

[5]The DOC also withheld part of one document (an individual's personal cell phone number) under FOIA Exemption (b)(6); this withholding is not contested by ICM. [11] at 15 n.19. Some of the documents withheld under the deliberative process privilege were also withheld under the attorney-client privilege and the attorney work-product privilege. [9] Ex. 8.

Programs and Services ("IPS") told plaintiff on November 28, 2005
via teleconference that the State Department may not have any
materials responsive to ICM's FOIA request.  The following day,
plaintiff sent to the State Department via facsimile certain
documents received from the Commerce Department suggesting that
the Commerce Department may have coordinated with the State
Department in its response to FOIA request No. 06-068.  By letter
dated December 13, 2005, the State Department's IPS Office
formally acknowledged ICM's FOIA request and informed ICM that it
would begin processing the request.  The IPS Office noted in the
letter – received long after the 20 working days within which a
responses to FOIA requests must be received pursuant to 5 U.S.C.
§ 552(a)(6)(A)(I) – that while it would "make every effort to
meet the time limits cited in the Freedom of Information Act (5
USC § 552), unusual circumstances may arise for extending the
time limit."  [1] Ex. 2.

        On December 22, 2005, ICM appealed the State
Department's response to its 04-606 FOIA request, and on
January 3, 2006, IPS responded that (1) the FOIA request is being
processed and (2) because the State Department had not yet denied
ICM access to any responsive materials, FOIA request 04-606 was
not yet subject to administrative appeal.  When this complaint
was filed on May 19, 2006, ICM was still waiting for an official
response from the State Department to its FOIA request of

October 18, 2005.  After telephone calls between ICM and the
State Department in June 2006, and pursuant to my minute order
approving the parties' briefing schedule, the State Department
informed ICM by letter dated July 5, 2006 that searches of
various State Department records systems had begun, and enclosed
over 1,100 pages of press clippings that had not been screened
for responsiveness to FOIA request 04-606.  By letter dated
July 14, 2006, IPS informed ICM that the search of all State
Department records systems was complete.  Of the 74 responsive
documents located, 30 were released in full, 6 were released in
part, 34 were withheld in full, and 5 required interagency
coordination prior to release or withholding.  After a subsequent
review of the withheld and redacted documents, the State
Department released 1 document in full that had been previously
withheld in full, partially released 5 documents previously
withheld in full, and referred 1 document previously withheld to
the Commerce Department for inclusion in its <u>Vaughn</u> index.

<u>FOIA Request CRRIF No. 06-127</u>

        The Commerce Department responded to FOIA request No.
06-127 via letter on January 19, 2006 transmitting approximately
250 pages of responsive materials, of which certain documents
were withheld either in whole or part pursuant to exemption
(b)(5).  In the letter, the Commerce Department informed
plaintiff that ICM had 30 calendar days within which to file an

- 8 -

administrative appeal of the partial denial.  ICM filed an appeal
of the partial denial on February 21, 2006 via email received at
5:41 p.m. and facsimile received at 5:52 p.m.[6]  The Commerce
Department responded to ICM's appeal by letter of March 2, 2006,
in which it informed ICM that the appeal was received after the
aforementioned deadline and would therefore not be considered by
the Commerce Department.

## Analysis

## Claim I: State Department Claim 04-606

        The State Department is currently withholding, in whole
or in part, 34 responsive documents pursuant to 5 U.S.C.
§ 552(b)(5), and 3 documents pursuant to 5 U.S.C. § 552(b)(4).
Under 5 U.S.C. § 552(b)(5), otherwise responsive documents are
exempt from disclosure if they are "inter-agency or intra-agency
memorandums or letters which would not be available by law to a
party other than an agency in litigation with the agency"; simply
put, exemption (b)(5) covers those documents that are typically
considered privileged within the context of civil discovery.
Exemption (b)(4) protects "trade secrets and commercial or

_____

        [6]Thirty days from the Commerce Department's FOIA response
was February 18, 2006, which fell on a Saturday.  Since
February 20, 2006 was a holiday (President's Day), ICM
appropriately determined that its appeal was due on February 21,
2006.  ICM acknowledges, however, that it erred in transmitting
the appeal shortly after the close of business.

financial information obtained from a person and privileged or confidential."  5 U.S.C. § 552(b)(4).

