IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY AND )
ETHICS IN WASHINGTON, )
11 Dupont Circle, N.W. )
Washington, D.C. 20036 )
)
        Plaintiff, )
) Civil Action No. 06-173 (RJL)
        v. )
)
UNITED STATES DEPARTMENT )
OF HOMELAND SECURITY, )
Washington, DC 20528 )
)
        Defendant. )
_____)

**DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT**

Defendant the United States Department of Homeland Security hereby renews its motion for summary judgment pursuant to Fed. R. Civ. P. 56. The reasons for this motion are set forth in defendant's supplemental memorandum filed herewith.

Dated: January 25, 2008        Respectfully submitted,

        JEFFREY S. BUCHOLTZ
        Acting Assistant Attorney General

        JEFFREY A. TAYLOR
        United States Attorney

        /s/ Peter M. Bryce

        ELIZABETH J. SHAPIRO (D.C. Bar 418925)
        Peter M. Bryce (NY and IL Bars)
        Trial Attorney
        U.S. Department of Justice
        Civil Division, Federal Programs Branch
        20 Massachusetts Ave., N.W., Room 7308
        Washington, D.C. 20001
        Telephone: (202) 616-8335
        Fax: (202) 616-8470
        peter.bryce@usdoj.gov
        Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, 11 Dupont Circle, N.W. Washington, D.C. 20036<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, Washington, DC 20528<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 06-173 (RJL) |

## SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

On September 26, 2007, the Court granted summary judgment in defendant's favor with respect to the vast majority of materials withheld under the Freedom of Information Act, but denied summary judgment "without prejudice" as to certain of defendants' claims under Exemption 5, the presidential communications privilege. Pursuant to this ruling, defendant hereby renews its Motion for Summary Judgment with respect to the materials still at issue, and in support thereof, submits this Memorandum of Points and Authorities along with the attached supplemental declarations and exhibits, including a supplemental Vaughn index.

### BACKGROUND[1]

This case arises out of plaintiff's FOIA request, submitted on September 7, 2005, to

---

[1] A statement of material facts not in dispute was submitted along with Defendants' Motion for Summary Judgment (docket entry 12) on February 20, 2007.

1

defendant United States Department of Homeland Security, and specifically to its component, the Federal Emergency Management Agency ("FEMA" or "defendant"). See Declaration of Adrian Sevier ("Sevier Decl.") at ¶¶ 19-28. Plaintiff's request sought eighteen categories of documents relating to FEMA's preparation for and response to Hurricane Katrina. Id. ¶¶ 19-20. After conducting a comprehensive search, defendant identified and processed approximately 8100 pages of materials responsive to plaintiff's FOIA request. Id. ¶ 22. Although defendant withheld materials under various FOIA exemptions, the parties agreed to limit this litigation to defendant's withholdings under Exemption 5. See 5 U.S.C. 552(b)(5). Id. ¶ 26. In all, defendant withheld approximately 1503 pages in whole or in part under Exemption 5, including materials withheld on the basis of the deliberative process privilege, the attorney-client privilege, the work product doctrine, and the presidential communications privilege. Id. ¶¶ 27, 31-56.

After briefing by the parties, this Court granted summary judgment in defendant's favor with respect to the vast majority of withheld materials. See Citizens for Responsibility and Ethics in Washington v. U.S. Dept. of Homeland Sec., 514 F. Supp. 2d 36 (D.D.C. 2007). The Court initially held that the materials are "inter-agency or intra-agency" communications and therefore meet the threshold requirement for protection under Exemption 5. See id. at 43-45. The Court also found that defendant's Exemption 5 claims under the deliberative process privilege were appropriate, rejecting plaintiff's arguments that various withheld materials were not deliberative. Id. at 45-47. Similarly, the Court granted summary judgment in defendant's favor for materials withheld pursuant to the attorney-client privilege and the work product doctrine. Id. at 42 n. 2, 50.

The Court also granted summary judgment in defendant's favor with respect to the majority of materials withheld under Exemption 5, the presidential communications privilege.

