UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Citizens for Responsibility and  Ethics in Washington, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Civil Action No.: 06-0173 (RJL) |
| United States Department of  Homeland Security, ) ) ) | |
| Defendant. ) ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

The only issue remaining in this Freedom of Information Act ("FOIA") case following this Court's decision of September 6, 2007 is whether certain documents may be withheld pursuant to Exemption 5 as protected by the presidential communications privilege. Although defendant U.S. Department of Homeland Security ("DHS") submits in its renewed motion for summary judgment that a subcategory of 35 pages of documents[1] continues to qualify for protection under the presidential communications privilege, it has still not met the requirements for that privilege as established by the governing case law. Accordingly, Citizens for Responsibility and Ethics in Washington ("CREW") opposes defendant's renewed motion.

This FOIA case arises from CREW's FOIA request of September 7, 2005, seeking certain documents from DHS's component agency, the Federal Emergency Management Agency

---

[1] Of the 82 pages of documents initially withheld under the presidential communications privilege for which the Court denied summary judgment, defendant has now released 47 pages, leaving 35 still at issue.

("FEMA"), relating to FEMA's preparation for and response to Hurricane Katrina.[2] In its opinion of September 6, 2007, this Court concluded, *inter alia*, that defendant had established that certain documents were protected pursuant to the presidential communications privilege, but denied summary judgment for certain other documents that were merely "intended" for White House advisers but that "were not actually transmitted to the White House advisers or their staff." Citizens for Responsibility and Ethics in Washington v. U.S. Dep't of Homeland Sec., 514 F. Supp. 2d 36, 50 (D.D.C. 2007).

Defendant has now renewed its motion for summary judgment as to portions of 35 pages of these documents.[3] This motion is equally without merit as defendant still has not established that these documents meet the requirements of the presidential communications privilege. First, as this Court already has found, documents that merely reveal communications with White House advisors are not protected. Second, defendant has not established that the documents pertain to presidential decision-making; indeed, it appears that at most they relate to decisions that the agency was making. Accordingly, the 35 pages of documents withheld as within the presidential communications privilege must be released to CREW.

---

[2] The events surrounding FEMA's response to Hurricane Katrina, plaintiff's FOIA request and defendant's response to that request are set forth in plaintiff's Opposition to Defendant's Motion for Summary Judgment at pp. 1-5 and incorporated herein.

[3] Although defendant has filed a new motion supported by new declarations, it has failed to submit a statement of material facts as to which defendant contends there is no genuine issue, citing instead to the statement it filed on February 20, 2007, in support of a motion that this court denied in part. Defendant's Supplemental Memorandum of Points and Authorities at p. 1 n.1. LCvR 56.1, however, mandates that "[e]ach motion for summary judgement shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue . . ." (emphasis added). Defendant's failure to comply with LCvR 56.1 provides an independent basis to deny defendant's motion.

## ARGUMENT

In its renewed motion for summary judgment, defendant attempts to protect certain portions of 35 pages of documents pursuant to the presidential communications privilege. This privilege is narrow, however, and applies only to (1) documents solicited and received by the president or his immediate advisers in the Office of the President, (2) in furtherance of the president's decision-making and deliberations and (3) that the president believes should remain confidential. See Judicial Watch v. Department of Justice, 365 F.3d 1108, 1113 (D.C. Cir. 2004); In re Sealed Case, 121 F.3d 729, 744 (D.C. Cir. 1997). The privilege is to be "construed as narrowly as is consistent with ensuring that the Office of the President's decisionmaking process is adequately protected." In re Sealed Case, 121 F.3d at 752. Furthermore, the privilege "should never serve as a means of shielding information regarding government operations that do not call ultimately for direct decisonmaking by the President." Id. Finally, this privilege does not extend to "communications solely between agency officials that were withheld as 'intended' for White House advisers or '*revealing*' *communications with White House advisers*." Citizens for Responsibility and Ethics in Washington v. U.S. Dep't of Homeland Security, 514 F. Supp. 2d at 50 (emphasis added); see also Judicial Watch v. Dep't of Justice, 365 F. 3d 1108, 1114 (D.C. Cir. 2004).

The documents defendant still asserts are protected by the presidential communications privilege are e-mails that it claims reveal communications with the White House. Supplemental Declaration of Joel B. Bagnal ("Supp. Bagnal Decl.") at ¶¶3-5.[4] According to defendant, these

---

[4] Plaintiff continues to contend that defendant did not properly invoke this privilege for all documents claimed to reflect presidential communications, as set forth in plaintiff's Opposition to Defendant's Motion for Summary Judgment at 1. This Court, however, found that defendant

3

e-mails were never sent to or from the White House, but merely memorialized communications with the White House that occurred prior to the creation of the e-mails. Id. at ¶ 4. By defendant's own description of the withheld e-mails, they recount only conversations FEMA employees had with unnamed White House employees. The actual documents were never seen by the president or any other White House employee. Nor has defendant even claimed that the emails were intended for viewing by the president or any White House employee. Accordingly, because the communications were neither solicited nor received by the president or his immediate advisers, nor created in furtherance of the president's decision-making, the withheld e-mails are not within the presidential communications privilege.

Indeed, accepting defendant's invocation of the presidential communications privilege here would broaden the privilege to protect any document an agency official creates that memorializes conversations with the president or his advisers, no matter the subject or whether or not the president intended or expected confidentiality. The privilege has never been construed so broadly and this Court should decline to do so here.

