IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY AND )
ETHICS IN WASHINGTON, )
11 Dupont Circle, N.W. )
Washington, D.C. 20036 )
                                                                        )
               Plaintiff, )
                                                                        )     Civil Action No. 06-173 (RJL)
               v. )
                                                                         )
UNITED STATES DEPARTMENT )
OF HOMELAND SECURITY, )
Washington, DC 20528 )
                                                                         )
               Defendant. )
_____)

**REPLY MEMORANDUM IN FURTHER SUPPORT OF
DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

It is now clear that summary judgment should be entered for defendant for the 82 pages of materials that remain at issue. First, plaintiff makes no argument whatsoever pertaining to the 48 pages of materials addressed in Parts A and C of the defendant's renewed motion for summary judgment. Accordingly, summary judgment is clearly appropriate with respect to those materials. Second, as demonstrated below, plaintiff's arguments with respect to the remaining 34 pages of partly withheld materials are meritless and provide no basis to deny summary judgment.

**ARGUMENT**

Defendant's renewed motion for summary judgment established that defendant properly redacted privileged White House communications memorialized in the text of certain e-mails. These "memorialized communications" meet the requirements for protection under the

1

presidential communications privilege because they reflect conversations and discussions that directly involved the President, his immediate White House advisers and their staffs, and because those conversations and discussions occurred as part of the process of informing presidential decision-making related to Hurricane Katrina.  See Bagnal Decl. ¶¶ 8-16; Supp. Bagnal Decl. ¶¶ 3-5.  In this respect, the memorialized communications are no different from the other categories of communications that this Court has already found protected under the presidential communications privilege.  Here, however, the "communication" withheld is not the e-mail document itself (which has been released in redacted form), but the privileged conversations and/or discussions memorialized within the text of the e-mail.  See Ren. Mot. at 4, 5-7; Supp. Bagnal Decl. ¶ 3; Supp. Vaughn Index.  As explained at length in the renewed motion, such redactions are entirely proper.  Ren. Mot. at 5-9.  See also, e.g., In re Sealed Case, 121 F.3d 729, 758 (D.C. Cir. 1997) (notes of meetings attended by White House advisers protected because notes "reflect these advisers' communications.")

      Evidently unable to refute this argument, plaintiff chooses not to address it at all. Instead, plaintiff continues to act as if the "communications" at issue are the e-mails themselves, rather than the communications memorialized in the text of those e-mails.[1]  Plaintiff asserts, for example, that the "withheld e-mails" should be released under Judicial Watch because the "actual documents" were not seen "by the President or any other White House employee."  Opp.

---

[1] Plaintiff's contention that defendant violated LCvR 56.1 – apart from being absurdly formalistic – is also wrong.  Opp. at 2 n. 2.  First, nothing in LCvR 56.1 prohibits defendant from incorporating by reference the statement of material facts filed with its original motion, and that is exactly what defendant did.  See Ren. Mot. at 1 n. 1.  Accordingly, if the rule applies at all, then it is plaintiff, not defendant, that violated it because plaintiff failed to provide any response to defendant's statement of material facts, either by separate filing or by incorporating by reference its original response.  Second, defendant did not file a separate and independent motion for summary judgment that would necessitate a new statement under the rule.  It simply renewed its original motion which was denied in part "without prejudice" by the Court.

at 3.  See also Opp. at 7 (citing Judicial Watch and contending that the "documents" were not "intended to be received by the president or his advisers, nor were they solicited by them").  Defendant has now made unmistakably clear, however, that the *only* communications at issue here are the communications with the White House memorialized within the documents.  See Ren. Mot. at 4, 5-7; Supp. Bagnal Decl. ¶ 3; Supp. Vaughn Index.   Plaintiff's refusal to acknowledge the true nature of the communications at issue, and thus to confront defendant's argument head on, can only be understood as a tacit concession that plaintiff has no basis to challenge these redactions.

   Of course, the Court need not rely on such a concession here because, as already demonstrated in defendant's renewed motion, the law clearly permits these withholdings.  See Ren. Mot. 5-9; see also, e.g., United States v. Nixon, 418 U.S. 683 (1974) (privilege applies to President's conversations memorialized on tape recordings); In re Sealed Case, 121 F.3d 729, 758 (D.C. Cir. 1997) ("notes taken of meetings . . . at which these [White House] advisers were present" are "clearly" privileged "since these notes reflect these advisers' communications").  To conclude otherwise would conflict with the applicable presidential communications privilege cases in the D.C. Circuit and Supreme Court, and with the law of privileges generally.  It would also defy common sense because such a rule would "discourage parties, for no good reason, from memorializing in writing information that is unquestionably privileged." Nesse v. Pittman, 206 F.R.D. 325, 329 (D.D.C. 2002).  Plaintiff ignores all of this and instead simply rehashes the same inapplicable Judicial Watch argument that defendant must release the documents in question because they were never viewed by anyone in the White House.  Opp. at 4-5, 7.  Again, however, this argument rests on the false premise that the communications at issue are the documents themselves, rather than the conversations and discussions memorialized in their text.

