UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>) Civil Case No. 06-0173 (RJL)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION
(July 22, 2008) [# 29]

Plaintiff, Citizens for Responsibility and Ethics in Washington ("CREW"), brings this action against the United States Department of Homeland Security ("DHS"), and its component, the Federal Emergency Management Agency ("FEMA"), under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, seeking records pertaining to FEMA's preparation for and response to Hurricane Katrina. Currently before the Court is defendant's Renewed Motion for Summary Judgment. Upon consideration of the parties' submissions, the relevant law, and the entire record herein, the defendant's motion is GRANTED.

### BACKGROUND

Pursuant to FOIA, CREW requested eighteen categories of documents from DHS, and specifically its component FEMA, pertaining to FEMA's response to Hurricane Katrina.[1]

---

[1] See *Citizens for Responsibility & Ethics in Washington v. United States Department of Homeland Security*, 514 F. Supp. 2d 36, 40-41 (D.D.C. 2007), for a more detailed description of CREW's FOIA request and DHS's and FEMA's initial response.

On September 26, 2007, this Court issued a Memorandum Opinion granting summary judgment for DHS on the majority of withheld documents, but denying summary judgment, without prejudice, to certain documents withheld pursuant to the presidential communications privilege. *See Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Homeland Sec.*, 514 F. Supp. 2d 36, 50 (D.D.C. 2007) (hereinafter "*CREW*").

In the intervening months, DHS has released forty-seven of the withheld documents. It continues to assert that the redactions on the remaining thirty-five documents are properly exempt from disclosure on the grounds that they contain material protected by the presidential communications privilege. DHS now moves for summary judgment as to its claimed exemptions on the remaining documents. In support for its Renewed Motion for Summary Judgment, DHS submitted a second supplemental declaration by Adrian Sevier, the acting Deputy Chief Counsel of FEMA, and a supplemental declaration by Joel B. Bagnal, the Deputy Assistant to the President for Homeland Security on the Homeland Security Counsel staff within the White House, and a revised *Vaughn* index. For the following reasons, the Court finds them to be sufficient.

## DISCUSSION

I.  **Standard of Review**

Summary judgment is appropriate when the pleadings and the record demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial

burden of demonstrating the absence of a genuine dispute of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and the Court draws all reasonable inferences regarding the assertions made in a light favorable to the non-moving party, *Biodiversity Conservation Alliance v. U.S. Bureau of Land Mgmt.*, 404 F. Supp. 2d 212, 216 (D.D.C. 2005) (citing *Flynn v. Dick Corp.*, 384 F. Supp. 2d 189, 192-93 (D.D.C. 2005)).

In a FOIA case, an agency is entitled to summary judgment where it demonstrates that documents are not subject to FOIA's disclosure requirements. *Exxon Corp. v. FTC*, 663 F.2d 120, 126 (D.C. Cir. 1980). The withholding agency bears the burden of justifying its exemptions. *Summers v. U.S. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998). The court may grant summary judgment in a FOIA case "on the basis of . . . agency affidavits . . . if the affidavits describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

## II.    FOIA Exemption 5

DHS moves for summary judgment on the remaining documents on the grounds that the material redacted pursuant to the presidential communications privilege is exempt from disclosure under FOIA Exemption 5, 5 U.S.C. § 552(b)(5).[2] Exemption 5 exempts from

---

[2]Subsequent to the Court's prior ruling, DHS released documents it originally withheld pursuant to the presidential communications privilege on the grounds that the withheld material contained communications "that were intended to be transmitted, and it can be fairly inferred ultimately

disclosure "inter-agency or intra-agency memorand[a] or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Documents that are subject to, *inter alia*, the presidential communications privilege, can be withheld pursuant to Exemption 5. *See, e.g., Judicial Watch v. Dep't of Justice*, 365 F.3d 1108, 1113 (D.C. Cir. 2004).

The presidential communications privilege is "rooted in the separation of powers." *United States v. Nixon*, 418 U.S. 683, 708 (1974). It applies to "documents or other materials that reflect presidential decisionmaking and deliberations and that the President believes should remain confidential." *In re Sealed Case*, 121 F.3d 729, 744 (D.C. Cir. 1997); *see also Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 449 (1997). In addition to applying to communications directly involving the President, it also applies "to communications authored or solicited and received by those members of an immediate White House adviser's staff who have broad and significant responsibility for investigating and formulating the advice to be given the President on the particular matter to which the communications relate." *In re Sealed Case*, 121 F.3d at 752. It does not apply, however, to "communications of staff outside the White House in executive branch agencies that were *not* solicited and received by such White House advisers." *Judicial Watch*, 365 F.3d at 1116 (citing *In re Sealed Case*, 121 F.3d at 752) (emphasis added); *see In re Sealed Case*, 121 F.3d at 752 ("[T]he privilege

---

were transmitted, either to the President, or to the President's immediate adviser and their respective staffs." (Bagnal Decl. ¶ 15.c.) CREW does not make any challenges to these documents. (Opp'n 1, n.1.) Additionally, CREW does not oppose DHS's request for summary judgment on the document produced at Bates No. 1505.

4

should not extend to staff outside the White House in executive branch agencies."). Thus, "the privilege become[s] more attenuated the further away the advisers are from the President operationally." *See Judicial Watch*, 365 F.3d at 1114-15.