**Exemption (b)(5)**

All 34 documents withheld in whole or in part under exemption (b)(5) are, according to the State Department, subject to the deliberative process privilege.  Grafeld Declaration [9] Ex. 17 "Grafeld Decl.".  The purpose of this privilege is to "prevent injury to the quality of agency decisions," by protecting from disclosure confidential, pre-decisional advice and counsel on matters of policy.  NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 151 (1975).  The privilege protects documents that are both pre-decisional and deliberative, including "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency."  Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980). In order to invoke the deliberative process privilege, agencies much demonstrate both (1) that the communication is pre-decisional or "antecedent to the adoption of an agency policy," Jordan v. United States Dep't of Justice, 591 F.2d 753, 774 (D.C. Cir. 1978) (en banc), and (2) that the document is deliberative, Vaughn v. Rosen, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975).  In order to show that the material is deliberative, the agency must identify "what deliberative process is involved and the role

played by the documents in issue in the course of the
[deliberative] process." <u>Coastal States</u>, 617 F.2d at 868.  As I
have previously noted, however, the application of exemption
(b)(5) "does not depend on the agency's ability to identify a
specific decision to which the documents relate."  <u>Balderrama v.
Dep't of Homeland Security</u>, 2006 U.S. Dist. LEXIS 19421, *22
(D.D.C. 2006), citing <u>Sears</u>, 421 U.S. at 151 (1975).

With respect to most State Department documents from
which material has been withheld, the agency has demonstrated
that the withheld materials are both pre-decisional and
deliberative and has accordingly satisfied its burden under
exemption (b)(5).  With respect to certain documents, however,
the agency has failed to meet the two-part test described above.
The documents on which the agency has not met its burden are
addressed below, in the order in which they are discussed in the
Grafeld Declaration.

<u>Document No. E54</u>

This document, withheld in full, is a two-page memo
from the Acting Director of the Department of State's Bureau of
Economic Affairs/Office of Communications and Information Policy
("EB/CIP") to the Assistant Secretary for Economic and
Business Affairs.  It is entitled "1/19/06 Wall Street Journal
Article on Threats to Internet," and it contains neither a date
nor a signature.  In explaining the application of exemption

- 11 -

(b)(5) to this document, the agency claims that it is a "draft memorandum commenting on the press article." Grafeld Decl. ¶ 24. The article addressed in the memorandum "discusses threats to the Internet and proposed alternatives to the DNS," and the memorandum "notes the increased attention to ICANN and briefly cites several factors, including the proposed .xxx TLD." Id. No further attempt is made to connect the document to the exemption aside from the conclusory explanation that the memorandum contains deliberative analysis. Id.

While this memorandum, a record of a State Department Officer's reaction to a Wall Street Journal article, likely "reflect[s] the personal opinions of the writer rather than the policy of the agency," that is not the end of the inquiry. Coastal States, 617 F.2d at 866. The agency has succeeded in describing this document in some detail, but has failed to support a conclusion that the document is pre-decisional and deliberative. Its statements urging such a conclusion are "conclusory and generalized," National Parks and Conservation Association v. Kleppe, 547 F.2d 673, 680 (D.C. Cir. 1976), and do not illuminate the "role, if any, that the document play[ed] in the process of agency deliberations," Formaldehyde Institute v. Department of Health and Human Services, 889 F.2d 1118, 1122 (D.C. Cir. 1989); Judicial Watch, Inc. v. Reno, 154 F.Supp.2d 17, 18 (D.D.C. 2001) ("[i]t is not enough to say that a memorandum

- 12 -

'expresses the author's views' on a matter[;] [t]he role played
by the document in the course of the deliberative process must
also be established.")  The court lacks sufficient information to
answer the necessary questions.  If it is pre-decisional, what
policy decision is the deliberation antecedent to?  If it is
deliberative, what deliberative process does it reflect?  The
mere recitation of the buzz words "draft" and "deliberative" is
not enough.  See, e.g., Arthur Andersen & Co. v. IRS, 679 F.2d
254, 257 (D.C. Cir. 1982)(draft documents are not presumptively
privileged).