2

First, the Court found that the communications were sufficiently related to presidential decision-making because the documents were authored or solicited and received by White House advisers who were formally charged with advising the President and providing him with recommendations in the wake of Hurricane Katrina. Id. at 48. The Court also found that since the White House advisers involved had "broad and significant responsibilities for gathering information and formulating advice and recommendations to be transmitted to the President," the communications with the White House advisers or their staff are exempt from production under Exemption 5, the presidential communications privilege. Id. at 48-49 (quoting Declaration of Joel B. Bagnal ("Bagnal Decl.") at ¶ 14)

However, the Court denied summary judgment "without prejudice" with respect to 82 pages of partly withheld e-mails that were redacted under Exemption 5 on the basis of the presidential communications privilege. See id. At 49 n. 12. (citing Bates Nos. 4-5, 17, 48-50, 1366-68, 1369, 1379, 1380, 1397-14, 1415, 1419-24, 1436-37, 1441-46, 1447-49, 1474-80, 1482, 1485-89, 1504, 1505, 1619, 1627-28, 1629, 1650-52, 1660-63, 1897-1902 and 1903-04). The Court found that "communications solely between agency officials that were withheld as 'intended' for White House advisers or 'revealing' communications with White House advisers were not properly exempt under the presidential communications privilege." Id. at 49. The Court further stated that "[a]lthough Bagnal states in his affidavit that 'it can be fairly inferred' that these withheld communications 'ultimately [were] transmitted' to the White House advisers or the President, this is, without more, insufficient to meet FEMA's burden." Id. Consequently, the Court denied "without prejudice, defendant's Motion for Summary Judgment for these documents withheld under the presidential communications privilege that were not actually transmitted to either the President, or his White House advisers or their staff." Id. at 50.

3

## DISCUSSION

Defendant now renews its motion for summary judgment with respect to the 82 pages of partly withheld materials that remain at issue under Exemption 5, the presidential communications privilege. As to 47 of these pages, defendant has now made a discretionary decision not to pursue its Exemption 5 claims based on the presidential communications privilege, and therefore, as discussed below, plaintiff's challenges to these materials are now moot. As to the remaining 35 pages, defendant submits additional evidence in support of its claims under Exemption 5, the presidential communications privilege, and hereby requests that the Court grant summary judgment as to those claims.

The information redacted from the original 82 pages can generally be classified into two distinct categories: (1) communications "that were intended to be transmitted, and it can be fairly inferred ultimately were transmitted, either to the President, or to the President's immediate advisers and their respective staffs" ("intended communications"), Bagnal Decl. ¶ 15.c; and (2) "communications of the President, and his immediate advisers and their respective staffs" which are "referred to or reflected in internal FEMA communications," ("memorialized communications"), Bagnal Decl. ¶ 15.e.[2]

### A. Materials containing intended communications have now been discretionarily released to the extent not otherwise covered under another claimed exemption

The materials at issue in this Motion include e-mails that were redacted in part in order to protect intended communications as described in the Bagnal Declaration at Paragraph 15.c. Defendant has now made a discretionary decision not to pursue the Exemption 5 claims based on

---

[2] Bates No. 1505, however, does not fit into either of these two categories, and is addressed in Part C, below.

the presidential communication privilege for these, and certain other, withheld materials.[3] See Second Supplemental Declaration of Adrian Sevier ("Second Supplemental Sevier Declaration") at ¶ 5. Accordingly, while many of the withheld portions of these materials remain exempt on the basis of other privileges, defendant has now released additional information where the material at issue was not covered by another exemption claim. See id. Since defendant no longer asserts Exemption 5, presidential communications privilege, with respect to these materials, and since the Court has already granted summary judgment in defendant's favor with respect to other exemption claims applicable to these documents, plaintiff's challenge is now moot and the Court should grant summary judgment in defendant's favor with respect to these materials. Bates Nos. 4-5, 48-50, 1369, 1380, 1397-1415, 1419-1424, 1436-1437, 1441-1446, 1504, 1627-1629, 1650-1652.

**B.    Defendant properly withheld memorialized communications with the President, and his immediate White House advisers**

The materials at issue in the Motion also include memorialized communications as described in the Bagnal Declaration at Paragraph 15.e. See Bates Nos. 17, 1366-1368, 1379, 1447-1449, 1474-1480, 1482, 1485-1489, 1619, 1660-1663, 1897-1904. In denying summary judgment without prejudice, the Court suggested that there was some uncertainty in the White House declaration about whether these memorialized communications actually involved the President or his immediate White House advisers. The Court noted that "[a]lthough Bagnal

---

[3] Although defendant continues to believe that these redactions meet the requirements of the privilege, and does not hereby concede otherwise, defendant has, in the interest of expeditiously resolving this litigation, made a discretionary decision not to pursue these particular exemption claims. See Crumpton v. Stone, 59 F.3d 1400, 1404 (D.C. Cir. 1995) ("'The exemptions are permissive, and an agency may voluntarily release information that it would be permitted to withhold under the FOIA exemptions.'") (quoting Mobil Oil Corp. v. EPA, 879 F.2d 698, 700 (9th Cir.1989)).