In arguing to the contrary, DHS appears to rely on a construction of the presidential communications privilege that would protect any "communications with the White House that occurred prior to the creation of these e-mails." Defendant's Supplemental Memorandum at p. 6. Completely missing from this construction, however, is any recognition that to be privileged the communications must relate to presidential decision-making, and not merely communications with the president and his top advisers. As the Supreme Court emphasized in U.S. v. Nixon, 418

---

properly invoked this privilege. Citizens for Responsibility and Ethics in Washington v. U.S. Dep't of Homeland Security, 514 F. Supp. 2d at 48, n.10. Accordingly, plaintiff notes its position solely to preserve the issue for appeal.

U.S. 683, 708 (1974), "'the privilege is limited to communications 'in performance of (a President's) responsibilities,' 'of his office,' and *made 'in the process of shaping policies and making decisions*.'"  Id., *quoted in* Judicial Watch v. Dep't of Justice, 365 F.3d at 1113 (emphasis added).  Just as critically, as the D.C. Circuit recognized in Judicial Watch v. Dep't of Justice, "'the privilege should not extend to staff outside the White house in executive branch agencies.'"  365 F.3d at 1116, *quoting* In re Sealed Case, 121 F.3d at 752.  Yet this is precisely the extension that defendant is advocating here, an extension that ignores the "operational proximity to the President" that is a critical element of the presidential communications privilege.  In re Sealed Case, 121 F.3d at 752 (quotation omitted).

Accordingly, as this Court previously recognized, the documents at issue -- which were merely transmitted between agency personnel -- do not meet the requirements of the presidential communications privilege and must be produced. Citizens for Responsibility and Ethics in Washington v. U.S. Dep't of Homeland Security, 514 F. Supp. 2d at 50.

Furthermore, it is far from clear that the documents even pertain to any type of decision-making, much less presidential decision-making.  The presidential communications privilege protects only materials connected to presidential decision-making.  Judicial Watch, 323 F.3d at 1116; In re Sealed Case, 121 F.3d at 752.  The privilege specifically applies to "communications in performance of a President's responsibilities. . . and made in the process of shaping policies and making decisions." Nixon v. Adm'r of Gen. Servs., 433 U.S. 425, 449 (1997) (internal citations and formatting omitted).

Here, none of the agency's supplemental declarations identifies any presidential decision to which the withheld documents relate.  The only presidential decision identified in the Second

5

Supplemental Declaration of Adrian Sevier ("2d Supp. Sevier Decl.") is the president's decision to declare "numerous counties and parishes in . . . four states to be major disasters . . ." 2d Sevier Decl. at ¶ 13. The withheld documents, however, post-date that decision and appear to relate to FEMA's

> exercise[] of its statutory authority to develop unique programs to respond to the disaster, provide housing for evacuees and disburse disaster assistance . . . [which] engaged the active participation of high-level government officials, including those within the White House.

Id. at ¶ 16.

Similarly, the Supplemental Declaration of Joel B. Bagnal ("Supp. Bagnal Decl.") describes the withheld documents as "reveal[ing] actual communications with the White House," id. at ¶ 4, which he further specifies as including "the advice, opinions, recommendations, and other information of the President, his immediate advisers and their respective staffs that are memorialized in internal agency e-mails . . ." Id. at ¶ 5. Internal agency documents that reflect advice flowing from the White House to the agency in aid of the agency's decision-making process are simply not within the presidential communications privilege, as they have nothing to do with making presidential decisions.

Although defendant's Vaughn index states that "[t]he purpose of the withheld communication was to gather, assess, and/or transmit information for purposes of informing, advising and/or assisting the presidential decision-making process," Exhibit C to the 2d Supp. Sevier Decl. at 1-5, this boilerplate language is at odds with the declarations of Mr. Sevier and Mr. Bagnal as well as the substance of those portions of the documents that defendant released. The withheld portions are parts of documents that have otherwise been segregated and released

to plaintiff. See Exhibit C to the 2d Supp. Sevier Decl. at 7-41. Many of the withheld portions, which the Supplemental Declaration of Joel Bagnal describes only as "memorializ[ing] communications with the White House,"[5] are marked as subject to only the presidential communications privilege.[6] Yet despite the boiler plate language used in defendant's Vaughn index to justify their exemption, many of the actual documents as released do not reflect that material withheld was part of a process of "gather[ing], assess[ing], and/or transmit[ting] information for purposes of informing, advising and/or assisting the presidential decision-making process."

Defendant may argue that these memoralizations of conversations with the president and/or his top advisers are covered by the presidential communications privilege because they reflect post-decisional presidential matters. In re Sealed Case, 121 F.3d 729, 744-745 (D.C. Cir. 1997). Post-decisional documents, however, must still be "solicited and received" by either the president or his advisers. Judicial Watch, Inc. v. Dep't of Justice, 365 F.3d 1108, 1114 (D.C. Cir. 2004). There is no evidence that the documents at issue here were even intended to be received by the president or his advisers, nor were they solicited by them.

## CONCLUSION

For the foregoing reasons, as well as those set forth in Plaintiff's original Opposition to Defendant's Motion to Dismiss, plaintiff respectfully requests that defendant's motion be denied, and the remaining disputed documents be released to plaintiff.

---

[5] Id. at ¶ 4.

[6] The withheld documents are Bates Stamp Document Numbers 17, 1366-68, 1379, 1447-49, 1619, and 1660-63.

Respectfully submitted,

_____/s/_____
Anne L. Weismann
(D.C. Bar. No. 298190)
Melanie Sloan
(D.C. Bar No. 434584)
Citizens for Responsibility and
   Ethics in Washington
1400 Eye Street, N.W. Suite 450
Washington, D.C.  20005
Phone (202) 408-5565
Fax  (202) 588-5020

_____/s/_____
Scott A. Hodes,
(D.C. Bar No. 430375)
P.O. Box 42002
Washington, D.C.  20015
Phone (301) 404-0502
Fax (301) 738-2128


Attorneys for Plaintiff

Dated:  February 20, 2008