3

Ren. Mot. 8-9.  There is no question that these conversations and discussions directly involved the President, and his immediate White House advisers, and their staff.  Bagnal Decl. ¶ 10, 14, 15; Supp. Vaughn Index.  As explained, Judicial Watch does not prohibit, and in fact, affirmatively supports these sorts of redactions.  See Ren. Mot. at 8-9.

     Plaintiff also wrongly states that defendant's position would permit withholding even if the communications at issue were not in any way connected to presidential decision-making.  But defendant has argued nothing of the sort.  To the contrary, it has acknowledged repeatedly that these sorts of redactions are appropriate only to the extent that the underlying memorialized communications "meet the requirements of the privilege."  Ren. Mot. at 7.  See also id. at 7-8 (protection extends only to otherwise "privileged communications" which are revealed in documents or other records).  Indeed, the factual predicate necessary to determine that the underlying memorialized communications meet the requirements of the privilege were set forth in the original declarations and Vaughn index, and are further expanded upon in the supplemental index and supplemental declaration of Joel Bagnal.  See Bagnal Decl. ¶¶ 8-16.  See also Supp. Bagnal Decl. ¶ 5 (re-emphasizing that the descriptions in the original Bagnal Declaration apply as much to the "memorialized communications" as to the other categories of communications withheld under the presidential communications privilege"); Supp. Vaughn Index (providing individualized descriptions of the memorialized communications redacted from the text of these e-mails).

     Plaintiff also asserts that the communications do not relate to presidential decision-making.  Opp. at 5-7.  The supporting materials, however, clearly show otherwise.  Indeed, many of the communications memorialized within these e-mails are conversations or discussions between FEMA officials *and the President himself* in the wake of Hurricane Katrina.  See, e.g.,

4

Supp. Vaughn Index Bates Nos. 1379, 1474-1480, 1482, 1485-1489, 1897-1902, 1903-1904. There can be no question that such communications occurred "in performance of [the] President's responsibilities" as part of the "process of shaping policies and making decisions." Nixon v. Administrator of General Services, 433 U.S. 425, 449 (1997). As the Bagnal Declaration made clear, the President relied on discussions with FEMA officials, and with his advisers, as a means of informing his decisions about how to accommodate requests for Federal support in the wake of Hurricane Katrina. Bagnal Decl. ¶¶ 9-16. To that end, the President's conversations, discussions, and other communications with FEMA officials in the wake of Hurricane Katrina were intended to apprise him of "the severity of destruction, and the needs of the responders on the ground that were the subject of requests for assistance from State governments." Id. ¶ 10.

The memorialized communications with White House advisers and their staff are also sufficiently connected to presidential decision-making. As explained in the Bagnal Declaration, the White House advisers involved in these communications "held broad and significant responsibilities for gathering information and formulating advice and recommendations to be transmitted to the President on issues related to the preparation for and response to Hurricane Katrina." Bagnal Decl. ¶ 14. And the communications themselves were made for the purpose of formulating "advice and recommendations for the President in his decisions regarding how best to accommodate requests for Federal support, both in his capacity as Commander in Chief and as Chief Executive supervising the Federal response to Hurricane Katrina." Bagnal Decl. ¶ 10. See also id. ¶¶ 12, 14, 16. These and other statements[2] are clearly sufficient for purposes of the

---

[2] See also, for example, the following statement quoted by this Court in its initial decision in this case, CREW, 514 F. Supp. 2d at 48:

5

privilege.  See In re Sealed Case, 121 F.3d at 752 (privilege applies to communications of advisers with "broad and significant responsibility for investigating and formulating the advice to be given to the President" to the extent that the communications were made "in the course of preparing advice for the President").  See also Judicial Watch, 365 F.3d at 1114.