DHS argues that the redacted material here qualifies for protection under the presidential communications privilege because they contain "memorialized communications" with the President or his White House advisers or their staff in connection with presidential decisionmaking. CREW disagrees on the grounds that the White House neither solicited, nor received, the documents and that the communications contained therein have no relationship to presidential decisionmaking. (Opp'n 2.) I disagree.

The material withheld pursuant to the presidential communications privilege in this case "reveal[s] *actual communications with* the White House." (*See* Supp. Bagnal Decl. ¶ 4 (emphasis added).) As such, the material withheld either "memorialize[s], summarize[s], describe[s] or otherwise reflect[s]" the content of "actual communications" between the President or White House advisers or their staff and agency personnel, even though it was not transmitted to or from the White House in its current form. (*See id.*) At the time I issued my prior Memorandum Opinion ("Opinion"), I could not discern whether the withheld material was ever transmitted to either the President or his immediate advisers or their staff.[3] *See CREW*, 514 F. Supp. 2d at 49-50 ("Although Bagnal states in his affidavit that "it can

---

[3] Contrary to CREW's interpretation, I did not hold in my prior Opinion that documents that reveal otherwise protected communications fail to meet the requirements of the privilege on a wholesale basis. Rather, I stated that since I could not determine whether any of the withheld material ever reached the White House, there was insufficient information to determine whether the privilege applied. *See CREW*, 514 F. Supp. 2d at 49.

be fairly inferred" that these withheld communications "ultimately [were] transmitted" to the White House advisers or the President, this is, without more, insufficient to meet FEMA's burden."). The current record, however, clarifies that the redacted material does not consist of mere internal agency communications, but rather communications with the President or his immediate advisers or their staff that are memorialized in these internal agency documents. (Supp. Bagnal Decl. ¶¶ 3-4.)

Although our Circuit Court has not specifically addressed whether such communications are covered by Exemption 5, its rationale in *Judicial Watch* leads me to conclude that this material is protected. How so? In *Judicial Watch*, our Circuit Court addressed the applicability of the presidential communications privilege to "internal pardon documents in the Office of the Pardon Attorney and the Office of the Deputy Attorney General." *Judicial Watch*, 365 F.3d at 1109. In distinguishing between what was and was not protected, the Court explained that documents or communications with immediate presidential advisers were protected, but that internal agency documents never received by the White House were not. *See id.* at 1117. In reaching its decision, the Circuit Court noted that "[c]ommunications never received by the President or his Office are unlikely to be 'revelatory of his deliberations.'" *See id.* (quoting *In re Sealed Case*, 121 F.3d at 752).

Here, the redacted communications *are* "revelatory" of presidential decisionmaking because they memorialize actual communications with the President or his staff; not merely internal agency communications. (*See* Supp. Bagnal Decl. ¶ 4.) Thus, CREW's argument that the presidential communications privilege is inapplicable because neither the President

6

nor any other White House employee has seen the documents (Opp'n 4) misses the mark. The privilege is *not* being claimed over the documents themselves, but rather the communications memorialized within them. (*See* Supp. Bagnal Decl. ¶ 3 ("[I]t is the communication 'referred to or reflected in' the text of such e-mails, which have been redacted in order to avoid disclosing the content of earlier communications with the White House.").) To date, CREW has identified no good reason why the Court should treat these memorialized communications any differently than actual communications. Nor have I. *Cf. In re Sealed Case*, 121 F.3d at 758 (privilege applies to "notes taken at meetings on the Espy investigation at which these advisers were present, since these notes reflect these advisers' communications").

Moreover, since these redacted materials also relate to presidential decisionmaking, applying the privilege in this instance will not expand it, as CREW fears, to all communications with the White House *regardless* of whether the communications relate to presidential decisionmaking. (*Cf.* Opp'n 4.) Indeed, since the communications must relate to the President's shaping of policies or making of decisions in order to qualify for the privilege, the mere fact that it was communicated with or solicited and reviewed by a White House adviser or his staff is merely a threshold requirement in the first analysis. *See Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 449 (1997); *Judicial Watch*, 365 F.3d at 1113.

In this case, the communications over which the presidential communications privilege is claimed relate to presidential decisionmaking, specifically the President's decisions regarding the Federal response to Hurricane Katrina. (Bagnal Decl. ¶¶ 10, 12, 14.)

These communications informed the President about the situation on the ground and were used to "enable the President's advisers and their respective staffs to formulate advice and recommendations for the President in his decisions regarding how best to accommodate requests for Federal support, both in his capacity as Commander in Chief and as Chief Executive supervising the Federal response to Hurricane Katrina." (Bagnal Decl. ¶ 10.) Thus, the declarations demonstrate that the communications relate to presidential decisions.[4]

Accordingly, because the withheld material contains memorialized communications with the President or his immediate advisers or their staff that were related to the President's decisionmaking regarding the response to Hurricane Katrina, the material is protected by the presidential communications privilege and thus exempt from FOIA disclosure.

## CONCLUSION

For all of the foregoing reasons, the Court GRANTS defendant's Renewed Motion for Summary Judgment. An appropriate Order will issue with this Memorandum Opinion.



RICHARD J. LEON
United States District Judge

---

[4]CREW argues that the *Vaughn* indices, the declarations and the released material demonstrate that the withheld material related to the agency's decision-making process. (Opp'n 6-7.) Other than making this broad statement, however, it points to no specific information from which the Court could draw that conclusion. Conversely, as DHS points out, some of the un-redacted subject lines support the claim of privilege. (Reply Mem. 7 & n.5.)