Documents E31, E32

        These documents are email chains to and from U.S.
government employees that have been released in part.  The
subject of both email chains is "AFP Report on New EU Internet
Addresses"; both are dated December 5, 2005.  The government has
essentially provided no information for the court to consider in
assessing the application of exemption (b)(5) to these documents,
except to note that "[t]wo brief comments reflecting
deliberations on the new .eu domain, .xxx, and ICANN have been
excised."  [13] at 17.  Without further explanation, the court
cannot determine whether or not the comments properly constitute
pre-decisional deliberations.

- 13 -

Document E59

E59 is a two-page, undated paper; neither the author nor the intended recipient is evident. It contains a discussion of a meeting between State Department officials and a Japanese official, and it has been withheld in full. The government describes it as a draft, states that it contains a "brief comment about the implications of the [.xxx] issue in Japan," and expresses concern that the "[r]elease of the document, to the extent the draft may be inaccurate or incomplete, could be misleading about what transpired at the meeting." Grafeld Dec. ¶ 28. While the court shares this concern, the government has not met its burden to identify the deliberative process that this "pre-decisional" document contributed to; without more, it does not meet exemption (b)(5).

Documents E3, E36, E68, E69, E70

These documents are commentaries on or summaries of "White House high tech conference calls," all of which have been released in part. E3 is an email chain last dated August 1, 2005, from which six passages have been redacted. E36, E68, E69, and E70 are each one-page, undated memoranda from "Richard" to "David." The State Department maintains that "the portions of the documents provided to plaintiff [reflect that] these conference calls served as interagency fora for discussing and

deliberating on current high tech policy issues," [13] at 18, and
asserts that the email and the memoranda contain judgments and
analysis falling under the deliberative process privilege.  The
government's submissions fail to specify the deliberative process
reflected in these documents.  Its assertion that the conference
calls concern high tech policy issues is hardly illuminating,
"for if they did not, the documents would not be before the
court at all."  Judicial Watch, Inc. v. United States Postal
Service, 297 F.Supp.2d at 252, 264 (D.D.C. 2004).  Moreover, what
the government must show (in more than conclusory terms) is the
deliberative process reflected in the documents, not the
deliberative process occurring in the conference calls.

**Exemption (b)(4)**

     Exemption (b)(4) permits agencies to withhold otherwise
responsive material that is (1) commercial or financial,
(2) obtained from a person,[7] and (3) privileged or confidential.
5 U.S.C. § 552(b)(4); Gulf & W. Indus. v. United States, 615 F.2d
527, 529 (D.C. Cir. 1979).  In analyzing the third prong of this
test, courts apply different standards depending upon whether the
person was compelled to submit the commercial or financial
information to the agency, or whether such information was

---

     [7]It is undisputed that the documents at issue under
exemption (b)(4) were provided to the State Department by a
person and therefore satisfy prong 2 of the 'commercial material'
test.

- 15 -

submitted voluntarily.  <u>Critical Mass. Energy Project v. NRC</u>, 975
F.2d 871, 879 (D.C. Cir. 1992) (<u>en banc</u>).  If the commercial or
financial information was submitted voluntarily, it is
confidential – and therefore protected under exemption (b)(4) –
so long as it is the type of information that is not customarily
publicly disclosed by the submitter.  <u>Id.</u>  If the submission of
the commercial or financial information was obligatory the test
is more stringent: the information is "confidential" and
protected only if its disclosure under FOIA is likely "(1) to
impair the Government's ability to obtain necessary information
in the future; or (2) to cause substantial harm to the
competitive position of the person from whom the information was
obtained."  <u>National Parks & Conservation Ass'n v. Morton</u>, 498
F.2d 765, 770 (D.C. Cir. 1974); <u>Critical Mass</u>, 975 F.2d at 879.