5

states in his affidavit that 'it can be fairly inferred' that these withheld communications 'ultimately [were] transmitted' to the White House advisers or the President, this is, without more, insufficient to meet FEMA's burden." However, the "fairly inferred" language cited by the Court from the Bagnal Declaration did not in fact refer to this category of "memorialized communications." Instead, it applied only to the category of materials withheld as intended communications described in Paragraph 15.c of the original Bagnal Declaration which, as discussed above, are now no longer at issue in this litigation. See Bagnal Decl. ¶ 15.c (describing communications "that were intended to be transmitted, and it can be fairly inferred ultimately were transmitted, either to the President, or to the President's immediate advisers and their respective staffs.") (emphasis added).

With respect to the documents at issue here, by contrast, there is no question that actual communications with the White House are revealed in the text of the internal FEMA e-mails themselves. As the Supplemental Declaration of Joel B. Bagnal ("Supplemental Bagnal Declaration") at ¶¶ 3-5, now explains, these e-mails memorialize, summarize, describe or otherwise reflect the content of privileged conversations and/or discussions between agency officials and the President, his White House advisers or their staff. Id. ¶ 4. Thus, while there is no indication that the e-mails were themselves sent to or from the White House, the material redacted nonetheless would, if disclosed, reveal the substance of actual privileged communications with the White House that occurred prior to the creation of these e-mails. Id. To cite an example previously challenged by plaintiff, the e-mail chain at Bates No. 1379 contains an e-mail from then-FEMA Director and DHS Under Secretary, Michael Brown, to two other senior FEMA officials in which Director Brown summarizes a conversation he had with the President in the wake of Hurricane Katrina. Id. Defendant therefore redacted this e-mail chain to

6

the extent necessary to avoid disclosing the substance of this privileged conversation with the President. Id. Additional information about the particular memorialized communications redacted is included in the supplemental Vaughn index and redacted pages attached to the Second Supplemental Sevier Declaration.

Such redactions are clearly appropriate under Exemption 5. The presidential communications privilege is not limited to documents, but extends to all communications, including oral communications, that meet the requirements of the privilege. See Judicial Watch, 365 F.3d at 1114-16 (noting that presidential privilege extends to "documents *and other communications*") (emphasis added). By the same token, it is also well-settled that the privilege extends to materials that memorialize or otherwise reveal the content of such privileged oral communications, such as the tape recordings of President Richard Nixon's White House conversations, United States v. Nixon, 418 U.S. 683 (1974), or notes from meetings attended by White House advisers, In re Sealed Case, 121 F.3d at 758 (notes were clearly privileged because they "reflect these [White House] adviser's communications"). Indeed, the same principle holds true for privileges generally, not just the presidential communications privilege.[4] Protection extends not only to the privileged communication itself, but to documents or records that reveal

---

[4] In the context of other privileges, such as the attorney-client and deliberative process privileges, these sorts of withholdings are commonly recognized as proper. See, e.g., Restatement (Third) of the Law Governing Lawyers § 69 ("communication" includes an expression undertaken to convey information "*and any document or other record revealing such an expression*"); Nesse v. Pittman, 206 F.R.D. 325, 329 (D.D.C. 2002). ("privilege attaches to Rossotti's notes, which are not, strictly speaking, communications from Harvey to Rossotti, but rather Rossotti's memorialization of such communications"); Appleton v. Food and Drug Admin., 451 F.Supp.2d 129, 144 n. 9 (D.D.C. 2006) (protecting "memorialization" of discussions subject to the deliberative process privilege); Electronic Privacy Info. Ctr. v. DHS, No. 04-1625, 2006 U.S. Dist. LEXIS 94615, at *22-24 (D.D.C. Dec. 22, 2006) (protecting under deliberative process privilege an e-mail that "recounted" past deliberations over a prior decision); Neuder v. Battelle Pacific Northwest Nat. Laboratory, 194 F.R.D. 289, 296 (D.D.C. 2000). (portion of notes that memorialized privileged conversation with attorney properly redacted).

the content of such privileged communications. Accordingly, since the redacted portions of the e-mails at issue reveal the content of privileged communications with the White House, the Court should grant summary judgment in defendant's favor with respect to this category of materials.