Indeed, this Court has already held that defendant "easily met its burden" of establishing the requisite connection to "presidential decision-making" – at least with respect to the other categories of communications withheld under the presidential communications privilege, such as e-mails sent directly from White House advisers.  CREW, 514 F. Supp. 2d at 48.  There is no basis for a different conclusion with respect to the memorialized communications.  To the contrary, the statements that this Court relied upon to find the requisite connection to presidential decision-making apply just as much to the "memorialized" communications as they do to the other categories of withheld communications.  See Bagnal Decl. ¶ 15 (setting forth five categories of communications described, including "communications of the President, and his immediate advisers and their respective staffs *referred to or reflected in* internal FEMA communications") (emphasis added).  See also Supp. Bagnal Decl. ¶ 5 (re-emphasizing that the descriptions and concerns identified in the original Bagnal declaration "are no less applicable" to the memorialized communications).

---

> [T]he President's advisers or staff made, solicited and received communications from FEMA and other agency officials for the purposes of assessing the conditions on the ground, resolving inconsistent and conflicting information to the extent possible, and making decisions regarding responses to requests for Federal government support . . . .  Information gathered through these communications was considered and, whether included or excluded from the final rendition of advice, it played a role in the formulation of advice and recommendations to the President regarding how best to accommodate and support requests for emergency assistance from FEMA as well as State and local entities.

Bagnal Decl. ¶ 12.

6

Plaintiff's attempts to rehash arguments on the requisite connection to presidential decision-making are unavailing. First, plaintiff incorrectly suggests that defendant must "identify" particular Presidential decisions relating to each withheld communication. Opp. at 5-6. The law requires no such thing.[3] In fact, the D.C. Circuit has made clear that the privilege affirmatively protects the President's final decisions, not just deliberations leading up to them, see, e.g., Judicial Watch, 365 F.3d at 1113-14, so plaintiff's position would require disclosure of potentially privileged information. Second, plaintiff wrongly asserts that the communications reflect nothing more than "advice flowing from the White House to the agency in aid of the agency's decision-making process." Opp. at 6. Plaintiff's assertion is flatly refuted by the detailed statements and descriptions in the Bagnal declaration, Supplemental Bagnal Declaration, and Supplemental Vaughn Index, which repeatedly make clear that the communications were made for the purpose of informing the President's decisions in the wake of Hurricane Katrina.[4] Finally, plaintiff incorrectly asserts that the declarations and unredacted portions of these released e-mails somehow conflict with a statement in the Supplemental Vaughn Index that the communications were made for purposes of informing presidential decision-making. Opp. at 6-7. To the contrary, as explained above, these materials are fully consistent with – and indeed, affirmatively establish – the requisite connection to presidential decision-making.[5]

---

[3] For example, in In re Sealed Case, 121 F.3d 729, the pardon documents found to be within the privilege were not linked to any particular pardon decision by the President.

[4] Nothing in the Supplemental Bagnal Declaration indicates otherwise, including the language partly quoted by plaintiff. Opp. at 6 (citing Supp. Bagnal Decl. ¶ 5). Read in context, this language simply confirms that disclosure of the communications memorialized in these e-mails would be "revelatory of [the President's] deliberations." See Judicial Watch, 365 F.3d at 1117 (quoting In re Sealed, 121 F.3d at 752).

[5] Plaintiff's argument on this point is difficult to follow. Plaintiff does not actually identify any perceived inconsistency. Plaintiff does state that certain documents are "marked as

## CONCLUSION

For the foregoing reasons, and for the reasons articulated in the renewed motion and supporting materials, as well as those identified in the original motion for summary judgment and supporting materials, defendant respectfully requests that summary judgment be entered in favor of defendant.

Dated: March 11, 2008                    Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General
JEFFREY A. TAYLOR
United States Attorney
ELIZABETH J. SHAPIRO (D.C. Bar 418925)
Assistant Director


 /s/ Peter M. Bryce
Peter M. Bryce (NY and IL Bars)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W., Room 6138
Washington, D.C.  20001
Telephone: (202) 616-8335
Fax: (202) 616-8470
peter.bryce@usdoj.gov
Attorneys for Defendant

---

subject to only the presidential communications privilege," Opp. at 7, but this statement is neither relevant nor correct (most of the documents plaintiff cites are "marked" as subject to the deliberative process privilege as well).  Plaintiff also states that the released portions of the e-mails do not "reflect" that the purpose of communications was to inform the presidential decision-making.  However, since the content of those privileged discussions have been redacted from the text of the documents, there is no reason to expect that the *unredacted* portion would "reflect" the requisite purpose.  In any event, plaintiff's statement is incorrect because the released portions of at least some of these documents do in fact tend to corroborate the already-demonstrated connection to presidential decision-making.  See, e.g., the subject lines of Bates Nos. 1366-1368 ("IMPORTANT! CALLS FROM POTUS"); 1447-1449 ("Follow up from the White House"); 1482; 1485-1489; 1897-1902 ("UPDATE FOR AF-1").

8