<u>Documents E2, E18, E71</u>

      The State Department claims that the three documents
withheld in whole or part under exemption (b)(4) contain
"information concerning commercial aspects of the ICANN process,"
that was "offered voluntarily to the government and would not
'customarily' be made public."  Grafeld Dec. ¶ 16.

      Document E2, released in part, is a 5-page memorandum
from telecommunications consultant Marilyn Cade to David Gross in
the State Department's EA/CIP Bureau.  The State Department
maintains that Ms. Cade had a commercial interest in the

information submitted in this memorandum because it reflects her
professional insights on ICANN and the World Summit on the
Information Society ("WSIS"), and that she volunteered the
information with the expectation that it would be held in
confidence.  [13] at 22, Grafeld Decl. ¶ 25.  The professional
opinions of a telecommunications consultant regarding ICANN and
WSIS clearly constitute commercial material under this Circuit's
broad definition of the term, Public Citizen Health Research
Group v. FDA, 704 F.2d 1280, 1290 (D.C. Cir. 1983), despite
plaintiff's argument to the contrary:

> "The government claims there is an 'obvious commercial
> interest' in the information, but apparently this is so
> because in one case it 'reflects the professional
> insights of . . . a consultant' . . . as if this
> information produced by such source is of necessity
> confidential, regardless of substance."

[15] at 20-21 (internal citation omitted).  ICM's objection
confuses the first and last prong of the exemption (b)(4) test.
Information reflecting the professional insights of a
telecommunications consultant is, as the government submits,
obviously commercial, but plaintiff correctly notes that such a
finding does not suggest that the information is also
confidential under the Critical Mass test.  Unfortunately, all of
the government's submissions relevant to the confidential prong
of the exemption (b)(4) test are conclusory.  The State
Department has merely stated that Ms. Cade provided the
information voluntarily, that it is the sort of information not

- 17 -

customarily disclosed to the public, and that even if she were
compelled to submit the information, disclosure of the
information would impair the Government's ability to obtain
information in the future and to cause substantial commercial
harm to Ms. Cade's business.  These are but mere repetitions of
the legal standard; the court lacks sufficient details to
evaluate whether (1) the disclosure was voluntary, (2) the
information redacted is customarily released to the public, and
(3) harm would befall the government or the submitter if the
redacted portions were released.

     Document E18 is a one-page document dated October 27,
2005 from Timothy Finton, EB/CIP to David Gross, EB/CIP relaying
information received from a source in a Washington, D.C. business
organization regarding the WSIS conference and internet
governance.  "One of the points discussed in this email related
to the approval of .xxx."  [9] at 16.  The State Department
withheld document E18 in full.  As with E2, E18 appears to meet
the "commercial material" test, but the government has merely
repeated legal boilerplate in addressing prong 3, and this court
accordingly lacks the information necessary for evaluating
whether the document may properly be considered "confidential."

     Document E71, withheld in full, is a five-page chain of
two emails dated June 8, 2006, sent by two ICANN employees to an
unknown recipient.  The emails concern ICANN, ICANN's Government

- 18 -

Advisory Committee (GAC), and the WSIS conference.  Grafeld Decl.
¶ 25.  Again, the DOS has provided enough information for the
court to determine that the material is commercial, but not
enough to satisfy the confidentiality requirement.

    As to 12 of the 37 documents withheld in whole or part
by the State Department pursuant to exemptions (b)(4) and
(b)(5) – documents number E54, E31, E32, E59, E3, E36, E68, E69,
E70, E2, E18, E71 – the government has insufficiently supported
its withholdings.  The State Department, within 30 days from the
date of this memorandum, must either provide additional
justification for the withholding of these materials or provide
them to ICM.