Nothing in the D.C. Circuit's Judicial Watch opinion warrants a different conclusion. In that case, the government withheld various internal Justice Department documents in their entirety, arguing that the presidential privilege applied because the documents were produced for the sole purpose of helping formulate pardon recommendations for the President. Judicial Watch, 365 F.3d at 1119. The court found this argument insufficient to justify wholesale extension of the privilege to documents that were neither authored nor solicited and received by the President or his White House advisers. The court's decision, however, did not address the propriety of redacting actual discussions with the White House memorialized in an otherwise purely internal agency document. Nor did it have occasion to do so, since the government's privilege argument had nothing to do with this type of claim. Indeed, to read Judicial Watch otherwise, would render it essentially inconsistent with the presidential communications privilege authorities discussed above, and with the general commonsense rule that protects privileged communications memorialized in a document. See Nesse, 206 F.R.D. at 329 ("It would make little sense to say that a communication from Harvey to Rossotti is privileged, but that the firm loses this privilege merely upon Rossotti's committing what Harvey said to paper. Such a rule would discourage parties, for no good reason, from memorializing in writing information that is unquestionably privileged.")

In fact, Judicial Watch affirmatively supports application of the privilege here. The government's privilege arguments in that case were rejected precisely because the communications at issue did not directly involve the President or his advisers, and thus were

8

"unlikely to 'be revelatory of his deliberations.'" Id. at 1117 (quoting In re Sealed, 121 F.3d at 752). This reasoning plainly would not apply where, as here, the communication for which privilege is claimed is not the document itself, but a direct communication with the President or his advisers memorialized within the document. Such material plainly *would* be revelatory of presidential deliberations, as it is exactly the sort found to be within the scope of the privilege by the Supreme Court and the D.C. Circuit. See Nixon, 418 U.S. 683 (privilege applies to President's conversations memorialized on tape recordings); In re Sealed Case, 121 F.3d at 758 (privilege applies to notes that "reflect [White House] advisers' communications"). Indeed, the Judicial Watch court took pains to emphasize that, notwithstanding its holding in that case, "any direct communications" agency officials may have with "White House counsel or other immediate presidential advisers will remain protected" under the presidential communications privilege. Id. at 1117 (emphasis added).

Accordingly, the Court should grant summary judgment in defendant's favor with respect to this category of materials withheld under Exemption 5, the presidential communications privilege.[5]

C. **The redacted e-mail from a White House adviser on Bates No. 1505 was properly withheld under Exemption 5, the presidential communications privilege**

The Court's denial of summary judgment was based on the finding that the documents at issue were communications "solely between agency officials." The e-mail redacted from Bates No. 1505, however, is clearly described in defendant's Vaughn index (and supplemental Vaughn index) as an "email . . . from a White House adviser." Although plaintiff incorrectly included

---

[5] The Court could also grant summary judgment for many of these materials because they are protected on the basis of another exemption or privilege. The documents attached to the Second Supplemental Sevier Declaration makes clear which portions of these e-mails were withheld on the basis of other privileges or exemptions.

Bates No. 1505 in a list of purportedly internal agency e-mails, Pl. Opp. n. 12, plaintiff does not challenge the description of this e-mail in the <u>Vaughn</u> index or provide any other reason to doubt its privileged nature. Accordingly, the Court should grant summary judgment in defendant's favor with respect to its Exemption 5, presidential communications privilege claim for this e-mail.

## CONCLUSION

For the foregoing reasons, and for the reasons articulated in the attached supplemental declarations, as well as those identified in the original Motion to Dismiss and supporting materials, defendant respectfully requests that this motion be granted and that summary judgment be entered in favor of defendant.

Dated: January 25, 2008                              Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General
JEFFREY A. TAYLOR
United States Attorney
ELIZABETH J. SHAPIRO (D.C. Bar 418925)
Assistant Director

/s/ Peter M. Bryce
Peter M. Bryce (NY and IL Bars)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W., Room 6138
Washington, D.C. 20001
Telephone: (202) 616-8335
Fax: (202) 616-8470
peter.bryce@usdoj.gov
Attorneys for Defendant