**Claim II: Commerce Department Claim 06-068**

    In support of its motion for summary judgment on ICM's
claim regarding FOIA request 06-068, the Commerce Department
submitted a <u>Vaughn</u> index, as well as the declaration of Kathy
Smith, Chief Counsel for NITA.

    The Commerce Department has withheld 183 documents in
part and 60 in full under FOIA exemption (b)(5), 5 U.S.C.
§ 552(b)(5), and one document in part under FOIA exemption
(b)(6), 5 U.S.C. § 552(b)(6).  The agency claims that all
documents withheld in whole or part under 552(b)(5) are protected
by the deliberative process privilege, that thirty-one such
documents are also protected by the attorney-client privilege,

- 19 -

and that two such documents are also protected by the attorney work-product doctrine.  ICM does not contest the withholding under (b)(6), and, in its last filing, acknowledged that the two documents withheld in part under the attorney work-product doctrine satisfy exemption (b)(5).  [11] at 15 n.19; [15] at 4.  All other withholdings, however, remain in dispute.  The documents for which the agency has not met its burden to demonstrate how exemption (b)(5) applies are addressed below.

**Exemption (b)(5): Deliberative Process Privilege**

EP59, EP60, EP61

Document EP59 is a one-page email dated June 2, 2005 from DOC employee Michael Gallagher to DOC employee Meredith Attwell.  The redactions consist of the writer's opinions "related to ICANN's decision about the .xxx domain."  Vaughn index at 3.  Document EP60 is an email from Attwell to Gallagher dated June 2, 2005, from which the agency redacted the material described above, plus a paragraph including Attwell's comments on a draft document she was preparing on ICANN.  Id.  EP61 is a two-page email, dated June 2, 2005, from DOC employee Fred Schwein to Attwell.  Id.  Segments reflecting the opinions of Schwein and Attwell on ICANN's decision to negotiate a .xxx contract were redacted.  The deliberative process privilege does not support withholding material simply because it contains Gallagher's, Attwell's, or Schwien's opinions; the fact that a document

- 20 -

expresses its authors views is not dispositive if the agency has neither identified the deliberative process to which the document contributed nor explained how the materials are pre-decisional.[8]

Documents EP62, EP63, EP64, EP65, EP66, EP67, EP68, EP69

The same problem plagues this batch of emails, all of which are to and from DOC employees, contain the subject line "Michael Reagan Supports .xxx," and were sent on June 16, 2005. A single paragraph describing Attwell's opinions regarding ICANN's decision to negotiate a contract for .xxx has been redacted from each of these emails, without any corresponding description of how Attwell's opinion is pre-decisional or relates to a deliberative process. Vaughn index at 3-4.

Documents EP90, EP91, EP92

The agency redacted text from three emails between DOC employees Clyde Ensslin and Christine Gunderson sent on June 17, 2005 and carrying the subject line "Quote from June 6 Cnet news report by Declan McCullagh, June 12 AP." Vaughn index at 4-5.

_____

[8]Compare, for example, these Vaughn index entries to those regarding emails EP109-EP115 and EP 139. Vaughn index at 5. In the latter, the text redacted includes a question and answer that reflect Attwell's "opinions of the DOC's role with respect to certain functions of ICANN." While even this description could have been helpfully expanded upon, at least the agency identified a deliberative process — a discussion regarding the DOC's role in ICANN functions — to which the redacted text relates. Descriptions of mere opinions regarding ICANN's consideration of .xxx — absent, for example, corresponding assertions that such opinions concern DOC's role in the ICANN process and contribute to an ongoing dialogue or debate regarding that role — do not enjoy deliberative process privilege.

The redactions consist of Ensslin's opinions "relating to how a news reporter interpreted a conversation Mr. Ensslin had with him related to ICANN's decision to negotiate a contract for the .xxx domain."  These redactions – consisting of mere commentary on a news report – appear to be neither pre-decisional nor deliberative; without further explanation, the government cannot justify withholding these redactions under exemption (b)(5).

Documents EP116, EP117

Document EP116 is a one page email from DOC employee Attwell to two White House employees dated August 1, 2005 and including the subject line ".xxx." Vaughn index at 5.  The agency redacted four lines from this email reflecting Attwell's "opinions related to .xxx." Id. at 5-6.  EP117 is apparently another email sent on the same day from which the same text was redacted.  Id. at 6.  For the reasons described above, this justification does not support the invocation of exemption (b)(5).

Documents EP125, EP126

Documents EP125 and EP126 are emails dated June 17, 2005 sent between Attwell and White House employees Helen Domenici and Richard Russell.  The first email from Attwell contains partial redactions; three subsequent reply emails have been withheld in their entirety.  The first redaction reflects Attwell's opinion on ICANN's decision to enter into negotiations

- 22 -

with ICM for a .xxx contract, and, at least as described in the
<u>Vaughn</u> index, fails to meet the standard under exemption (b)(5)
for the reasons cited above.  The following three emails,
consisting of Russell's questions about .xxx and Attwell's
responses, do not clearly satisfy the deliberative process
exemption.  Do the questions and answers simply concern facts
regarding the .xxx sTLD?  Do they concern Attwell's opinions?  Or
do they meet the deliberative process privilege by reflecting a
deliberative process engaged in by the U.S. Government as it
determines how to respond to ICANN's recent decision?  The <u>Vaughn</u>
index fails to answer these questions.

<u>Document EP102</u>

    Document EP102 is a two-page email dated June 20, 2005
from Gunderson to Ensslin with subject line "Update on public
reaction to ICANN and .xxx."  <u>Vaughn</u> index at 10.  The portion of
the email reflecting Gunderson's "opinion on an issue related to
.xxx" was redacted by the agency.  <u>Id.</u>  The Commerce Department
has failed to explain how this email is a pre-decisional
component of a deliberative process.

<u>Documents EP98, EP46</u>

    Document EP105 is a one-page email dated June 28, 2005
from DOC employee Attwell to White House employee Domenici with
"Status of .xxx" in the subject line.  <u>Vaughn</u> index at 10-11.
Three lines including questions from Domenici to Attwell

concerning .xxx have been redacted.  Similarly, two lines from
document EP46 – an email dated July 12, 2005 from Domenici to DOC
employee Robin Layton with the subject line "has ICANN approved
.XXX?" – were redacted because they included Domenici's "asking a
question regarding the .xxx domain."  Vaughn index at 11.  These
redactions are insufficiently supported for the reasons described
in the discussion of EP126, above.

Document EP7

          This document is an email from DOC employee James
Wailewski to Attwell sent on June 16, 2005.  Vaughn index at 11.
The subject line contains the word "draft," and six lines of
Wasilewski's opinions regarding "approval of internet domain
names" were redacted.  Id.  For the reasons discussed above, the
words "draft" and "opinion," without more, do not fulfill the
agency's obligation to demonstrate how the material is covered by
the deliberative process privilege.

Documents MPW3, EP33, EP34, MPW14

          Document MPW3 is an undated, one-page draft invitation
to a briefing by Ambassador David Gross and Assistant Secretary
Michael Gallagher concerning the role of the United Nations in
internet governance.  The draft invitation reflects computer-
generated comments in the margins where editorial changes had
been made.  Vaughn index at 21.  Such a document is only pre-
decisional and deliberative regarding the text of an invitation;

- 24 -

it is unclear how such a deliberation "makes recommendations or expresses opinions on policy matters." Vaughn v. Rosen, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975).

Similarly, documents EP33, EP34, and MPW14 are emails between DOC and DOS employees regarding a draft invitation to the WSIS briefing. Text reflecting DOC employee Fiona Alexander's deliberations concerning the invitation have been redacted from each email; for the reasons described above, such text is not necessarily exempt under exemption (b)(5).

As to 26 documents withheld in whole or part by the Commerce Department pursuant to exemption (b)(5) - documents number EP59, EP60, EP61, EP62, EP63, EP64, EP65, EP66, EP67, EP68, EP69, EP90, EP91, EP92, EP116, EP117, EP125, EP126, EP102, EP98, EP46, EP7, MPW3, EP33, EP34, MPW14 - the government has insufficiently supported its withholdings. The agency, within 30 days from the date of this memorandum, must either provide additional justification for the withholding of these materials or release them to ICM.

**Claim III: Commerce Department Claim 06-127**

The Commerce Department has moved to dismiss ICM's third claim relating to its December 2, 2005 FOIA request. The agency defends its denial of ICM's 06-127 administrative appeal solely with the affirmative defense that plaintiff - by filing an appeal less than an hour past the deadline - failed to exhaust

administrative remedies.  [9] at 6-8; Ex. B, McCready Declaration
¶ 7.

    The parties agree that the doctrine of administrative
exhaustion in this instance is prudential rather than
jurisdictional.  Wilbur v. CIA, 355 F.3d 675, 677 (D.C. Cir.
2004) ("Exhaustion of a FOIA request is not jurisdictional
because the FOIA does not unequivocally make it so.") (internal
quotation marks and citations omitted).  Courts decline to
consider unexhausted FOIA claims when the purpose of the
exhaustion doctrine and the particular administrative scheme
supports dismissal on exhaustion grounds.  Hidalgo v. FBI, 344
F.3d 1256, 1258-59 (D.C. Cir. 2003).  The appropriateness of
judicial review absent administrative exhaustion depends upon
whether such review would support or undermine "the purposes and
policies underlying the exhaustion requirement, namely, to
prevent premature interference with agency processes, to give the
parties and the courts benefit of the agency's experience and
expertise and to compile an adequate record."  Wilbur, 355 F.3d
at 677 (internal citations omitted).

    Apparently hopeful that this court will follow a recent
ruling declining to consider a FOIA case when a requester filed
an administrative appeal twelve minutes late, Center for
Biological Diversity v. Gutierrez, 451 F.Supp.2d 57 (D.D.C.
2006), the Commerce Department asserts that jurisprudential

considerations favor treating ICM's failure to exhaust as a bar
to judicial review.  [13] at 23-25.  After considering the
agency's own violations of mandatory FOIA deadlines in this very
case, however, I find that jurisprudential considerations
actually favor plaintiff's position.

Even though FOIA gives agencies only twenty working
days to rule on appeals by FOIA requesters, 5 U.S.C.
§ 552(a)(6)(A)(ii), the Commerce Department took more than seven
months to respond to ICM's appeal of request No. 06-068; it
eventually responded only after ICM filed this complaint.
Moreover, since the DOC entirely failed to respond to the 06-068
appeal before receiving the prodding of this lawsuit, there is no
reason to assume that the agency would have responded to the 06-
127 appeal prior to the filing of this complaint if it had been
filed 42 minutes earlier.  Davis v. Bolger, 496 F. Supp. 559, 567
(D.D.C. 1980) ("[W]here recourse to agency procedures would be
futile because the agency's position is firm a litigant need not
first exhaust his administrative remedies before bringing his
case to court.").

Because of the agency's delay in ruling on the 06-068
appeal, the timing of the two appeals overlapped, and since the
appeals raised identical issues, ICM asked the agency to consider
the appeals together.  [1] App. F at 2 (incorporating the first
appeal by reference into ICM's appeal of 06-127).  The agency,

- 27 -

therefore, can hardly claim that it lacked the "opportunity to exercise its discretion and expertise on the matter," when it could have easily decided these two appeals in tandem. <u>Center for Biological Diversity</u>, 451 F.Supp.2d at 67 (internal quotation marks and citations omitted). Similarly, considerations of judicial efficiency favor resolving the issues raised in 06-068 and 06-127 simultaneously, or at least back-to-back.

For these reasons, the Commerce Department will be ordered to submit a <u>Vaughn</u> index and supporting material explaining its denials of material responsive to FOIA request 06-127.

An appropriate order accompanies this memorandum.


                                        JAMES ROBERTSON
                                  United States District Judge

- 28 -